## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BERKELEY VENTURES II, LLC, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE |
| | : | |
| vs. | : | |
| | : | NO. _____ |
| SIONIC MOBILE CORPORATION and | : | |
| RONALD D. HERMAN, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## <u>VERIFIED COMPLAINT FOR DAMAGES</u>

NOW COMES Plaintiff BERKELEY VENTURES II, LLC (hereafter "Plaintiff" or "Berkeley") and files this Verified Complaint for Damages against Defendants SIONIC MOBILE CORPORATION ("Sionic Mobile") and RONALD D. HERMAN ("Herman") (collectively "Defendants") showing the Court as follows:

## <u>PARTIES</u>

### *<u>Plaintiff</u>*

### 1.

Plaintiff is a Mississippi limited liability company with its principal place of business located at 3500 Parkway Lane, Suite 430, Norcross, GA 30092.  Plaintiff is registered as a foreign entity to conduct business in Georgia and is managed by

PEN Equity II, LLC, a Georgia limited liability company.  Plaintiff is a small, private equity fund affiliated with Berkeley Capital Partners, LLC, a licensed Registered Investment Advisor registered with the Securities and Exchange Commission and the State of Georgia

*Defendants*

2.

Defendant Sionic Mobile is a Georgia for profit corporation with its principal place of business located at 1230 Peachtree Street NE, Suite 3700, Atlanta, GA, 30309.  Sionic Mobile may be served with process via its registered agent, Ronald Herman, at 155 Little John Trail NE, Atlanta, GA, 30309.

3.

Defendant Herman is an individual resident of the State of Georgia who may be served with process at his personal residence, 155 Little John Trail NE, Atlanta, GA, 30309, or wherever he may be located.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it involves claims under Section 10b-5 of the Securities Exchange Act of 1934, as amended (the "Exchange Act").

2

5.

This Court has personal jurisdiction over Defendants as they reside and conduct business within the State of Georgia and within this federal judicial district.

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the acts and omissions set forth herein occurred within this federal judicial district and Defendants reside within this federal judicial district.

## **NATURE OF ACTION**

7.

Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act.

8.

In addition to fraud claims for violations of § 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5), and § 17(a) of the Securities Act (15 U.S.C. § 77q(a)), Sionic Mobile committed registration violations prohibited by §§ 5(a) and 5(c) of the Securities Act (15 U.S.C. §§ 77e(a), 77e(c)), and aided and abetted such violations.

## STATEMENT OF FACTS

9.

Sionic Mobile was formed as a Georgia limited liability company in January 2010 by its founder, Defendant Herman.  The company provides mobile marketing and loyalty rewards services to merchants and consumers.

10.

Since its formation, Sionic Mobile, Defendant Herman and certain members of its board of directors (hereafter "the Board") have systematically attempted to raise capital from a variety of investors claiming Sionic Mobile was on the "cusp" of experiencing exponential growth, sustained profits and immediate acquisition resulting in financial security for investors that take advantage of this "once in a lifetime" investment opportunity.

11.

Sionic Mobile, Defendant Herman and the Board used a deceptive sales strategy consisting of artificial deadlines, shortened due diligence periods, fabricated scarcities of shares, grossly inflated projections, false and misleading sales literature, "in person" sales meetings, alleged partnerships, and overstated technology capabilities.

12.

Sionic Mobile has enjoyed a level of success in raising capital and boasts that it has raised more than $18 million since its inception in 2010. However, according to Form D Notices of Exempt Offering of Securities filed with the SEC and various states, Sionic Mobile had only raised: (i) $1,290,000 out of $2,500,000 offered on June 6, 2011 and (ii) $0 out of $3,000,000 offered on September 25, 2013.  These Form D Notices are attached hereto as Exhibit "**A**."

13.

On various occasions between 2015 and 2017, Sionic Mobile even raised capital by facilitating sales of "soon to be expiring" unexercised employee warrants to prospective investors.  In this scheme, investors were told that Sionic Mobile's stock was worth $30.00 per share yet certain Sionic Mobile employees were willing to transfer some or all of their personal warrants (options to purchase Sionic Mobile shares at a $2.00 exercise price) to outside investors because the employees didn't have the money to exercise them themselves before they expired. This "once-in-a-lifetime" opportunity was pushed to more than a dozen prospective investors over a period of at least two (2) years.

14.

