IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BERKELEY VENTURES II, LLC

       Plaintiff,

v.

SIONIC MOBILE CORPORATION and
RONALD D. HERMAN,

       Defendants.

Civil Action File No.
1:19-cv-05523-ODE

---

**MEMORANDUM IN SUPPORT OF
SIONIC MOBILE CORPORATION'S MOTION TO
DISQUALIFY BUSCH, SLIPAKOFF, MILLS & SLOMKA, LLC AS
COUNSEL OF RECORD**

---

Defendant Sionic Mobile Corporation ("Sionic") respectfully submits

that this Court should grant its Motion to Disqualify Busch, Slipakoff, Mills

& Slomka, LLC ("Busch Slipakoff") as counsel of record to Plaintiff Berkeley

Ventures II, LLC ("Berkeley") due to Adam Slipakoff's ("Slipakoff") conflicting

roles as both Sionic's former outside general counsel and Busch Slipakoff's

Managing Partner. Ethically, a lawyer may not disadvantage a prior

representation in favor of a subsequent conflicting representation on

substantially the same subject matter. Even if the conflicted lawyer is not

directly involved in the subsequent representation, the taint of conflict will

nonetheless act to disqualify that lawyer's entire law firm from the subsequent representation. Such is the case here.

As a matter of law, Slipakoff's conflicting representation of Sionic taints Busch Slipakoff's present representation of Berkeley, rendering Busch Slipakoff's disqualification appropriate and necessary. Respectfully, Sionic requests that this Court grant this Motion.

## STATEMENT OF FACTS

Sionic is a leading innovator in the area of FinTech and in deriving software and payment processing solutions in response to some of the more pressing problems confronting the industry. Based on research into available public information, Slipakoff is partner in several law firms, including, as pertinent to this Motion, Busch Slipakoff and Slipakoff LLP.[1] These firms share significant partners in common, including Slipakoff, Howard Slomka, and Bryan E. Busch, the lead lawyer for Berkeley.[2]

Busch Slipakoff's website describes Slipakoff as Managing Partner, Mergers and Acquisitions Chair, and Corporate and Securities Chair.[3] Meanwhile, Slipakoff LLP's website lists Slipakoff as a Partner and describes

---

[1] Affidavit of Simon Jenner at para. 3, dated January 30, 2020, attached and incorporated as Exhibit A ("Jenner Aff.") to this Memorandum.
[2] Simon Aff. at para. 4.
[3] Simon Aff. at para. 5.

his principal areas of concentration as including venture capital, corporate transactions, and mergers and acquisitions.[4] Busch is described as a Partner in Busch Slipakoff and as its Litigation Chair, with a specialization in investments and securities.[5]

Sionic first became aware of Slipakoff LLP on December 1, 2015, in regard to donations of Sionic stock that Patrick Gahan ("Gahan"), a Sionic stockholder and Board member, wanted to make to several foundations and charities.[6] To help facilitate the donation, Slipakoff LLP, as Gahan's lawyers, requested a division of an existing Sionic stock certificate into multiple smaller certificates, which Sionic did.[7]

On or about December 4, 2015, Gahan introduced Slipakoff to Sionic as potential counsel, which resulted in email correspondence between Ronald D. Herman, Sionic's Chief Executive Officer, and Slipakoff, and a further meeting at Slipakoff's office.[8] At that meeting, Slipakoff promoted his ability to represent Sionic in regard to investments and securities law, in addition to

---

[4] Simon Aff. at para. 5.
[5] Simon Aff. at para. 6.
[6] Affidavit of Ronald D. Herman at para. 4, dated January 28, 2020, attached and incorporated as Exhibit B ("Herman Aff.") to this Memorandum.
[7] Herman Aff. at para. 5.
[8] Herman Aff. at para. 6.

various merger and acquisition opportunities.[9] Slipakoff also explained his ability to introduce potential investors to Sionic and expressed interest in becoming an investor himself.[10] In response, Herman discussed with Slipakoff the scope and scale of representation that Sionic wanted, including support on mergers and acquisitions and, more importantly, in regard to Sionic's securities as Sionic was in the process of raising capital and wanted to ensure it was compliant with applicable laws and regulations.[11]

Subsequently, Herman confirmed Sionic's intention to engage Slipakoff, specifying a need to evaluate the influence of potential transactions on Sionic's Series B filing and associated changes to the capitalization table.[12] Internally, Herman instructed Sionic personnel to begin coordinating with Slipakoff as general counsel on pending assignments and contract review.[13]

