IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BERKELEY VENTURES II, LLC<br><br>Plaintiff,<br><br>v.<br><br>SIONIC MOBILE CORPORATION and<br>RONALD D. HERMAN,<br><br>Defendants. | Civil Action File No.<br>1:19-cv-05523-ODE |

## MEMORANDUM IN SUPPORT OF
## SIONIC MOBILE CORPORATION'S MOTION TO DISMISS

Defendant Sionic Mobile Corporation ("Sionic"), respectfully submits this Memorandum in Support of its Motion to Dismiss, showing:

### STATEMENT OF FACTS

Sionic was founded in 2010, including by Ronald D. Herman ("Herman"), its Chief Executive Officer. An early-stage company, Sionic has undertaken several rounds of capital raises through stock sales.[1] On October

---

[1] *See*, Dkt. 1, Ex. A, constituting some of Sionic's Form D filing with SEC. For ease of reference and the convenience of the Court, Sionic has created a master set of exhibits. Most of these exhibits are from Berkeley's Complaint, in which case they are referenced, for example, as "Dkt. 1, Ex. A." In other instances, Sionic is supplementing the exhibits that Berkeley submitted, quoted or referenced, by providing the full document or thread.

25, 2017, Patrick Gahan ("Gahan"), a Sionic investor, introduced Herman to two people whom he thought might be interested in the company, including Anthony Palazzo ("Palazzo"), a senior partner in Berkeley Ventures II, LLC ("Berkeley").[2] Gahan sent the email from his own corporate account, although his primary intention was to drum up investor interest for his own fleet of companies.[3] In the email, he disclosed his own valuation of Sionic for purposes of a donation of his Sionic stock to a charitable trust.[4]

Palazzo expressed potential interest in Sionic, so Gahan transmitted Sionic's overview PowerPoint, a document that related brief thoughts and points "for discussion purposes only."[5] At that time Gahan also transmitted a fact sheet, which briefly summarized some points of relevance.[6]

A few days later, Palazzo requested that Herman provide Sionic's Private Placement Memorandum.[7] Herman explained the document was outdated, but did provide part 5 of the document, titled "Risk Factors," which

---

In those instances, the exhibits track those of the Complaint, but are referenced instead, for example, as "Exhibit B to this Memorandum."

[2] Exhibit B to this Memorandum.

[3] Exhibit B to this Memorandum at 2-5.

[4] Exhibit B to this Memorandum.

[5] Dkt. 1, Ex. C.

[6] Dkt. 1, Ex. D.

[7] Exhibit E to this Memorandum.

Palazzo accepted and said he would share with his lawyer.[8] Included in "Risk Factors" was a long serious of disclosures and cautions about the speculative nature of an investment in Sionic as an early-stage company.[9] Shortly following, on October 31, 2017, Sionic provided its "pro forma plan," projecting how it thought potential business opportunities might perform.[10]

On November 1, 2017, Palazzo then requested a proposed use of funds, which Sionic provided.[11] Palazzo also requested Sionic's "burn rate," which Sionic provided in a follow-up email together with copies of Sionic's financial statements for 2015, 2016 and year-to-date for 2017.[12] Two days later, Sionic provide its promissory note schedule, which included a breakdown of amount, terms, and due dates, followed by draft transaction documents.[13]

On November 20, 2017, Palazzo requested an update.[14] Herman responded, confirming that that Southwest contract was still in negotiation, together with other items that were still in the planning and development stage.[15] Apparently satisfied with the status of the business and results of

---

[8] Exhibit E to this Memorandum; Exhibit N to this Memorandum.
[9] Exhibit E to this Memorandum; Exhibit N to this Memorandum.
[10] Exhibit G to this Memorandum.
[11] Exhibit F to this Memorandum.
[12] Exhibit E to this Memorandum.
[13] Exhibit H to this Memorandum; Dkt. 1, Ex. I.
[14] Exhibit E to this Memorandum.
[15] Exhibit J to this Memorandum.

