UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BERKELEY VENTURES II, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>SIONIC MOBILE CORPORATION and RONALD D. HERMAN<br><br>  Defendants. | Case No.: 1:19-CV-05523-ODE |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW Berkeley Ventures II, LLC ("Berkeley"), Plaintiff in the above-styled action, and responds to Defendants Sionic Mobile Corporation ("Sionic") and Ronald D. Herman's ("Herman") (collectively "Defendants") Motion to Dismiss as follows:

I.  **STATEMENT OF FACTS**

Sionic, a Georgia limited liability company allegedly in the payments industry, directly solicited Berkeley to purchase shares of its common stock through an investment scheme involving material misrepresentations, misleading financial projections, inflated evaluations and false claims regarding strategic

1

partnerships and continuous revenue streams. Plaintiff's Chief Executive Officer, Anthony Palazzo ("Mr. Palazzo"), was introduced to Sionic and Defendant Herman by a key board member via email on October 25, 2017 (the "Introductory Email"). Complaint at ¶ 20. The Introductory Email included an executive summary of Sionic and encouraged Berkeley to invest in an exclusive opportunity that was only available for a few short weeks. Id. at ¶ 21-22.

Representatives of Plaintiff met with Sionic at its headquarters in Atlanta on October 31, 2017.  Following this meeting, Mr. Palazzo requested a breakdown of the proposed use of funds and received an email from Sionic on November 1, 2017 outlining Sionic's use of Berkeley's investments funds for 90 days (the "Use of Funds Email"). Id. at ¶ 26. Plaintiff also received an updated proforma showing detailed revenue and projections for each customer (hereafter "Proforma Spreadsheet"). Id. On November 2, 2017, Plaintiff requested and received a schedule of debt from Sionic showing outstanding notes owed to Defendant Herman and other key board members (hereafter "Debt Schedule").  Id. at ¶ 27. On November 8, 2017, Defendants sent a number of investment documents to Plaintiff including: (i) a Subscription Agreement, (ii) an Investor Questionnaire, (iii) Sionic's Amended and Restated Shareholder Agreement, (iv) Joinder to the Shareholders' Agreement, and (v) Sionic's wire instructions (collectively "Investment Documents").  Id. at ¶ 28.

On December 5, 2017, Plaintiff sent Sionic signed copies of the Investment Documents and two days later, on December 7, 2017, finalized the transaction by wiring $1,600,000 into Sionic's bank account for purchase of 800,000 shares of common stock (hereafter "Berkeley's Investment"). Id. at ¶ 30. During the due diligence period that was artificially shortened by Defendants as part of their scheme, Sionic provided Berkeley with written statements, marketing materials, financial information, emails, executive summaries, fact sheets, draft contracts and use of proceeds statements as part of a concerted effort to mislead Berkeley about Sionic's financial position, business opportunities, product development, strategic partnerships, formalized agreements, share price and growth projections. Id. at ¶ 33. The material misrepresentations and omissions contained within these written documents and oral statements are carefully and methodically detailed in the Complaint forming an overwhelming case against Defendants for fraud firmly within the heightened pleading standards required by law.

II. **ARGUMENTS AND CITATIONS TO AUTHORITY.**

    a. General Pleading Requirements.

Plaintiff must plead "enough facts to state a claim to relief that is ***plausible*** on its face" in order to survive a motion to dismiss. Barnes v. AstraZeneca Pharms. LP, 253 F. Supp. 3d 1168, 1172 (2017) citing to Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007). The pleadings are construed broadly so that all well-pleaded facts are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. Cooper v. Pate, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); Conner v. Tate, 130 F. Supp. 2d 1370, 1373 (N.D. Ga. 2001). The factual allegations in the complaint must be "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." Barnes, at 1172, citing to Twombly, 550 U.S. at 555. More particularly, a complaint should contain enough factual allegations to provide "'fair notice' of the nature of the claim" and the "'grounds' on which the claim rests." Id. citing to Twombly, 550 U.S. at 555 n.3. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Barnes, at 1172 quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal citation omitted). However, a motion to dismiss should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992).[1]

