IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BERKELEY VENTURES II, LLC<br><br>    Plaintiff,<br><br>v.<br><br>SIONIC MOBILE CORPORATION and RONALD D. HERMAN,<br><br>    Defendants. | Civil Action File No.<br>1:19-cv-05523-ODE |

**SIONIC MOBILE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY BUSCH, SLIPAKOFF, MILLS & SLOMKA, LLC AS COUNSEL OF RECORD**

Defendant Sionic Mobile Corporation ("Sionic") respectfully submits this reply brief in support of its Motion to Disqualify Busch, Slipakoff, Mills & Slomka, LLC ("Busch Slipakoff") as counsel of record to Plaintiff Berkeley Ventures II, LLC ("Berkeley").

Busch Slipakoff is disqualified from representing Berkeley in the present case because this case is substantially related to Adam Slipakoff's prior representation of Sionic in multiple ways. Berkeley's allegations against Sionic also involve attacks on Slipakoff's prior work. Therefore, the facts in this case are not analogous with those of the Bradley nursing home negligence case cited by Berkeley. Rather, the facts here create logical

1

connections between Slipakoff's prior work and Berkeley's lawsuit against Sionic.[1]

Contrary to Berkeley's baseless complaints that Sionic filed its motion in bad faith and as a litigation tactic without concern for ethical violations, Sionic brought its motion to address its considerable concern about Busch Slipakoff's ethical violations at Sionic's expense. While Mr. Busch may have found it appropriate to express in his expletive-filled rant the graphic torture Busch Slipakoff plans to subject Sionic to in this litigation, (Declaration of Richard Baker at Ex. A, Ex. B), Sionic simply seeks the protection intended by the rules of ethics Busch Slipakoff seeks to weave around.

Sionic has learned that Adam Slipakoff provided legal counsel to Sionic shareholder and director Patrick Gahan and his businesses from on or around June 2014 through August 2018. (Aff. of Ron Herman of 2/27/20 (Herman Aff. II) ¶3, Ex. A). In November and early December of 2015, Adam

---

[1] When considered together, the facts combine to evidence the appearance of impropriety, which remains pertinent to the analysis and supports disqualification of Busch Slipakoff. See Bayshore Ford Truck Sales, Inc. v .Ford Motor Co., 380 F.3d 1331 (11th Cir. 2004).

Slipakoff, with the assistance of another attorney working for him, prepared the legal documents to facilitate the donation and transfer of shares of Gahan's Sionic stock to non-profit entities, as well as the transfer of Sionic stock from one or more of Mr. Gahan's businesses. (Dkt. 9-2 ¶4 and Ex. 1; Herman Aff. II ¶4, Ex. A.) Slipakoff recommended that Sionic issue new share certificates to reflect the changes in stock ownership, and Sionic complied with the request. (Dkt. 9-2 ¶5 and Ex. 1.)

Now, Berkeley alleges Sionic engaged in a nefarious "Exit Strategy for Existing Investors" because its investors (like Slipakoff's client, Gahan) donated their shares to one or more charities allegedly at inflated share prices to generate charitable tax deductions. (Dkt. 1 ¶¶16-19.) Berkeley alleges the "arrangement enabled Defendants to continue raising capital for Sionic Mobile without publicizing the company's losses," and that "Defendants failed to disclose these charitable arrangements to Berkeley prior to its investment." (Dkt. 1 ¶¶16-19.). Berkeley relies on these allegations in support of all of its claims against Sionic. (Dkt. 1 ¶¶41, 48, 55.)

Thus, Berkeley is suing Sionic based on alleged actions of Slipakoff's client, Mr. Gahan, which were facilitated by Slipakoff, and Sionic's related actions which were recommended by Slipakoff just days before Slipakoff took on Sionic as a client. On December 8, 2015, Sionic engaged Slipakoff as

3

Sionic's attorney for corporate matters. (Dkt. 9-2 at Ex. 5.) Thus, if there were any potential legal concerns raised by the proposed donations involving Sionic action taken at the recommendation of Slipakoff just a few days earlier, then Slipakoff, as Sionic's corporate counsel, had a duty to inform and advise Sionic about it. He did not. (Herman Aff. II ¶5, Ex. A.) Nevertheless, Slipakoff's firm now is suing his former client, Sionic, in order to attack a legal transaction that he facilitated and which is substantially related to this suit such that Busch Slipakoff is disqualified from representing Berkeley.