Despite its fund-raising efforts, Sionic Mobile continued to underperform, failed to meet any of the promised growth metrics, failed to consummate promised

partnership opportunities, failed to generate significant revenue, failed to complete its technology platforms and continued to operate with substantial losses exceeding millions per year.  In 2017 alone, Sionic Mobile lost a total of $4.8 million.

15.

As the annual losses began adding up, Sionic Mobile and Defendant Herman doubled their efforts to find new investors to cover the operating shortfalls.  At the same time, however, many of Sionic Mobile's existing investors demanded their promised returns making it difficult to raise new capital.

*Exit Strategy for Existing Investors*

16.

In an effort to keep existing investors from lodging formal complaints or filing suits, Sionic Mobile and Defendant Herman attempted to pacify investors that became disgruntled with Sionic Mobile's failures and the false promises of exponential growth.

17.

Upon information and belief, some investors donated their shares to one or more charities at inflated share prices to generate charitable tax deductions.

18.

This arrangement enabled Defendants to continue raising capital for Sionic Mobile without publicizing the company's losses.

19.

Upon information and belief, Defendants failed to disclose these charitable

contribution arrangements to Berkeley prior to its investment.

*Plaintiff's Investment in Sionic Mobile*

20.

Plaintiff's Chief Executive Officer, Anthony Palazzo ("Mr. Palazzo"), was

introduced to Sionic Mobile and Defendant Herman by a Board member via email

on October 25, 2017 (the "Introductory Email").  A true and accurate copy of the

Introductory Email is attached hereto as Exhibit "**B**."

21.

Attached to the Introductory Email was an executive summary of Sionic

Mobile dated October 2017 (the "Executive Summary") along with a company fact

sheet dated October 12, 2017 (the "Fact Sheet").  True and accurate copies of the

Executive Summary and Fact Sheet are attached hereto as Exhibits "**C**" and "**D**."

22.

In the Introductory Email, Sionic Mobile encouraged Plaintiff to invest in

Sionic Mobile at $2.00 per share, valuing the company at approximately $85

million.

23.

In the Introductory Email, Plaintiff was encouraged to invest in Sionic Mobile quickly by stating "I wanted to just make it clear that they have a week(s) to close out investors...they could very well be done raising funds in 10 days" and "this is probably not going to be enough time for your normal due diligence for your clients to consider, but it might be something you can get comfortable with quickly for smaller personal investments. This is my favorite tech company in our portfolio...I personally did the initial technology due diligence review 2 years ago for the Series B round."

24.

In response to the Introductory Email, Defendant Herman invited Plaintiff to meet and visit Sionic Mobile's offices in Atlanta saying "[its] important for me to disclose current state and step through financial pro formas." Two days later, on October 27, 2017, Plaintiff joined on a conference call to discuss Sionic Mobile's history, business plan and its need for capital.

25.

On October 27, 2017, Mr. Palazzo requested Defendant Herman send him any information on the prospective investment including a private placement memorandum, cap table, slide presentation and other diligence materials available. In response, Defendant Herman wrote "our Offering Memorandum is two years old and of no relevance."  Instead, he provided a cap table showing approximately

38.4 million shares of stock, options and warrants issued and outstanding.  A true and accurate copy of the October 27, 2017 email exchange is attached hereto as Exhibit "**E**."

26.

Representatives of Plaintiff met with Sionic Mobile at its headquarters in Atlanta on October 31, 2017.  Following this meeting, Mr. Palazzo requested a breakdown of the proposed use of funds and received an email from Sionic Mobile on November 1, 2017 outlining the proposed use of funds for 90 days (the "Use of Funds Email").  A true and accurate copy of the Use of Funds Email is attached hereto as Exhibit "**F**."  Plaintiff also received an updated proforma via email showing detailed revenue and projections for each customer (hereafter "Proforma Spreadsheet").  A true and accurate copy of the Proforma Spreadsheet is attached hereto as Exhibit "**G**."

27.

On November 2, 2017, Plaintiff requested and received a schedule of debt from Sionic Mobile showing outstanding notes owed to Defendant Herman and other Board members (hereafter "Debt Schedule").  True and accurate copies of the

November 2, 2017 email and accompanying Debt Schedule are attached hereto as Exhibit "**H**."

28.

On November 8, 2017, Defendants sent a number of investment documents to Plaintiff to be signed, including: (i) a Subscription Agreement, (ii) an Investor Questionnaire, (iii) Sionic Mobile's Amended and Restated Shareholder Agreement, (iv) Joinder to the Shareholders' Agreement, and (v) Sionic Mobile's wire instructions (collectively "Investment Documents").  A true and accurate copy of the November 8, 2017 email is attached hereto as Exhibit "**I**."