On December 8, 2015, Slipakoff and Sionic entered into an Attorney-Client Representation agreement, under which Slipakoff confirmed that "we have been engaged to represent Sionic Mobile Corporation . . . in regard to

---

[9] Herman Aff. at para. 7.
[10] Herman Aff. at para. 8.
[11] Herman Aff. at para. 9.
[12] Herman Aff. at para. 10.
[13] Herman Aff. at para. 11.

various corporate matters."[14] Slipakoff thus was, and was understood to be, Sionic's outside general counsel.[15]

The next day, Herman consulted with Slipakoff regarding Sionic's proposed Series B investment, disclosures, Form D filings with the U.S. Securities and Exchange Commission, and stock warrants, as confirmed by Slipakoff's subsequent invoice to Sionic.[16] In support of this and other corporate efforts, Sionic shared significant sensitive confidential information with Slipakoff, including on certain pending and planned business transactions, proposed uses for capital, potential target investors and funding sources, securities offerings and series and associated draft agreements and documentation, business plans, and draft and anticipated promotional and solicitation materials.[17]

At about this time and further to Slipakoff's request, Sionic transmitted Warrants for Slipakoff to execute, which upon exercise would have entitled Slipakoff to become a direct holder of Sionic stock.[18] By email dated December 11, 2015, Slipakoff confirmed that he had signed the Warrants

---

[14] Herman Aff. at para. 12.
[15] Herman Aff. at para. 13.
[16] Herman Aff. at para. 14.
[17] Herman Aff. at para. 15.
[18] Herman Aff. at para. 16.

(although had not yet funded them) and offered to introduced Sionic to a high net worth friend he thought an appropriate investor.[19] To assist with this introduction, Slipakoff requested various sensitive internal corporate information, including Sionic's Private Placement Memorandum, pro forma spreadsheets, including for 2016, and historical financials.[20] Slipakoff acknowledged that his friend would need to execute a nondisclosure agreement as a condition to receiving this information.[21]

Slipakoff ultimately failed to fund the Warrants, leading Herman to express his concern for the legal consequences of the delay, although he confirmed that he was still very excited about Slipakoff having taken over Sionic's "securities work."[22] Slipakoff responded that he was incredibly thankful that his failure to fund the Warrants had not tainted Herman's view of Slipakoff or his firm's value.[23] Slipakoff assured that he would continue to "be a vocal evangelist for Sionic," and said that he had several private equity firms and various high net worth investors whom he thought would be good prospective investors in Sionic.[24]

---

[19] Herman Aff. at para. 17.
[20] Herman Aff. at para. 18.
[21] Herman Aff. at para. 19.
[22] Herman Aff. at para. 20.
[23] Herman Aff. at para. 21.
[24] Herman Aff. at para. 22.

On January 6, 2016, Slipakoff offered to introduce Sionic to a potential partner for Sionic's technology.[25] In response, Herman sent Slipakoff a brief overview of Sionic's platform, asking Slipakoff to review the document to ensure it was acceptable.[26] Later that day, Slipakoff made the introduction, extolling the virtues of Sionic's technologies and capabilities and even suggesting ways in which Sionic might imbed in the potential partner's business to improve overall margins and operations.[27]

On July 12, 2016, Slipakoff requested, and Sionic provided, an updated business plan and financials. Sionic subsequently stopped sending Slipakoff legal work on or about August 2016.[28] Amongst other reasons, Sionic decided to cease using Slipakoff's services because he failed to provide the level of responsive and sophisticated representation that he had assured Herman was within his competence.[29]

Approximately 14 months later, Berkeley became an investor in Sionic.[30] In so doing, Berkeley reviewed financials, promotional and investment materials, and other documents that were either shared with

---

[25] Herman Aff. at para. 23.
[26] Herman Aff. at para. 24.
[27] Herman Aff. at para. 25.
[28] Herman Aff. at para. 26.
[29] Herman Aff. at para. 27.
[30] Herman Aff. at para. 28.