due diligence, on December 5, 2017, Berkeley sent back a complete set of counter-signed agreements, including the Subscription Agreement.[16] In the Subscription Agreement, Berkeley acknowledged its status as sophisticated investor, that it had performed sufficient due diligence to its satisfaction, and understood the risk posed by an investment in Sionic.[17] On December 6, 2017, Sionic loaded Berkeley into its investor center, and the following day, Berkeley fulfilled its obligation to fund the stock purchase.[18]

On January 19, 2018, Gahan provided a detailed breakdown of various open Sionic projects and assignments, keeping Berkeley informed.[19] Berkeley accepted the consequences of its investment through 2018 and almost all of 2019, including after its receipt of financial statements for 2018 and 2019.[20] On December 7, 2019, Berkeley brought suit.[21]

## ARGUMENT AND CITATION OF AUTHORITY

Three grounds support dismissal of Berkeley's Complaint in its entirety, with prejudice: Berkeley has failed to satisfy the pleading standard for securities fraud under Section 10(b) and Rule 10b-5; in the alternative,

---

[16] Exhibit O to this Memorandum.
[17] Exhibit O to this Memorandum.
[18] Exhibit K to this Memorandum.
[19] Dkt. 1, Ex. L.
[20] Dkt. 1, Ex. M.
[21] Dkt. 1.

Berkeley's securities fraud claim is time-barred, having brought its claim outside the two-year window prescribed under 28 U.S.C. § 1658(b); and Berkeley has failed to state an actionable claim for Georgia common law fraud. Each of these arguments is addressed in turn.

## I.   Berkeley's reliance on fragmentary statements, hindsight and aspirations for the future fails to either satisfy the pleading standards or the required elements for a securities fraud case.

For a motion to dismiss under Civ. R. Proc. 12(b)(6), a court must accept all well-pleaded facts as true and construe reasonable inferences arising from those facts in the light most favorable to the plaintiff. *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The court, however, need not accept plaintiff's legal conclusions, even when couched as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

In deciding a motion to dismiss, the court is limited to the face of the complaint, although may consider a document attached to a dismissal motion if that document is central to the complaint and not subject to a party's challenge on the basis of authenticity. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). Documents that plaintiff cites or quotes or upon which the complaint depends to establish a claim, are central and proper for consideration at dismissal. *Madura*, Case No. 17-15751 at 3.

To survive a motion to dismiss, the plaintiff must state an actionable securities fraud claim, alleging at a minimum (1) a material misstatement or omission, (2) made by the defendant with scienter, (3) in connection with the purchase or sale of a security, (4) on which the plaintiff justifiably relied, (5) resulting in economic loss to plaintiff, (6) where the plaintiff has shown the loss to be causally connected to the actual misrepresentation or omission in question (*i.e.*, loss causation). *Mizzaro*, 355 F.3d at 1237.

In pleading the elements of fraud, the plaintiff must satisfy the stringent requirements of Fed. R. Civ. P. 9(b), as modified by the PSLRA, meaning that the plaintiff must plead the complaint with particularity sufficient to alert the defendant regarding the precise wrongful misconduct alleged. 15 U.S.C. § 78u-4(b); *Ziemba v. Cascade Int'l Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001). Accordingly, the complaint must plead the circumstances of fraud in detail, including the who, what, when, where, and how of each element of the action, including for scienter. 15 U.S.C. § 78u-4(b)(1), (2); *Jackson Inv. Grp., LLC v. Thomas*, 325 F.Supp.3d 1334, 1346 (N.D. Ga. 2017) (citing *Mizzaro v. Home Depo, Inc.*, 355 F.3d 1230, 1238 (11th Cir. 2008)). A plaintiff must specify each statement or omission alleged to be misleading, each reason for the statement or omission being misleading and, if the statement or omission is founded on the plaintiff's information and

belief, then must plead with particularity each fact on which that belief is formed. 15 U.S.C. § 78u-4(b)(1); *Jackson Inv.*, 325 F.Supp. at 1346. A mere recitation of immoral or fraudulent behavior is inadequate. *Ziemba*, 256 F.3d at 1202. A complaint that fails these requirements should be dismissed. 15 U.S.C. § 78u-4(b)(3)(A); *Mizzaro*, 544 F.3d at 1257.