---

[1] The Eleventh Circuit sometimes permits reference to a new document attached to a motion to dismiss, but **only** where the attached document is "central to the plaintiff's claim" and is "undisputed" in the sense that "the authenticity" of the

b. Heightened Pleading Requirements

In addition to the *plausibility* requirements outlined *supra,* 15 U.S.C. § 78u-4, known as the Private Securities Litigation Reform Act, and Fed. R. Civ. P. 9(b) further require a plaintiff asserting securities fraud to plead certain facts with particularity. However, they do not require "sheer perfection or set the bar so high as to make it near impossible to get beyond the dismissal stage." 100079 Canada Inc. v. Stiefel Labs., Inc., No. 11-22389-SCOLA, 2011 WL 13116079, at *14 & n.3 (S.D. Fla. Nov. 30, 2011). "The Eleventh Circuit has interpreted this to mean that the complaint must set forth **(1)** precisely what statements or omissions were made in which documents or oral representations; **(2)** the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; **(3)** the content of such statements and the manner in which they misled the plaintiff; and **(4)** what the defendant obtained as a consequence of the fraud." Wallace v. JEY Hospitality Grp., LLC, No. 18-81593-Rosenberg/Reinhart, 2019 U.S. Dist. LEXIS 17520, at *6 (S.D. Fla. February 1, 2019) citing to FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (noting that

---

document is not challenged." White v. Coca-Cola Co., No. 06-CV1118-ODE, 2007 U.S. Dist. LEXIS 105425, at *2 (N.D. Ga., March 30, 2007) citing to Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

while Rule 9(b) requires the circumstances of the fraud to be pled with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). Plaintiff should set forth with particularity "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Wallace, at \*\*7-8.

Generally, a claim for federal securities fraud under 17 C.F.R. § 240.10b-5 arises where the defendant has made a material misrepresentation or omission in connection with the purchase or sale of securities, while acting with scienter (or severe recklessness) and thereby caused the purchaser or seller to suffer a loss. In re Ebix, Inc. Secs. Litig., 898 F. Supp. 2d 1325, 1339 (N.D. Ga. 2012) (Story, J.); In re ValuJet, Inc., Sec. Litig., 984 F. Supp. 1472, 1475, (N.D. Ga. 1997)(Thrash, T.). Similarly, a claim for common law fraud under Georgia law requires that the plaintiff show that the defendant made a false material misrepresentation of an existing fact with the knowledge that it was false, or with the reckless disregard as to whether it was true, and that it was with the intent to cause the plaintiff to act, that the plaintiff relied on that misrepresentation to plaintiff's proximate

injury. Brown v. Ragsdale Motor Co., 65 Ga. App. 727, 730 (1941); See, also, Daugert v. Holland Furnace Co., 107 Ga. App. 566 (130 SE2d 763) (1963).

    c. <u>Berkeley's Complaint Identifies Precise Statement and Omissions Made by Sionic In Support of Each Element of the Heightened Pleading Requirements Adopted By the Eleventh Circuit.</u>

Sionic generally contends that Berkeley's complaint fails to state a claim because "[s]ome of these paragraphs fail to specify falsity at all, while others mischaracterize or blatantly ignore what Sionic actually stated... to fabricate the appearance of a misrepresentation." Brief at p. 8. However, the allegations of the complaint should be reviewed as a whole so as to provide context that the "total mix" of allegedly false statements/omissions would be material or misleading to a reasonable investor. In re Sci. Atlanta, 239 F. 2d 1351, 1360 (N. D. Ga 2002).

For example, where a plaintiff alleged that defendant company misrepresented its financial condition by omitting sales practices that skewed sales and affected inventory, without disclosing that it created an altered perception of market value, these allegations were sufficient to survive a motion to dismiss. Id. at 1362-1363. Likewise, failure to disclose activity that creates the illusion of growth sufficiently states a claim for securities fraud. In re Coca-Cola Enters. Inc. Secs. Litig., 510 F. Supp. 2d 1187, 1196 (N. D. Ga 2007).  Furthermore, repeated statements assuring the public of the strength of security of networks, security of

personal data, company's compliance with laws, and integrity of a company's internal controls is sufficient to state a claim for securities fraud where these measures were grossly inadequate and deficient by industry standards. In re Equifax Inc. Sec. Litig., 357 F. Supp. 3d 1189, 1207-1210 (N. D. Ga 2019).

Here, the specific examples of false and misleading statements Berkeley alleged include the following list:

- The Executive Summary claimed that "millions of consumers" were using its products while subsequent financial information revealed only 1,200 actual subscribers at the time the statement was made. Complaint at p. 34.

- The Executive Summary claimed that there was a partnership with General Motors in place with high profits that subsequent documents revealed did not exist. Id.