Berkeley's Complaint includes allegations about unidentified Sionic directors, including that Sionic committed fraud on Berkeley through the actions of its directors. (Dkt. 1 ¶¶9-11) In Berkeley's response to Sionic's motion to disqualify, Slipakoff averred that an unidentified shareholder and Board member of Sionic (the name is redacted) solicited Slipakoff to invest in Sionic. (Dkt 15-1 ¶¶9-10.) In fact, Berkeley's response to the motion to disqualify, including Slipakoff's affidavit, is full of redacted communications supposedly between Slipakoff and this unidentified Sionic shareholder and director. Berkeley contends in its motion to seal that it redacted the material because it is all privileged attorney-client communications with Slipakoff.

After Sionic's multiple requests to Berkeley for the identification of the unnamed shareholder and director and production of unredacted documents,

4

on February 21, 2020, Berkeley identified Patrick Gahan as the previously unidentified shareholder, director and Slipakoff client. (Declaration of Richard Baker ¶3, Ex. B) Thus, Berkeley, through Busch Slipakoff, has alleged that Sionic, acting through Slipakoff's client Gahan, defrauded Berkeley. Moreover, Berkeley claims, based on Slipakoff's affidavit testimony, that Gahan also was acting on behalf of Sionic between October 19, 2015, and December 8, 2015, when he solicited Slipakoff on multiple occasions for the express purpose of purchasing Sionic stock and warrants to purchase stock. (Doc. 15 at 3.).

On December 4, 2015, Gahan told Sionic CEO Ron Herman via email he thought Slipakoff was a good strategic partner to consider for some warrants. (Dkt. 9-2 at Ex. 2.) At the time, Sionic had a practice of offering warrants to select service providers and other key persons who could assist with, and add value to, Sionic's business. (Herman Aff. II ¶6, Ex. A.) Gahan identified for Herman five valuable introductions Slipakoff said he could make to Sionic, and Gahan noted that Slipakoff had even more potential investor contacts. (Dkt. 9-2 at Ex. 2.) Sionic was interested in providing Slipakoff warrants because he was in the unique position to assist Sionic as its corporate counsel in regard to potential investments and related documents. (Dkt. 9-2 ¶¶6-14; Herman Aff. II ¶7, Ex. A.)

Slipakoff attests that he requested Sionic's PPM and pro forma on December 7, 2015, the day of his initial meeting with Herman, and Berkeley argues that this fact demonstrates Sionic did not have any discussion with Slipakoff indicating an attorney-client relationship. (Dkt. 15 at 6.). Berkeley and Slipakoff would have the court believe that Sionic's engagement of Slipakoff LLP as corporate counsel came as a complete surprise. However, when Herman and Slipakoff met on December 7, 2015, they did discuss the engagement of Slipakoff as Sionic's corporate counsel. (Dkt. 9-2 ¶¶7-9.) The result was that Sionic engaged Slipakoff as corporate counsel the very next day. (Dkt. 9-2 at Ex. 5.) Thus, any documents provided to Slipakoff on or after December 7, 2015, were in connection with his potential and then actual representation of Sionic. As a potential investor pursuant to the warrants Sionic offered to Slipakoff, those documents may have been of use to him personally, but that fact does not alter the fact Sionic provided them to Slipakoff pursuant to their attorney-client relationship and in furtherance of the work he would do for Sionic. Berkeley is not entitled to retroactively select or alter the purpose or purposes for which Sionic provided any documents or information to its corporate counsel, Slipakoff.

Berkeley alleges that between 2015 and 2017, Sionic pushed to more than a dozen investors a once-in-a-lifetime opportunity to purchase expiring

warrants for the purchase of discounted Sionic stock. (Dkt. 1 ¶13.) According to Berkeley, during this same time period, "many of Sionic Mobile's existing investors demanded their promised returns making it difficult to raise new capital." (Dkt. 1 ¶15.) Berkeley calls Sionic's offering of these warrants a "scheme" and makes these allegations in support of all of its claims against Sionic. (Dkt. 1 ¶¶13, 41, 48, 55.)

It was during this very same time period — 2015 and 2016 — that Slipakoff sought to become a Sionic investor himself and, in fact, executed warrants for the purchase of Sionic stock. (Dkt. 9-2 at Exhibits 2, 7, 8, 9, 12.) In his role as corporate counsel, Slipakoff also provided Sionic with services in connection with potential investments and related documents, including in regard to individuals with whom he had personal connections, such as Bob Stewart, Bray Deavours and Bill Gray. (Dkt. 9-2 at Ex. 11; Herman Aff. II ¶8, Ex. A.) It also was during this time that Slipakoff was involved, as Sionic's corporate counsel, with Sionic's offering of the very same kind of warrants Berkeley alleges were part of Sionic's fraudulent scheme. (Dkt. 9-2 Ex. 7; Herman Aff. II ¶9, Ex. A.) Thus, the services Slipakoff provided Sionic were substantially related to Berkeley's case, and Berkeley is directly attacking Slipakoff's efforts on behalf of Sionic.