29.

On November 20, 2017, Plaintiff received an email from Defendant Herman providing an update of Sionic Mobile's business activities and encouraging Berkeley to finalize its investment (hereafter "Email Update").  A true and accurate copy of the November 20, 2017 Email Update is attached hereto as Exhibit "**J**."

30.

On December 5, 2017, Plaintiff sent Sionic Mobile signed copies of the Investment Documents and two days later, on December 7, 2017, finalized the transaction by wiring $1,600,000 into Sionic Mobile's bank account for purchase of 800,000 shares of common stock (hereafter "Berkeley's Investment").  A true

and accurate copy of the December 7, 2017 email confirming the wire transfer is attached hereto as Exhibit "**K**."

31.

Berkley's due diligence period began on October 25, 2017 with the Introductory Email and was shortened as a result of the false deadlines imposed by Defendants through the investment date of December 7, 2017 (hereafter "Restricted Due Diligence Period').

32.

Almost immediately after accepting Berkeley's Investment, Defendants began backtracking on their written promises, guaranteed partnership agreements and revenue projections.  In an email dated January 19, 2018, a Key Board Member informed Plaintiff (1) not to expect "a lot of revenue in Q1" despite promises days earlier of $10 million in Q1 revenue as stated in the Proforma Spreadsheet and (2) that the key airline relationship projected to onboard 30,000,000 users on January 1, 2018 according to the Executive Summary was not being pushed so resources could be focused "on other endeavors."  A true and accurate copy of the January 19, 2018 email is attached hereto as Exhibit "**L**."

*Written Misrepresentations*

33.

During the Restricted Due Diligence Period, Defendants provided Berkeley with written statements, marketing materials, financial information, emails, executive summaries, fact sheets, draft contracts and use of proceeds statements as part of a concerted effort to mislead Berkeley about Sionic Mobile's financial position, business opportunities, product development, strategic partnerships, formalized agreements, share price and growth projections.

34.

The Executive Summary provided by Defendants (*See* Ex. **C**) contained false and misleading statements that were relied upon by Berkeley in making its investment decisions, including the following:

### Page 2

- *"we connect brick and mortar merchants with millions of consumers"*

    o This was a present tense statement about existing business being conducted by Sionic Mobile. Sionic Mobile was not connecting millions of consumers with merchants in 2017 as shown by subsequent financial information and had only 1,200 subscribers at the time.

(A true and accurate copy of the 2018 Sionic Mobile financial information is attached hereto as Exhibit "**M.**")

- *"General Motors Partnership" - "we earn 50% of the $20-$40 CPM rate"*

  o This was a present tense statement about the existence of an active partnership between GM and Sionic Mobile in October 2017.  Sionic Mobile did not have a partnership or formal agreement with GM in 2017 that allowed for this fee sharing arrangement.  (*See* Ex.  **M**).

## Page 4

- *"payment commerce platform" – "we earn ½ to 5% of POS transaction amounts"*

  o This was a present tense statement about the existing technology capabilities of Sionic Mobile's payment commerce platform.  No such commerce platform ever generated sales revenue at these levels as shown by Sionic Mobile's subsequent financial information.  (*See* Ex.  **M**).

## Page 5

- ***"Loyalty app partners in auto, airline, banking, hotel, mobile phone, insurance and other channels"***

  o This was a present tense statement about existing contracts and partnerships with major corporations. Upon information and belief, no such formal partnerships or agreements existed.

- ***"30,000,000 users on January 1 for Airline 1"***

  o This representation was included as part of the graph describing how and when Sionic Mobile was reaching consumers.  It indicated that Sionic Mobile had finalized one deal with a major airline that would produce 30,000,000 users beginning on January 1, 2018, three weeks after Berkeley's Investment.  Sionic Mobile had no such finalized agreement in place with any airline and did not have the technology or capacity to capture 30,000,000 users in 2017 or any time thereafter.

- ***"25,000,000 users on January 1 for Healthcare 1"***

- o This representation was included as part of the graph describing how and when Sionic Mobile was reaching customers.  It indicated that Sionic Mobile had finalized one deal with a major healthcare provider that would produce 25,000,000 users beginning on January 1, 2018, three weeks after Berkeley's Investment.  Sionic Mobile had no such finalized agreement in place with any healthcare provider and did not have the technology or capacity to capture 25,000,000 users in 2017 or any time thereafter.