Slipakoff incident to representation or upon which Slipakoff's advice was requested.[31] Slipakoff reviewed and provided advice in regard to the form documents that were ultimately used by Sionic drafting the Subscription Agreement, Investor Questionnaire, Amended and Restated Shareholder Agreement, and Joinder to Shareholder Agreement that are referenced in Berkeley's Complaint.[32]

Slipakoff never consulted with or informed Sionic of Berkeley's intention to sue Sionic before it did so.[33] Nor did Slipakoff seek, and Sionic did not provide, a waiver of conflict.[34]

## ARGUMENT AND CITATION OF AUTHORITY

A lawyer cannot represent a client if there is a significant risk that the lawyer's duties to a former client will materially and adversely affect the representation. *Dodson v. Floyd*, 529 F.Supp. at 1060 (N.D. Ga. 1981); Ga. R. Prof. Conduct 1.7, Comment 4 ("loyalty to a client prohibits undertaking representation directly adverse to that client without that client's informed consent"). Disqualification is thus required for any lawyer who purports to represent a current client against a former client in a matter that is

---

[31] Herman Aff. at para. 28.
[32] Herman Aff. at para. 29.
[33] Herman Aff. at para. 30.
[34] Herman Aff. at para. 30.

substantially related to the prior representation. *Shuttleworth v. Rankin-Shuttleworth of Ga., LLC*, 759 S.E.2d 873, 876 (Ga. Ct. App. 2014); Ga. R. Prof. Conduct 1.9(a).

A plaintiff's right to counsel of choice, while significant, is not inviolate, and must be balanced against the ethical considerations governing the practice of law, including the impermissible appearance of impropriety, potential and actual conflicts of interest, protection of a former client's confidences, and preservation of the integrity of the judicial system. *Shuttleworth*, 759 S.E.2d at 876; *Humphrey v. State*, 537 S.E.2d 95, 98 (Ga. Ct. App. 2000) (holding that the rules against successive representation are intended to preserve client confidences and secrets). "The circumstance of representing a client against a former client in an action that is of the same general subject matter, and grows out of an event that occurred during the time of such representation, creates an impressible appearance of impropriety." *Shuttleworth*, 759 S.E.2d at 876.

A party seeking disqualification must show that the former representation had both material and logical connections to the pending litigation. *Shuttleworth*, 759 S.E.2d at 876. "[W]hether there is a substantial relationship turns on the possibility, or the appearance thereof, that confidential information *might have been given* to the attorney in relation to

9

the subsequent matter in which disqualification is sought." *Dodson*, 529 F.Supp. at 1060. The party seeking disqualification is not required to point to specific confidences revealed to his attorney that are relevant to the pending case. *Humphry v. State*, 537 S.E.2d at 98.

Upon proof that the pending representation and former representation are related and adverse, doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification. *Dodson*, 529 F.Supp. at 1061. All lawyers associated with the conflicted lawyer in a law firm are equally and imputably disqualified. *Amoco Chemicals Corp. v. MacArthur*, 568 F.Supp. 42, 46 (N.D. Ga. 1983) (holding that the "mandate of affiliate disqualification is entirely prophylactic . . . designed to prevent behavior not because the behavior is intrinsically improper but because it involves the risk of impropriety"); Ga. R. Prof. Conduct 1.10(a).

Applying these standards, Busch Slipakoff should be disqualified from representing Berkeley for three reasons. First, Slipakoff's prior representation of Sionic taints Busch Slipakoff's current representation of Berkeley, requiring Busch Slipakoff's disqualification from this matter. Second, Busch Slipakoff was previously disqualified as plaintiff's counsel in another case under facts analogous to those at issue here, which demonstrates a pressing need for Busch Slipakoff to be promptly removed

from this matter. And third, the Complaint necessarily implicates Slipakoff as both a fact-witness and prior counsel, disqualifying both him and Busch Slipakoff from representing Berkeley in this matter.

## I.     Slipakoff's prior representation of Sionic taints Busch Slipakoff's current representation of Berkeley, requiring Busch Slipakoff disqualification from this matter.

The evidence shows that Slipakoff served as Sionic's outside general counsel, a role that covered a range of business, investment and securities matters. For example, under the Attorney-Client Representation agreement Slipakoff became Sionic's outside general counsel, responsible for corporate, transactional, and securities-related matters. Correspondence between Herman and Slipakoff confirms that Slipakoff was consulted on Sionic's proposed Series B investment, corporate disclosures, Form D filings with the U.S. Securities and Exchange Commission, and stock warrants. Sionic also consulted Slipakoff in regard to the form agreements and documents that were ultimately used by Sionic to memorialize the Berkeley transaction. And Slipakoff actively promoted Sionic to wealthy friends, private equity firms, potential investors, and the broader marketplace as an "evangelist" for the corporation and its technology. Incident to this representation, Sionic shared

sensitive confidential information with Slipakoff, including memoranda, pro forma spreadsheets, historical financials, and business plans.