Here, Berkeley's Complaint fails both to plead the elements of a securities fraud claim, and to satisfy the stringent pleading standard required under Fed. R. Civ. P. 9(b) and the PLSRA. Further, as securities fraud claims, Berkeley is not entitled to punitive damages. Respectfully, Berkeley's Complaint should be dismissed, with prejudice.

## A. Berkeley does not satisfy the first element for a securities fraud claim because much of what Berkeley alleges is conclusory, fails to specify how Sionic's alleged statements were misleading, and depends upon mischaracterizations.

An essential gating condition for securities fraud, a plaintiff be able to plead with particularity statements that the plaintiff contends are misleading, together with reasons for why they are misleading. *Mizzaro*, 544 F.3d at 1237. The Complaint, however, fails to do so.

### 1. Berkeley fails to plead with particularity each statement alleged to be misleading, including by failure to state how what was stated was misleading, but rather substitutes innuendo and fragmentary statements that bear little relation to what Sionic actually said.

There can be no misrepresentation if the plaintiff has failed to plead with particularity each statement alleged to be misleading, and the reasons for why it was misleading. 15 U.S.C. § 78u-4(b)(1); *Ziemba*, 256 F.3d at 1202. Here, however, Berkeley frequently fails to plead with particularity not only the misrepresentations purportedly made, but also why and how they were misleading at the time made, a problem that afflicts paragraphs 12, 20, 21, 22, 23, 24, 25, 26, 34, 35, 36, 37, and 38 of the Complaint. Some of these paragraphs fail to specify falsity at all, while others mischaracterize or blatantly ignore what Sionic actually stated, frequently misconstruing fragmented quotes to fabricate the appearance of a misrepresentation.

In paragraph 35, for example, Berkeley tries to spin the statement in Sionic's fact sheet that it had "28 full time employees and contractors" into a truncated misrepresentation that Sionic had "28 full time employees." Besides other problems with this allegation, including its failure to specify how Sionic's actual statement was false, Berkeley also cannot fabricate a misrepresentation by ignoring words. *See, Jackson Inv.*, 325 F.Supp.3d at 1352 (holding that a plaintiff cannot use inferences drawn from one document when they contradict a disclosure made elsewhere).

Similarly, in paragraphs 26, 36 and 37, Berkeley attempts to misconstrue what the Complaint admits was merely an email addressing a

"proposed" future use of Berkeley's investment into an agreement obligating Sionic to apply Berkeley's funds only for certain purposes, although not the repayment of executive loans. This email never says is was an agreement. And Berkeley alleges no facts specifying how, when, and by whom the alleged agreement was made or any of the other requirements of a contract. Not being an agreement, the email could not have been breached even if the funds were allocated for other purposes. No misrepresentation is thus possible.

Similar problems affect Berkeley's use of fragmentary quotes plucked from Sionic's materials. For example, in the third bullet to paragraph 34, Berkeley isolates two phrases taken from slide four of Sionic's overview PowerPoint: "payment commerce platform"; and "we earn ½ to 5% of POS transaction amounts." Based on these truncated quotes, Berkeley alleges a present tense statement about Sionic's existing technology capabilities, which it alleges could not have been true based on a generalized reference to Sionic's 2018 and 2019 financials. Slide four, however, actually states that it was only discussing a "transaction model," and thus could not have been an existing technology and its represented revenue streams, as Berkeley insinuates. Further, as something that was for "discussion purposes," this slide clearly could not have been intended as a complete statement of anything. Similar problems adhere for paragraph 40, which likewise depends

9

on Berkeley's numerous mischaracterizations of Sionic's pro forma. Repeatedly, Berkeley misconstrues what facially were projections for the last two months of 2017 and first two of 2018 as being present tense statements, which for a document authored in October 2017 is a temporal impossibility. As such, they could not be misrepresentations.

> **2. Berkeley depends on conclusory allegations that fail both to state with particularity the misrepresentations made and the reasons for why they were misleading.**

Mere conclusory allegations that lack particularity as to both the misrepresentation and how it was misleading cannot establish a claim for securities fraud. *Jackson Inv.*, 325 F.Supp.3d at 1346 (dismissing a complaint for securities fraud because the plaintiff failed to explain the meaning of essential phrase or how they were false when made). Further, if the plaintiff only has information and belief to support the existence of a purported misrepresentation, then the plaintiff must plead with particularity each fact on which that belief is formed. 15 U.S.C. § 78u-4(b)(1)(B).