- The Executive Summary claimed that a payment commerce platform was in existence and generating point of sale profits.  Later financial disclosures showed that there was no such commerce platform in existence, nor any revenues approaching the suggested levels. Id.

- The Executive Summary claimed that there were existing contracts and partnerships in the auto, airline, banking, hotel, mobile phone, and insurance industries. However, the financial performance of Sionic and

later financial disclosures reveal those partnerships did not actually exist. Id.

- The Executive Summary claimed that Sionic had finalized a deal with an airline that would bring thirty million users. Later documents revealed that no such agreement was in place, nor did Sionic have the capacity or technology to handle such volume. Id.

- The Executive Summary claimed projected exponential growth in sales that were based on agreements Sionic had not formalized and would require a technological capacity far beyond Sionic's capabilities. Id.

- The Fact Sheet overstated the employee and contractors actually on staff inflating the output and capabilities of Sionic. Id. at ¶ 35.

- The Fact Sheet overstated patents pending for Sionic overstating its technological capabilities and ingenuity. Id.

- The email update on November 20, 2017, by Defendant Herman represented that an agreement with Southwest Airlines was almost completed, that a General Motors soft launch was happening and going "fine" and that various agreements were being negotiated. However, later financial disclosures revealed those statements were false and misleading at the time they were made. Id. at ¶ 39.

- The Proforma Spreadsheet claimed current existing revenues from a number of restaurants that implying the major restaurant deals had been formalized. Id. at ¶ 40.
- The Proforma Spreadsheet claimed current high vehicle implying the General Motors deal had been finalized. Id.
- The Proforma Spreadsheet claimed projected users and projected revenue within *one month* suggesting deals with Starbucks, JetBlue, and MRM were in place. Id.
- During an in-person meeting on October 31, 2017, Defendant Herman:
  - claimed that Sionic was actually in the process of installing its equipment at 100,000 merchant locations;
  - claimed that Sionic had already integrated its platform with Chase Payments, FreedomPay, MerchantLink and Curbside;
  - claimed that beginning on November 13, 2017, all new General Motors vehicles will be equipped with Sionic Mobile technology in the OnStar Dashboard;
  - claimed that Sionic had existing contracts with Panera Bread, Lowes, Banana Republic, California Pizza Kitchen, Domino's Pizza, Burger King, IHOP, Regal Cinemas, Office Depot, Krispy

10

>> Kreme, Petco, Bed Bath & Beyond, Applebees, Chilis, Old Navy, and Papa Johns. Id. at ¶ 41.

- During an in-person meeting on October 31, 2017, Defendants claimed that Sionic's technology was already deployed in all new GM vehicles which would generate millions of users and exponential revenues despite not actually having the agreement in place. Id. at ¶ 42.

These are a few of the precise statements and omissions of material facts detailed in Berkeley's Complaint in support of its claim for securities fraud. These statements demonstrate that Berkeley's Complaint overwhelmingly meets all elements of the heightened pleading standards set forth in Wallace, 2019 U.S. Dist. LEXIS 17520, at *6. In conjunction with each precise statement, Berkeley has outlined the time and place of each statement and the person or document that made (or omitted) the statement. Wallace, 2019 U.S. Dist. LEXIS 17520, at *6. Additionally, each asserted false statement in the Complaint is followed by the manner in which it misled Berkeley as required by Wallace, 2019 U.S. Dist. LEXIS 17520, at *6. The totality of the statements also provides the context for how the total mix of statements (and omissions) by the Defendants came together to create the illusion of an established company with active contracts, users, and revenues to support their financial projections and convince Berkeley to invest. See In re Sci.

11

Atlanta, 239 F. 2d 1351, 1360 (N. D. Ga 2002) (the total mix of allegedly false statements and omissions would be material or misleading to a reasonable investor.) Moreover, the Complaint alleges how these false statements directly resulted in Sionic receiving $1,600,000 from Berkeley and Sionic's subsequent misuse of the proceeds. Wallace, 2019 U.S. Dist. LEXIS 17520, at *6.

> d. Berkeley's Complaint States Plausible Claims for Securities Fraud Under 10b-5 and Georgia Law Exceeding the Pleading Requirements Necessary to Survive a Motion to Dismiss.