Berkeley and Slipakoff claim Slipakoff never received any Sionic confidential information in connection with the attorney-client relationship with Sionic. (Dkt. 15 at 8.) As shown above, that assertion is not true. Berkeley's claim and Slipakoff's testimony also are belied by Slipakoff's email to Herman of December 11, 2015, in which Slipakoff stated,

> Ron - I've signed and am sending you the warrant docs tonight. I have a high net worth friend that may be interested in investing in Sionic as well. If you agree, I will ask him to sign an NDA and then upon receipt forward the PPM and pro form spreadsheets to him to consider Sionic. Do you already have an NDA that you prefer to use?

(Dkt. 9-2 at Ex 7.)

Here, Slipakoff was serving as Sionic's corporate counsel in regard to potential investments and the related documents Sionic provided to potential investors. Slipakoff acknowledged the PPM (private placement memorandum) and pro form spreadsheets (forward-looking business and financial information) he sought contained confidential information, and he recommended Sionic require the potential investor to execute a non-disclosure agreement before receiving the documents. Of course, Slipakoff did not need to execute a non-disclosure agreement himself in order to receive

8

and review the confidential information, because he was subject to his ethical obligations pursuant to the attorney-client relationship he had with Sionic, including his work in regard to potential investments and any related documents provided to potential investors. Sionic had every reason to expect its attorney, Slipakoff, would properly protect all of its confidential information shared with him.

Herman responded to Slipakoff's December 11, 2015, email with an updated pro forma for 2016-2018 and a mutual non-disclosure agreement. (Dkt. 9-2 at Ex 7.) The pro forma included confidential information about Sionic's business for the period leading up to Berkeley's investment, at the time of its investment in December 2017, and through the first full year of its investment in 2018. (Herman Aff. II ¶10, Ex. A.) Berkeley received Sionic's pro forma during its due diligence, and Berkeley alleges statements in the pro forma are the bases for its claims against Sionic. (Dkt. 1 ¶40). Thus, Slipakoff did obtain confidential information from Sionic in connection with the attorney-client relationship and his work for Sionic in 2015 and 2016, and it is substantially related to Berkeley's claims against Sionic in this suit.

Berkeley attacks Sionic's factual assertion that Slipakoff reviewed and provided advice in regard to investment-related documents, by offering Slipakoff's conclusory statements that the documents "are standard

documents that all companies seeking to raise venture capital provide to investors," and that "Sionic has used similar documents to finalize investment transactions in one form or another since its inception in 2010." The fact that many companies use similar documents in connection with investments does not in any way negate the fact Mr. Slipakoff provided related advice to Sionic when he was Sionic's corporate counsel. Nor does the absence of redlined documents indicate the absence of such advice.

Berkeley's and Slipakoff's efforts to downplay Slipakoff's attorney-client relationship with Sionic and his efforts on Sionic's behalf as its corporate counsel include Slipakoff's declarations about his personal law firm history. Mr. Slipakoff avers that he worked in a solo law practice with the name Slipakoff, P.C. from April 2014 to January 2017. Yet, emails regarding Mr. Gahan's transfer of certain Sionic stock also show Slipakoff was working with another attorney at the time, Donald Novajosky, and the Slipakoff LLP website advertised multiple attorneys. Moreover, the engagement agreement Slipakoff provided Sionic in December 2015 was with a firm identified as Slipakoff LLP, and he subsequently invoiced Sionic via Slipakoff LLP. It appears from Mr. Slipakoff's affidavit that he was entering into engagement agreements and billing clients under the name of a non-existent limited

liability partnership. He admitted the existence of a Slipakoff LLP website, but entirely failed to address the substantive discrepancies.

WHEREFORE, Sionic respectfully moves the Court to grant its motion.

Respectfully submitted this 27th day of February, 2020.

/s/ Simon Jenner
Simon Jenner, Esq.
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Richard J. Baker, Esq.
Georgia Bar No. 033879
rick.baker@bakerjenner.com
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Telephone: (404) 400-5955
*Attorneys for Defendant Sionic Mobile Corporation*

# **CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that the foregoing has been prepared in accordance with Local Rule 5.1C, using Century Schoolbook, 13 point. I further certify that on Feburary 27, 2020, I electronically filed **Sionic Mobile Corporation's Reply Brief in Support of Its Motion to Disqualify Busch, Slipakoff, Mills & Slomka, LLC as Counsel of Record** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Bryan E. Busch
Laura Mirmelli
Busch, Slipakoff, Mills & Slomka, LLC
Riverwood 100, 21st Floor
3350 Riverwood Parkway
Atlanta, GA 30339

/s/ Simon Jenner
Georgia Bar No. 142588
Attorney for Defendant Sionic Mobile Corporation
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Telephone: (404) 400-5955
E: simon.jenner@bakerjenner.com