**Page 14**

- • *Exponential growth projections*

  - o The exponential growth projected by Sionic Mobile of $374,317,184 in sales in 2018 and $1,395,166,306 in sales in 2019 was not remotely possible as Sionic Mobile had not actually formalized agreements with any of the strategic partners and did not have the technology or capacity to support these projections.  Furthermore, these projections showed that Sionic

Mobile would be cash flow positive within less than a month after Berkley's Investment which was inconceivable under the circumstances learned after the fact.  In actuality, the 2018 financials published by Sionic Mobile showed that its revenue was $157,727.96 with a loss of $4,856,395.95.  Sionic Mobile missed its projection for 2018 revenue (which it confirmed when Berkeley invested three weeks prior to the end of 2018) by **237,000%.**

### Page 16

- *"$18.7 million funded"*

  o Sionic Mobile represented it had already raised $18.7 million in capital by October 2017, however, this number was overstated based on available public filings in an effort to convince Berkeley of its legitimacy.

- *"12 patents and trademarks"*

  o While Sionic Mobile did maintain a single patent for its loyalty program, it did not have the represented total of intellectual property rights.

35.

During the Restricted Due Diligence Period, Defendants presented Berkeley with the Fact Sheet.  *See* Ex. **D**.  The Fact Sheet contained the following false and misleading statements that were relied upon by Berkeley in making its investment decision:

- *"28 full time employees and contractors"*
  - Upon information and belief, Sionic Mobile did employee a few individuals in 2017, but it did not have the represented total number of full time employees at the time the Fact Sheet was provided to Berkeley.
- *"Multiple non-disclosed patents pending"*
  - While Sionic Mobile did maintain a single patent for a loyalty program, it did not have any non-disclosed patents pending.

36.

In the Use of Funds Email dated November 1, 2017, Defendants outlined what Sionic Mobile agreed to do with the funds from the Berkeley Investment over the upcoming 90-day period.  *See* Ex. **F**.  Sionic Mobile agreed <u>not</u> to use any of the Berkeley Investment to repay "loans" from company executives and board members, but instead to spend $400,000 on Compliance and Security, $300,000 on

Artificial Intelligence, $250,000 on order/pay ahead, $150,000 on automotive

platform integration, $50,000 on beacons and $700,000 to offset operating losses.

37.

Upon information and belief, Sionic Mobile did <u>not</u> use the Berkeley

Investment as allocated in the Use of Funds Email, instead repaying alleged

"loans" from Defendant Herman and others in direct contradiction to the promises

made to Berkeley prior to its investment.

38.

Sionic Mobile also provided Berkley with a written Debt Schedule.  *See* Ex.

**H**.  Defendant Herman represented he had loaned Sionic Mobile more than

$550,000, however, upon information and belief this was simply delayed

compensation for salaries and benefits Herman claimed he was entitled to receive

from the company.  Upon information and belief, these alleged "loans" were paid

back to Herman after Berkley's Investment.

39.

Defendants provided Berkeley with the Email Update on November 20,

2017.  *See* Ex. **J**.  Defendant Herman represented that (1) the agreement with

Southwest Airlines was almost completed, (2) the GM soft launch was going

"fine", and (3) Xevo, NorthOut and FreedomPay agreements were to be executed

in mid-December.  Based on actual financial from 2018 (*See* Ex. **M**), none of the statements were true.

40.

The Proforma Spreadsheet provided by Defendants (*See* Ex. **G**) contained false and misleading statements that were relied upon by Berkeley in making its investment decisions, including the following:

### Tab "GM-RIG"

- ***December 2017 Revenue***
    - *Carrabbas - $10,000*
    - *Hardees/Carl Jrs - $10,000*
    - *Five Guys - $10,000*
    - These were present tense statements about existing revenues generated in December 2017, the same month as Berkeley's investment. This indicates that Sionic Mobile had finalized deals with these major restaurants, however upon information and belief, Sionic Mobile had no such agreements in place.

- ***10,500 RIG Vehicle Users in November 2017***

- ***11,550 RIG Vehicle Users in December 2017***

- o These were present and past tense statements about existing user engagement in November 2017 and December 2017. This indicates that Sionic Mobile was actually installed in GM vehicles and used by GM drivers, however upon information and belief, this relationship had not yet materialized.

### Tab "MRM"

- *$260,982 MRM Revenue in January 2018*

- *95,000 Starbucks Users in January 2018*

- *13,000 JetBlue Users in January 2018*

  - o These were present tense statements about existing relationships with major brands expecting to dramatically grow revenues from $0 in December 2017 to $260,982 in January 2018, one month after Berkeley's investment. This suggests that Sionic Mobile had finalized deals with these major companies, however upon information and belief, Sionic Mobile had no such agreements in place.