Given these facts, it is evident that Berkeley's Complaint addresses the same general subject matter as Slipakoff's prior representation of Sionic. For example, the Complaint references the Series B Securities, Form D filings and promotional materials and efforts on which Slipakoff advised Sionic for 2015 and 2016 and in which Slipakoff actually participated, but which Berkeley now alleges as a basis for its purported fraud claims.[35] The Complaint alleges matters in regard to which Slipakoff acted as counsel to Sionic for the relevant period, including stock valuations, warrants, warrant exercise prices, and stock acquisition opportunities.[36] The Complaint references "schemes," "devices," and deceptive promotional efforts in which Slipakoff was himself personally involved.[37] The Complaint even attacks the stock donations upon which Slipakoff's law firm advised and on which it sought and obtained Sionic's cooperation.[38]

---

[35] Verified Complaint for Damages, Doc. 1 ("Complaint"), para. 12, 13, 15, 23.
[36] Complaint, para. 13.
[37] Complaint, para. 42 (due to an error in the Complaint, the second paragraph bearing that number).
[38] Complaint, para. 17-18.

There is, accordingly, a substantial overlap between Slipakoff's prior representation of Sionic and Busch Slipakoff's current representation of Berkeley in regard to matters and events on which Slipakoff provided consultation and advice to Sionic. The record is equally clear that Slipakoff was previously Sionic's outside general counsel and is now Busch Slipakoff's Managing Partner and Corporate and Securities Chair.

Based on these facts, Slipakoff's prior representation of Sionic taints Busch Slipakoff, and thus prohibits Busch Slipakoff's representation of Berkeley, which is not only in conflict with that prior representation but also threatens exposure of Sionic's confidences and secrets. *Dodson v. Floyd*, 529 F.Supp. 1060-1061; *Humphrey*, 537 S.E.2d at 98. Respectfully, it is appropriate that this Court disqualify Busch Slipakoff as Berkeley's lawyers.

## II.     **Busch Slipakoff was previously disqualified as plaintiff's counsel under facts analogous to those at issue here.**

The United States District Court for the Northern District of Georgia has found it necessary to disqualify Busch Slipakoff on at least one other occasion, under circumstances similar to this matter. In *Marcelino Solis v. The Taco Maker*, Busch Slipakoff, acting as plaintiff's counsel, sued the defendants despite one of Busch Slipakoff's attorneys having previously represented those defendants in a substantially related matter. *Marcelino*,

13

Case No. 1:2009-cv-03293 - Document 74 ("Document 74") at 13 (N.D. Ga.

June 2, 2011).[39]

In moving to disqualify Busch Slipakoff, the defendants adduced an

engagement letter confirming they had previously employed one of plaintiff's

lawyers in regard to a possible recapitalization and refinancing of the

company, and also corporate governance and other general matters.

*Marcelino*, Case No. 1:2009-cv-03293 - Document 43 ("Document 43") at 6

(N.D. Ga. Feb. 15, 2011).[40] In light of the engagement and general course of

dealing between the defendants and the conflicted lawyer, the Court found an

employment relationship, and thus attorney-client relationship, existed

between the conflicted lawyer and the defendants. *Marcelino*, Document 43 at

6-7; *Marcelino*, Document 74 at 14.

In view of these facts, the Court found it necessary to grant defendant's

motion to disqualify Busch Slipakoff. *Marcelino*, Document 43 at 14.

*Marcelino*, Document 74 at 14 (quoting *Crawford W. Long Mem. Hosp. v.*

*Yerby*, 373 S.E.2d 749, 750 (Ga. 1988)). Referencing Ga. R. Prof. Conduct

1.10(c), the Court explained that one attorney's conflict of interest arising

---

[39] A true and complete copy of Judge Richard W. Story's Order, as cited, is
attached as Exhibit C.