Although the particularity rules are clear, Berkeley nonetheless makes only conclusory allegations that not only fail to identify the precise misrepresentation purportedly made, but to specify the reasons supporting the statement as misleading, a failing evident in paragraphs 17, 19, 34, 35, 37, 38, 40, 41, and 42 of the Complaint. Being merely conclusory, these

paragraphs do not satisfy the minimum requirements for a securities fraud claim. *Jackson Inv.*, 325 F.Supp. at 1346; Fed. R. Civ. P. 9(b).

In paragraph 41, for example, Berkeley alleges a series of oral misrepresentations, but cites nothing in support other than rote assertions of "information and belief," lacking any indication as to how Berkeley formed its belief. As such, Berkeley's repeated reliance on "information and belief" fails the particularity standard of 15 U.S.C. § 78u-4(b)(1), something repeated in paragraphs 17, 19, 34, 35, 37, 38, and 40.

Furthermore, Berkeley's repeated reference to Sionic's 2018 and 2019 financial statements, expressly in paragraphs 34, 41, and 43, and impliedly in 43 and 44, does nothing to ameliorate the deficiencies occasioned on mere "information and belief," because Berkeley does nothing allege *how* the financials establish the falsity of Sionic's alleged statements *at the time they were made*. *Jackson Inv.*, 325 F.Supp.3d at 1346, 1352. Without this essential element, Berkeley's attempt to use Sionic's financials to bypass the who, what, when, where, and how as to each element of its claim constitutes nothing more than a conclusory opinion couched as fact. *See, Iqbal*, 566 U.S. at 678, *supra*; *Jackson Inv.*, 325 F.Supp.3d at 1352.

**B. Berkeley does not satisfy the second element of a securities fraud claim because it fails to plead scienter sufficient to give rise to a strong inference that Sionic intended to defraud.**

To survive a motion to dismiss on the question of scienter, the plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, meaning that defendant either intended to defraud or was severely reckless when making allegedly false or incomplete statements; where a strong inference means one that is cogent and at least as compelling as any opposing inference based on the alleged misrepresentation when taken as a whole; and severely reckless means highly unreasonable misrepresentations readily obvious or known to the defendant and which involved an extreme departure from the standards of ordinary care. *Mizzaro*, 544 F.3d at 1238; *Ziemba*, 256 F.3d at 1202.

A complaint must allege facts supporting a strong inference of scienter for each defendant with respect to each violation. *Mizzaro*, 544 F.3d at 1238. This stringent standard requires proof with regard to each material statement or omission that the defendant acted with the required state of mind. *Jackson Inv.*, 325 F.Supp.3d at 1346. Whenever an innocent inference is more cogent and compelling than the plaintiff's scienter inference, the plaintiff will not have met its burden. *Anderson*, 827 F.Supp.3d at 1248.

In an effort to establish scienter in this matter, Berkeley depends upon (1) Sionic's financial performance as recorded in its 2018 and 2019 financial

statements as compared to Berkeley's alleged expectations;[22] (2) Sionic's alleged forward-looking statements; (3) the allegedly restricted due diligence period;[23] and (4) various purported misrepresentations made during that period. The Complaint, however, does meet the standard for scienter in a securities fraud case. Part 1(A) of this Memorandum demonstrates Berkeley's failure to plead its alleged misrepresentations with particularity, meaning they are irrelevant to a claim for securities fraud, including on the element of scienter. Part 1(D), moreover, details Berkeley's failure to allege any material facts establishing a restricted due diligence or Berkeley's justifiable reliance on anything it alleges as a misrepresentation or omission by Sionic. What remains, therefore, are Berkeley's attempts to use Sionic's 2018 and 2019 financials and alleged forward-looking statements. However, these are inadequate for scienter.