On a motion to dismiss, Berkeley does not have to prove the merits of its claims as a matter of law.[2] Instead, Berkeley must plead sufficient facts to show the *plausibility* that allows the court to draw the reasonable inference that Sionic is liable for the alleged misconduct. Barnes, at 1172 quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In particular, to state a claim upon which relief can be granted for federal securities fraud under 17 C.F.R. § 240.10b-5, a defendant is liable for (1) making a material misrepresentation or omission in connection with

---

[2] Sionic's motion to dismiss is an improper attempt to litigate the ultimate issues of fact without the benefit of discovery. In support of its motion, Sionic cites to materials outside the Complaint without complying with the authenticity requirements or indicating where in the Complaint Berkeley incorporates or otherwise references the supporting documents. See gen. White v. Coca-Cola Co., No. 06-CV1118-ODE, 2007 U.S. Dist. LEXIS 105425, at *2 (N.D. Ga., March 30, 2007) citing to Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); see also Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

the purchase or sale of securities; (2) while acting with scienter (or severe recklessness); (3) and thereby causing the purchaser or seller to suffer a loss. In re Ebix, Inc. Secs. Litig., 898 F. Supp. 2d 1325, 1339 (N.D. Ga. 2012) (Story, J.); In re ValuJet, Inc., Sec. Litig., 984 F. Supp. 1472, 1475, (N.D. Ga. 1997)(Thrash, T.).

To establish scienter, a plaintiff must allege facts that, if assumed true and considered "collectively," could lead a reasonable person to "infer" "a fifty-fifty chance" that the defendant made a misrepresentation or omission at least recklessly. In re: Ebix, Inc. Sec. Litig., 898 F. Supp. 2d 1325, 1344 (N.D. Ga. 2012); See also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 326 (2007). Plaintiff may aggregate relevant facts and reasonable inferences to demonstrate that a defendant acted with scienter. Phillips v. Sci.-Atlanta, Inc., 374 F.3d 1015, 1017 (11th Cir. 2004); Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp., 111 F. Supp. 3d 1336, 1374 (S.D. Fla. 2015). Thus, "the inference of scienter can arise from an aggregation of particularized facts, even if each individual fact standing alone does not create a sufficiently strong inference." In re Spear & Jackson Sec. Litig., 399 F. Supp. 2d 1350, 1358 (S.D. Fla. 2005).

Scienter can be sufficiently alleged by facts demonstrating a departure from the standards of ordinary care or a danger of misleading buyers on facts which are either known to the defendant or so obvious that the defendant must have been aware

of it. FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1299(II)(B)(1) at 1300 (11th Cir.2011). Moreover, recklessness can be shown by allegations that defendant possessed knowledge of facts or access to information contradicting their public statements, "so as to prove that defendants knew or should have known that they were misrepresenting material facts related to the corporation." In re Sci. Atlanta, Inc. Sec. Litig., 754 F. Supp. 2d 1339, 1360 (N.D. Ga. 2010).

In the instant case, the alleged false statements and omissions were made by Sionic's CEO and a member of its Board of Directors, individuals who normally would have first-hand knowledge of the actual contracts procured by Sionic, actual technology developed and owned by Sionic, and actual revenues generated by Sionic.[3] Thus, the totality of Berkeley's allegations support a clear inference that Sionic acted with scienter and intent to deceive Berkeley in investing in Sionic.

Similarly, Sionic's contention that Berkeley cannot establish a claim for fraud in hindsight because statements about future events are not actionable also fails. Projections as to future sales or events when made with an intent or

---

[3] Authority or access to information alone is insufficient to show scienter, but recklessness can be "established by allegations that the defendants had knowledge of facts or access to information contradicting their public statements." In re Netbank, Inc. Sec. Litig., No. 1:07-CV-2298, 2009 WL 2432359 at *12 (N.D. Ga. Jan. 29, 2009) (the CEO and CFO's "access to internal reports that showed contrary information to what was in their public statements and financials" was probative of scienter).

knowledge that it will not take place can be the basis of a fraud claim. See Denim N. Am. Holdings, LLC v. Swift Textiles, LLC, No. 10-CV-45-CDL 2011 U.S. Dist. LEXIS 8974 at * 42 (M.D. Ga. January 28, 2011) citing to *BTL COM Ltd., Co. v. Vachon*, 278 Ga. App. 256, 258, 628 S.E.2d 690, 694 (2006) (Georgia recognizes an exception "where promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place.")  Here, Sionic created the false illusion that it expected significant future revenue by falsely asserting the existence of contracts, users, and partnerships that misrepresented Sionic's current performance and probability of meeting those future projections. See gen. Complaint, at ¶¶ 33-44. Accordingly, Sionic's hindsight argument does not support a dismissal of Berkeley's claims.