- *$1,112,798 MRM Revenue in February 2018*

- ***112,500 Wyndham Users in February 2018***

- ***190,000 Starbucks Users in February 2018***

- ***78,000 JetBlue Users in February 2018***

- ***50,000 Hyatt Users in February 2018***

  - These were present tense statements about existing or pending relationships with major brands expecting to dramatically grow revenues from $0 in December 2017 to $1,112,798 in February 2018, two months after Berkeley's investment. This suggests that Sionic Mobile had near-finalized deals with these major companies, however upon information and belief, Sionic Mobile had no such agreements in place.

### *Oral Misrepresentations*

41.

Because of the rushed investment process intentionally orchestrated by Defendants and in order to avoid leaving a paper trail, Defendants insisted on providing most of the detailed information by phone or during in-person meetings at Sionic Mobile's headquarters.  One such meeting took place on October 31, 2017, where Defendant Herman made a series of material misrepresentations to Berkeley which it relied upon to make its investment as follows:

- ***Sionic Mobile is in the process of equipping over 100,000 merchant locations with in store iBeacons***.  The company claimed it was installing Bluetooth devices at all of its merchants' locations to send merchant-branded "push" notifications to nearby customers' smartphones.  Upon information and belief, the company has not installed a fraction of these, if any, yet.

- ***Sionic Mobile has already integrated its platform with Chase Payments, FreedomPay, MerchantLink, and Curbside***.  Upon information and belief and based on 2018 and 2019 financial statements provided to Plaintiff, the company still does not have agreements or generate revenues from these institutions.

- ***Starting November 13, 2017, all new GM cars will be equipped with Sionic Mobile technology in their OnStar dashboard.***  Upon information and belief and based on 2018 and 2019 financial statements provided to Plaintiff, the company's advertising solution is still not integrated into GM vehicles.

- ***Sionic Mobile needed Berkeley's investment to cover expenses until March 2018 when sales will exponentially increase as a result of new partner relationships***.  After seven (7) years of substantial losses, which expanded from approximately $2 million per year to $4.8

22

million in 2017, Sionic Mobile desperately needed to convince an investor that its financial situation was just about to substantially reverse.

- ***Sionic Mobile projects $374 million in revenue in 2018 and $1.4 billion in 2019.***  In reality, the company only generated revenues of $119,131 in 2017 and $157,727 in 2018. After seven years of minimal revenue, it was incredulous to claim that they would suddenly skyrocket to $374 million.

- ***Sionic Mobile's payment technology is already accepted at Panera Bread, Lowes, Banana Republic, California Pizza Kitchen, Domino's Pizza, Burger King, IHOP, Regal Cinemas, Office Depot, Krispy Kreme, Petco, Bed Bath & Beyond, Applebees, Chilis, Old Navy and Papa Johns.***  Upon information and belief and based on the company's 2018 and 2019 financial statements, Sionic Mobile had no such agreements or relationships in place.

- ***Sionic Mobile is about to close the investment round and Berkeley must immediately invest to preserve the low $2.00 price per share before its value skyrockets.***  The company has used the same deceptive sales tactics, aspiring projections, claims of an impending

sale, and claims that the company's stock was worth over $30.00 per share, throughout 2015, 2016 and 2017 to entice investors.

42.

Defendants also claimed in the October 31, 2017 meeting that they had already deployed Sionic Mobile's technology in all new GM vehicles starting on November 13, 2017 through GM's OnStar dashboard representing a total of 4 million new GM vehicles each year purportedly using Sionic Mobile's technology to promote merchants.  Defendants claimed that Sionic Mobile was entitled to 45% of all of this massive advertising revenue generated through the OnStar dashboard. As a result, Sionic Mobile claimed they would have 11.5 million users and receive $148.5 million in revenue through this single relationship by the end of 2018.  In actuality, the entire GM relationship has netted less than $0 in 2018, a far cry from the $710 million claimed by the end of 2018.  (*See* Ex. **M**).

43.

By January 2018, Defendants claimed they would generate $260,000 in revenue from 95,000 Starbucks users and 13,000 JetBlue users putting them in a cash flow positive position immediately after Berkeley's Investment.

44.