[40] A true and complete copy of Judge Richard W. Story's Order, as cited, is
attached as Exhibit D.

from a prior representation had to be imputed to all the attorneys in the firm, subjecting the entire firm to disqualification. *Marcelino*, Document 74 at 14 (quoting *Rescigno v. Vesali*, 703 S.E.2d 65, 69 (Ga. Ct. App. 2010)). Applying this standard, the Court held that the conflicted attorney tainted Busch Slipakoff, carrying the conflict with him and precluding all of Busch Slipakoff from acting as the plaintiff's lawyers. *Marcelino*, Document 74 at 14.

Similar to *Marcelino*, and for the reasons explained more fully in part I of this Memorandum, Slipakoff is tainted by his prior representation of Sionic, the subject matter of which is substantially related to the subject matter of Berkeley's Complaint. And like *Marcelino*, that taint has carried into Busch Slipakoff, making Busch Slipakoff's disqualification in this matter equally necessary.

## III.   The Complaint necessarily implicates Slipakoff as both a fact witness and prior counsel, disqualifying both him and Busch Slipakoff from representing Berkeley.

The federal courts, including this Court, have the power and responsibility to regulate the conduct of attorneys who practice before them. *Amoco*, 568 F.Supp. at 44. In exercising this responsibility, the federal courts prohibit any lawyer from disadvantaging a prior representation in favor of a new and more lucrative conflicting representation. *Dodson v. Floyd*, 529

F.Supp. 1060-1061; *Marcelino*, Document 74 at 14. When a disqualified lawyer is also a necessary witness related to the facts of a prior representation, that disqualification will be equally imputed to all lawyers in the conflicted lawyer's firm, even though not party to the prior representation. *Amoco*, 568 F.Supp. at 46; Ga. R. Prof. Conduct 3.7.

As previously discussed in Part I of this Memorandum, Slipakoff's prior status as Sionic's outside general counsel taints Busch Slipakoff's current representation of Berkeley on the subject matter of the Complaint, thereby disqualifying Busch Slipakoff as Berkeley's lawyers in this suit. As also discussed, the Complaint alleges purported schemes, devices, and deceptive promotional efforts in which Slipakoff was himself personally involved, and even alleges as fraudulent the very stock donations on which Slipakoff's law firm advised Sionic.

As an inherent part of the transactions and events upon which Berkeley's Complaint depends, Slipakoff is a natural and necessary fact witness. And because Slipakoff is prohibited from working against Sionic on the subject matter of his prior representation of Sionic, so is Busch Slipakoff equally prohibited. Respectfully, Busch Slipakoff should be disqualified from continuing to act as Berkeley's lawyers.

## CONCLUSION

To protect the integrity of the legal profession and client confidences, and to eliminate likely harm to Sionic, the law and Georgia Rules of Professional Conduct require disqualification of any lawyer who purports to represent a current client against a former client on substantially the same subject matter, together with all lawyers with whom that conflicted lawyer may be associated. Such is the case here.

Busch Slipakoff—the law firm Slipakoff serves as Managing Partner and Corporate and Securities Chair—has brought suit on behalf of Berkeley against Sionic alleging fraud founded on matters on which Slipakoff was previously engaged as Sionic's prior counsel. The Complaint even references purported schemes, devices and deceptive promotional efforts in which Slipakoff was himself personally involved in 2015 and 2016 incident to his representation of Sionic.

Given these well-established facts, Busch Slipakoff cannot represent Berkeley in this matter. Slipakoff has tainted that representation, and is a likely fact witness. Respectfully, this Court should grant this Motion.

Respectfully submitted,

/s/ Simon Jenner

Simon Jenner, Esq.
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Richard J. Baker, Esq.
Georgia Bar No. 033879
rick.baker@bakerjenner.com
Lynn Chen Woodward, Esq.
Georgia Bar No. 861150
lynn.woodward@bakerjenner.com
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Telephone: (404) 400-5955
*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that the foregoing has been prepared in accordance with Local Rule 5.1C, using Century Schoolbook, 13 point. I further certify that on January 30, 2020, I electronically filed **Memorandum in Support of Sionic Mobile Corporation's Motion to Disqualify Busch, Slipakoff, Mills & Slomka, LLC as Counsel of Record** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Bryan E. Busch
Laura Mirmelli
Busch, Slipakoff, Mills & Slomka, LLC
Riverwood 100, 21st Floor
3350 Riverwood Parkway
Atlanta, GA 30339

/s/ Simon Jenner
Georgia Bar No. 142588
Attorney for Defendant
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Telephone: (404) 400-5955
E: simon.jenner@bakerjenner.com