For example, Berkeley's attempts to use Sionic's 2018 and 2019 financials in multiple places to show that Sionic's pro forma and other projections were somehow misleading statements at the time made. As a matter of law, however, the mere magnitude of subsequent losses sustained by the defendant is not relevant to establishing scienter, constituting nothing

---

[22] Dkt. 1, para. 34, 34, 41, and 43, Ex. M.
[23] Dkt. 1, para. 31, 33.

more than fraud by hindsight, "which does not constitute securities fraud." *Anderson v*, 827 F.Supp.3d at 1247.

Likewise, statements regarding future performance are only actionable if they are worded as guarantees supported by specific statements of fact. *Mulvaney v. GEO Grp., Inc.*, 237 F.Supp.3d 1308, 1321 (S.D. Fla. 2017). A mix of generalized optimism, opinion, forward-looking statements, and statements of fact are not actionable unless the complaint pleads specific facts demonstrating a given statement as misleading. *Id.* at 1322.

Applying this standard, the paragraphs of Berkeley's Complaint alleging what Sionic stated might happen in the future are insufficient to establish scienter. In paragraph 32, for example, Berkeley states that almost immediately after Berkeley's Investment, Sionic backtracked on its purported written promises, guaranteed partnership agreements and revenue projections. Nowhere, however, does Berkeley point to where Sionic actually made these promises and guarantees. Nor does it explain how "revenue projections" constitute anything more than Sionic's optimistic assessment of a contingent future. As mere conclusory allegations, moreover ones that

Berkeley knew to be untrue,[24] these allegations do not meet the minimum pleading threshold for scienter.

### C. Berkeley's allegations regarding statements made before it met Sionic have no nexus with its decision to purchase securities, failing the third element of securities fraud.

Purported misrepresentations extraneous to a person's decision to purchase securities are immaterial to that decision and thus cannot have been relied upon in connection with it. *See*, *Sec. & Exch. Comm'n v. Goble*, 682 F.3d 934, 946. Here, the Complaint details a series of alleged misrepresentations predating Berkeley's introduction to Sionic, which Berkeley does nothing to connect with its decision to purchase Sionic's securities and which cannot therefore be used to support the elements of a securities fraud claim. *Mizzaro*, 355 F.3d at 1237.

For example, paragraphs 12 through 15 address matters that occurred before Berkeley's introduction to Sionic, including Form D filings, purported sales efforts related to unexercised employee warrants, operating revenues, and corporate capital needs. While lacking the particularity required to show an actionable misrepresentation, these paragraphs also fail to specify how Berkeley relied on the matters related to purchase Sionic stock. As such, and

---

[24] Doc. 1, Ex. B.

in addition Berkeley's failure to plead these paragraphs as material to Count I, they should be dismissed as irrelevant to Berkeley's securities fraud case.

Similar problems afflict paragraphs 16 through 19, which allege a purported shareholder exit strategy that also predates Berkeley's introduction to Sionic. Here, Berkeley never explains how the need to pacify investors, the desire to raise capital, and investor charitable stock donations were supposed to function as an exit strategy, or related to Berkeley's stock purchase. Berkeley's claim that it was unaware of what this purported exit strategy is directly contradicted by the October 25, 2017 introductory email.[25]

### D. Berkeley does not meet the fourth element of securities fraud because its own Complaint and the documents it has put at issue establish that Berkeley could not have justifiably relied on any of the purported misrepresentations that it alleges.

To establish justifiable reliance, the plaintiff must allege facts showing both actual reliance on the information that the defendant provided and the exercise of reasonable diligence to discover the truth behind of the defendant's alleged material misstatements or omissions. *In re Infocure Sec. Litig.*, 210 F.Supp.2d 1331, 1349 (N.D. Ga. 2002).

In weighing whether a plaintiff has sufficiently pled justifiable reliance, the court should consider the totality of factors, including plaintiff's

---

[25] Doc. 1, Ex. B.

sophistication in financial and securities matters, the length of the plaintiff's relationship with the defendant, the plaintiff's access to relevant information, whether the plaintiff has demonstrated defendant's concealment of fraud, the plaintiff's role in initiating or expediting the underlying stock purchase, and the generality or specificity of the alleged misrepresentations. *Infocure*, 210 F.Supp.2d at 1345-1350. The plaintiff must show justifiable reliance for the entire claim, including how each alleged misrepresentation was the substantial, significant, and contributing cause of the plaintiff's damages. *Id*.