Lastly, Sionic's argument that Berkeley waived or disclosed away the alleged fraud does not support its motion to dismiss. General cautionary or risk-disclosing language in documents supplied as part of the sale of securities does not automatically neutralize misstatements or omissions of fact made to the purchaser. See FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1299 (11th Cir. 2011); see also Gross v. Medaphis Corp., 977 F. Supp. 1463, 1473 (N.D. Ga. 1997)(no safe harbor for misstatement of 'hard' figures or 'current or past

15

conditions').[4] Here, Berkeley alleges that Sionic made false statements about actual contracts in existence, actual users signed up, and actual technology owned by Sionic in order to support future sales projections. Complaint at ¶¶ 33-44. Sionic is not provided a blanket license to defraud potential investors simply by relying on vague and ambiguous language in a standard investor disclosure form. Thus, at the motion to dismiss stage, Sionic's argument that Berkeley waived its risk fails as a matter of law.

III.   Berkeley's Complaint is Not Precluded by the Statute of Limitations.

Sionic's argument that Berkeley's Complaint is untimely under the statute of limitations requires the illogical assumption that Berkeley invested $1,600,000.00 with the actual knowledge at the time of Sionic's misrepresentations. Sionic contends that the statute of limitations on Berkeley's claims expired on December 5, 2019 and claims that Berkeley discovered or should have discovered Sionic's fraud on December 5, 2017, the date it signed the Subscription Agreement, and two days prior to funding the investment. However, claims involving fraud or deceit may be brought within two years **after the**

---

[4] A waiver of fraudulent misrepresentations is binding only where it's a later agreement made with actual or imputed knowledge of the facts constituting the alleged fraud. See Bissett v. Ply-Gem Industries, Inc., 533 F2d 142 (5th Cir. 1976) adopted by Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981).

16

**discovery** of the facts constituting the violation. See 28 U.S.C. § 1658; Bacon v. Stiefel Labs., Inc., 51 Employee Benefits Cas. BNA, No. 09-21871-CV-KING, 2011 U.S. Dist. LEXIS 119654 at * 28 (S. D. Fla. October 17, 2011)(cause of action for securities fraud arises when the fraud is discovered or should have been discovered in the exercise of due diligence).[5] Here, it is both reasonable and logical to conclude that Berkeley's knowledge of Sionic's fraud occurred after its investment. Thus, to the extent Sionic's motion to dismiss is based on this tortured statute of limitations reasoning, it should be denied in its entirety.

IV. **CONCLUSION**

Berkeley's Complaint provides precise statements and omissions made by Sionic in furtherance of its fraudulent scheme to induce Berkeley's $1,600,000 investment in Sionic's common stock. The Complaint details the time, place and manor of each misrepresentation and the corresponding consequences of the fraud. The totality of the Complaint plausibly supports Sionic's liability for securities fraud and common law fraud. Therefore, Defendants' Motion to Dismiss must be summarily denied.

---

[5] The Supreme Court rejected the application of duty of inquiry notice in security fraud cases because of the specific statutory language of 28 U.S.C. § 1658). See Merck & Co., Inc. v. Reynolds, 559 U.S. 633 (2010).

Submitted this 13th day of February 2020.

> By: *Bryan E. Busch*
> Bryan E. Busch, Esq.
> Ga Bar No. 006055
> bb@bsms.law
> Laura Mirmelli, Esq.
> Ga Bar No. 678008
> lm@bsms.law
>
> BUSCH SLIPAKOFF MILLS & SLOMKA LLC
> Riverwood 100, Ste. 2100
> 3350 Riverwood Parkway
> Atlanta, Georgia 30339
> Tel: (404) 800-4062

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1, N.D. GA.

The undersigned hereby certifies that this pleading was prepared using one of the font and point selections approved by this Court in L.R. 5.1C, N.D. Ga. Specifically, Times New Roman font in 14 point.

By: */s/ Bryan E. Busch*
Bryan E. Busch, Esq.
Georgia Bar No. 006055

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send email notification of such filing to counsel.

This 13th day of February, 2020.

By: */s/ Bryan E. Busch*
Bryan E. Busch, Esq.
Georgia Bar No. 006055