Finally, Defendant Herman claimed in the October 31, 2017 meeting that he was working to sell the entire business at $30 per share (valuing Sionic Mobile at

over $1 billion), citing three companies with a "strong interest" in buying Sionic Mobile; Microsoft, Oracle and JPM Morgan Chase.  This would result in a 15-times multiple on Berkeley's investment in under one year.

## COUNT I

## SECURITIES FRAUD

*(10b-5 Misrepresentations and Omissions)*

41.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-40 of this Complaint for Damages as if fully set forth herein.

42.

Defendants employed devices, schemes and artifacts to defraud Berkeley into making its $1.6 million investment in Sionic Mobile in exchange for 800,000 shares of common stock including the deceptive sales techniques detailed in paragraphs 11, 22-32, the existing shareholder exit strategy detailed in paragraphs 16-19, the written misrepresentations detailed in paragraphs 33-40 and the oral misrepresentations detailed in paragraph 40-44.

43.

Defendants engaged in acts, practices and courses of business which operated as a fraud or deceit upon Berkeley including the deceptive sales techniques detailed in paragraphs 11, 22-32, the existing shareholder exit strategy

detailed in paragraphs 16-19, the written misrepresentations detailed in paragraphs 33-40 and the oral misrepresentations detailed in paragraph 40-44.

44.

The misrepresentations and omissions detailed in paragraphs 33-44 were "material" to Berkeley and used by Berkeley in making its decision to invest $1.6 million in Sionic Mobile in exchange for 800,000 shares of common stock.

45.

The misrepresentations and omissions detailed in paragraphs 33-44 were made by Defendants with full knowledge of their falsity or impossibility at the time they were made and with the express intent of inducing Berkeley to make its $1.6 million investment in the purchase of a security, i.e shares of common stock in Sionic Mobile.

46.

Berkeley reasonably relied upon the material misrepresentations detailed in paragraphs 33-44 as the individuals making the misrepresentations were in positions of superior knowledge and authority, including Defendant Herman who was the president of Sionic Mobile and certain other Board members.

46.

The misrepresentations and omissions detailed in paragraphs 33-44 were the direct cause of Berkeley's decision to invest in Sionic Mobile and were the direct and proximate cause of damages suffered by Berkeley.

47.

Berkeley has suffered damages as a direct and proximate cause of Defendants' fraud in an amount not less than $1.6 million.

## COUNT II

## COMMON LAW FRAUD

48.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-47 of this Complaint for Damages as if fully set forth herein.

49.

Defendants made intentional written and oral misrepresentations and omissions to Berkeley as detailed in paragraphs 33-44 above.

50.

These misrepresentations and omissions detailed in paragraphs 33-44 above were false and misleading at the time they were made as Defendants knew or should have known.

51.

Defendants made these false representations and omissions detailed in paragraphs 33-44 with the sole purpose of enticing Berkeley to invest in Sionic Mobile.

52.

The false representations and omissions detailed in paragraphs 33-44 were material to Berkeley's decision to invest in Sionic Mobile and Berkely reasonably relied upon Defendants' statements as they were in superior positions of knowledge and authority.

53.

The false representations and omissions detailed in paragraphs 33-44 were the direct and proximate cause of Berkely's decision to invest in Sionic Mobile and the direct and proximate cause of its damages.

54.

Berkeley did in fact invest in Sionic Mobile and has been damaged as a result thereof in an amount to be determined at trial.

## COUNT IV

## PUNITIVE DAMAGES

55.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-54 of this Complaint for Damages as if fully set forth herein.

56.

Defendants' conduct as outlined in paragraphs 11, 16-19 and 33-44 showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

57.

Plaintiff is entitled to punitive damages from Defendants pursuant to O.C.G.A. Section 51-12-5.1 in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs requests that the Court:

1)  Grant judgment in favor of Plaintiffs on its claims for Securities Fraud, Common Law Fraud, and Punitive Damages;

2)  Award damages to Plaintiffs in amounts to be determined at trial;

3)  Grant Plaintiffs a jury trial on all claims triable by jury; and

4)  Grant such other and further relief the Court deems just and proper.

Respectfully submitted this 6th day of December 2019.

*/s/ Bryan E. Busch*
Bryan E. Busch, Esq.
bb@bsms.law
Laura Mirmelli, Esq.
lm@bsms.law
BUSCH, SLIPAKOFF, MILLS &
SLOMKA, LLC
Riverwood 100, 21st Floor
3350 Riverwood Parkway
Atlanta, Georgia 30339
(404) 800-4062 (Telephone)
*Attorneys for Defendants*