Here, Berkeley cannot satisfy this element of a viable securities fraud case. The Complaint and the documents Berkeley put at issue confirm that Berkeley performed all the due diligence it wanted; that what Berkeley alleges as misrepresentations were readily discoverable; and that much of what Berkeley depended upon was subject to strong cautionary language.

## 1. Berkeley performed all the due diligence it thought appropriate as a sophisticated investor, with which Sionic fully cooperated and complied.

As a Registered Investment Advisor with a Half Billion Dollars under management, experienced in numerous private equity deals, Berkeley is a sophisticated investor.[26] Further, Berkeley also alleges no trust or fiduciary

---

[26] Exhibit O, Subscription Agreement, para. 1.

relationship with Sionic, but in fact confirms an arm's length arrangement that began on October 25, 2017.[27] Although Berkeley attempts to paint the picture that Sionic kept it in the dark and rushed the deal, information and documents in fact flowed freely to Berkeley for the entire 42-day period preceding the execution of the Subscription Agreement.

Berkeley never alleges that Sionic withheld any particular material information in response to a specific request by Berkeley. Rather, Sionic provided Berkeley significant amounts of written information, met with Berkeley's representatives, participated in multiple telephone conferences, and typically followed up on requests within 24 hours, and withheld nothing requested. on multiple occasions.[28]

Accordingly, Berkeley had the sophistication and resources to understand the information it received from Sionic and to know what to request. And Berkeley received everything for which it asked. Nothing that Berkeley thus insinuates or implies establishes anything except its ability to verify all information it thought relevant.

## 2. Berkeley's alleged misrepresentations were readily discoverable.

---

[27] Dkt. 1, para. 21, Ex. B.
[28] *See*, *e.g.*, Exhibit B to this Motion (Email 10/25/2017).

A reasonably diligent plaintiff in Berkeley's position would have discovered: if Sionic's subscriber numbers were in the millions or just 1,200; if income was generated from Sionic's payment commerce platform or General Motors partnership; if Sionic had existing contracts with loyalty app partners in more than six major industries or with the companies identified in the overview PowerPoint as Airline 1 and Healthcare 1 that promised Sionic 55 million users on January 1, 2018; and if Sionic had a total of 12 patents and trademarks. The same applies for Sionic's allegedly misleading statements sourced from the fact sheet: that Sionic had 28 full time employees and contractors, and multiple non-disclosed patents pending.

A fact is deemed discovered when a reasonably diligent plaintiff "would have sufficient information about that fact to adequately plead it in a complaint." *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011). Sionic readily would have answered any questions, provided any requested clarification, and directed Berkeley to relevant materials regarding these alleged statements if Berkeley simply would have asked. *Cf. Antelis*, 799 F.Supp.2d at 861.f

A review of the pro forma plan in Berkeley's possession would have informed Berkeley that Sionic's connected commerce platform did not have

millions of subscribers,[29] and that Sionic had not been generating income from General Motors.[30] A request for a schedule of executed contracts would have confirmed which contracts had been executed, and copies of those would have confirmed the terms. A request information about specific activities would have provided details about Sionic's forecasting. (While ignored in the Complaint, Sionic actually informed Berkeley on November 20, 2017 that the Southwest Airlines contract was in negotiation.)[31] Simple requests for more information would have resulted in more detailed information. Given the alleged import of these items, a reasonably diligent plaintiff would have made effort to know more about them, which Berkeley did not.

### 3. Berkeley not only admitted that it was a sophisticated investor aware of risks of its investment, but Sionic also cautioned Berkeley regarding the riskiness of its investment.

In the Subscription Agreement, Berkeley expressly acknowledged that it was an experienced, accredited and sophisticated investor, capable of evaluating the merits and risks of its investment; able to fend for itself; and was experienced in evaluating and investing in early-stage companies.[32]

---

[29] _____.

[30] _____.

[31] Dkt. 1, Ex. J; Defendant's supplemented Ex. J. Berkeley's allegation that Sionic represented the Southwest Airlines agreement was almost completed, (Dkt. 1, para. 39), is also belied by this email correspondence.

[32] Exhibit O to this Memorandum.

Berkeley also acknowledged that is was investing without sales literature or prospectus, but had exercised the opportunity to discuss the Company's business, management and financial affairs with Sionic's management and received all information requested regarding its investment.[33] Finally, Berkeley agreed that it had consulted with legal and financial advisors and asked all questions of Sionic's management that Berkeley's professional advisors deemed necessary regarding the investment.[34]

In addition, part 5 to the Private Placement Memorandum, titled "Risk Factors," cautioned that Sionic was high-risk and early-stage, maybe unable to implement its business plan and may never become profitable.[35] Sionic also warned that defects in the mCommerce platform may have a material adverse effect on operations, funds may prove insufficient, and additional capital raises may be necessary.[36] Both Berkeley's acknowledgements in the Subscription Agreement and Sionic's cautionary statements foreclose any possibility that Berkeley could have justifiably relied on anything that it now claims in its Complaint. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1266 (11th Cir. 2013).

---

[33] Exhibit O to this Memorandum.
[34] Exhibit O to this Memorandum.
[35] Exhibit N to this Memorandum.
[36] Exhibit N to this Memorandum.

**E. Berkeley does not satisfy the fifth element of a securities fraud as it has failed to articulate actionable damages.**

Given its acknowledgements in part I(D)(3), Berkeley has not articulated damages that are different in type than those that would naturally flow from a speculative investment in an early-stage company. As such, it has failed to specify damages sufficient to establish harm.

**F. Berkeley does not satisfy the sixth element of a securities fraud claim because it has not alleged with particularity how any purported loss is causally connected to an actual misrepresentation of Sionic.**

Loss causation requires that a defendant's fraud be both the but-for and proximate cause of a plaintiff's later losses. *Kinnett v. Strayer Educ., Inc.,* 501 F. App'x 890, 892 (11th Cir. 2012). The plaintiff must show that the defendant's fraud, as opposed to some other factor, proximately caused its losses, it not being enough that the plaintiff merely alleges an inflated stock purchase price. *Kinett*, F. App'x at 892. Here, Berkeley has made no allegation regarding loss causation, expect perhaps by oblique reference to purported stock donations by other investors in paragraph 17. Completely lacking, however, any causal connection to any alleged fraud this is wholly inadequate to support a securities fraud claim.

**G. Punitive Damages is only available to the common law fraud claim – not securities fraud.**

Berkeley's punitive damages claim should be dismissed because punitive damages are not recoverable for a securities fraud claim or anything absent a valid tort claim. *See, Pelletier v. Stuart-James Co., Inc.*, 863 F.2d 1550, 1557 (11th Cir. 1989); *Woods v. Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1013-14 (11th Cir. 1985). On the other hand, Georgia law permits punitive damages in a tort action only if proven by clear and convincing evidence of willful, wonton or reckless conduct. O.C.G.A. § 51-12-5.1. Here, Berkeley's claim for punitive damages is derivative of its tort claim for common law fraud and thus for the same reasons should be dismissed. As such, Berkeley is not entitled to punitive damages. *See, Anderson v. Dunbar Armored, Inc.*, 678 F.Supp.2d 1280, 1335 (N.D. Ga. 2009).

## II.    Berkeley filed two days past the statute of limitations on a securities fraud case, requiring dismissal with prejudice.

Should the Court determine Berkeley's allegations are sufficiently pled to survive this Motion to Dismiss, then Berkeley's Complaint should be dismissed on the grounds the Complaint is barred by the statute of limitations. Securities fraud claims under Section 10(b) and Rule 10b-5 are governed by a two-year statute of limitations, 28 U.S.C. § 1658(b), which is based on when the plaintiff did discover, or a reasonably diligent plaintiff would have discovered the facts constituting the violation, whichever is first.

23

*Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010). Facts "constituting the violation" include scienter. *Id*.

Sionic contends that Berkeley has failed to sufficiently plead the elements of a securities fraud case. However, if the Court determines otherwise, including on scienter, then for the sole purpose of this statute of limitations argument, Sionic will assume certain of Berkeley's allegations as true, to show the Court that based on Berkeley's own allegations, Berkeley had discovered, or a reasonably diligent plaintiff would have discovered, the facts constituting the alleged violation no later than December 5, 2017, the date on which the Subscription Agreement closed. (Subscription Agreement, para. 8.) However, Berkeley did not file this lawsuit until December 7, 2019, which was at least two days after the two-year statute of limitations had run. (Dkt. 1.) Therefore, Berkeley's Complaint is time-barred.

Nearly all of Sionic's alleged misrepresentations and omissions had been made by October 31, 2017, which was 35 days before Berkeley entered into the Subscription Agreement. Thus, there was a plenty of time for a reasonably diligent plaintiff to discover the facts constituting Sionic's alleged related scienter. For the reasons stated in part I(A) and (D) to this Memorandum, a reasonably diligent plaintiff would have had sufficient

24

information about what Berkeley now alleges as the cause of harm in its

complaint. *MBIA*, 637 F.3d at 175. As such, Berkeley claim is time-barred.

## III.  Berkeley has failed to plead an actionable case for common law fraud under Georgia law, requiring dismissal.

Berkeley's common law fraud claim should be dismissed for its failure

to state a claim. Georgia's "tort of fraud has five elements: a false

representation by a defendant, scienter, intention to induce the plaintiff to

act or refrain from acting, justifiable reliance by plaintiff, and damage to

plaintiff." *Insight Technology, Inc. v. Freightcheck*, 633 S.E.2d 373 (Ga. App.

2006). Fed. R. Civ. P. 9(b) requires the circumstances constituting fraud to be

pled with particularity. Similar to securities fraud, mere broken promises,

unfilled predictions or erroneous conjecture as to future events cannot

constitute misrepresentations. *Fuller v. Perry*, 476 S.E.2d 793 (Ga. App.

1996). Moreover, a claim for fraud cannot succeed when the plaintiff has

failed to show that reliance on a misrepresentation was reasonable and not

the product of lax due diligence. *Bender v. Southtowne Motors of Newnan II,*

*Inc.*, 793 S.E.2d 618, 625 (Ga. App. 2016). Here, Berkeley's Complaint fails to

show that it is premised on anything more than projections and events that

could never constitute a misrepresentation in the first instance, and on

matters that reasonable due diligence would and should have uncovered.

Accordingly, Berkeley has no claim for common law fraud.

## CONCLUSION

For the foregoing reasons, Sionic moves for the dismissal of Berkeley's

Complaint, with prejudice.

Respectfully submitted this January 30, 2020.

/s/ Simon Jenner

Simon Jenner, Esq.
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Richard J. Baker, Esq.
Georgia Bar No. 033879
rick.baker@bakerjenner.com
Lynn Chen Woodward, Esq.
Georgia Bar No. 861150
lynn.woodward@bakerjenner.com
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Telephone: (404) 400-5955
*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that the foregoing has been prepared in accordance with Local Rule 5.1C, using Century Schoolbook, 13 point. I further certify I have electronically filed, on the date stated below, the foregoing MEMORANDUM IN SUPPORT OF SIONIC MOBILE CORPORATION'S MOTION TO DISQUALIFY BUSCH, SLIPAKOFF, MILLS & SLOMKA, LLC AS COUNSEL OF RECORD with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to attorneys of record, as follows:

_

_

This January 30, 2020.

/s/: Simon Jenner
Simon Jenner
Georgia Bar No. 142588
Richard J. Baker
Georgia Bar No. 033879
Lynn Chen Woodward
Georgia Bar No. _____
*Attorneys for Defendant*
*Sionic Mobile Corporation*

BAKER JENNER LLLP
210 Interstate North Parkway SE
Suite 100
Atlanta, Georgia 30339

Tel: 404.400.5955
Fax: 404.745.0589
Email: rick.baker@bakerjenner.com
Email: simon.jenner@bakerjenner.com
Email: lynn.woodward@bakerjenner.com