IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BERKELEY VENTURES II, LLC<br><br>    Plaintiff,<br><br>v.<br><br>SIONIC MOBILE CORPORATION and<br>RONALD D. HERMAN,<br><br>    Defendants. | Civil Action File No.<br>1:19-cv-05523-SDG<br><br><br><br>JURY TRIAL DEMANDED |

## SIONIC MOBILE CORPORATION'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS DUE TO THE VIOLATION OF RULES 4.2, 4.4 AND 8.4 OF THE GEORGIA RULES OF PROFESSIONAL CONDUCT BY BUSCH, SLIPAKOFF, MILLS & SLOMKA, LLC

Defendant Sionic Mobile Corporation ("Sionic") has moved the Court to sanction Bryan Busch ("Busch") and Busch, Slipakoff, Mills & Slomka, LLC ("Busch Slipakoff") for Busch's bad faith violations of Rules 4.2, 4.4 and 8.4 of the Georgia Rules of Professional Conduct, first, by disqualifying Busch and Busch Slipakoff as counsel to Plaintiff Berkeley Ventures II, LLC ("Berkeley"); and second, by granting an award of attorney fees and costs related to this Motion. Sionic seeks sanctions because of Busch's bad faith violation of the "no-contact" rule. Under this rule, a lawyer is forbidden to directly contact a represented party in pending litigation without the

permission of opposing counsel. But that is what Busch did when he called Patrick Gahan ("Gahan"), a member of Sionic's Board of Directors (the "Board"), without the permission of Sionic's counsel. Busch's call was intimidating, warned things were "about to heat up," and attempted to exert undue pressure on Sionic to settle. Adding to Busch's bad faith, he called Gahan despite Berkeley's allegation that Gahan was the "Key Board Member" involved in the scheme to defraud it. For these and the reasons following, Sionic requests the Court grant its Motion for Sanctions.

## STATEMENT OF FACTS

Sionic is a Georgia for-profit closed corporation.[1] Sionic's business and affairs are managed by and at the direction of its Board of Directors (the "Board"), which is vested with and exercises all corporate powers, subject to Sionic's governing documents.[2] Throughout all periods pertinent to this litigation, including at present, the Board has been comprised of Sionic shareholders, including Ronald D. Herman ("Herman") and Gahan.[3] Through majority vote, the Board constitutes Sionic's highest governing authority.[4]

---

[1] Affidavit of Ronald D. Herman (Nov. 5, 2020) ("Herman Aff."), attached and incorporated as Exhibit A to this Brief, para. 3.
[2] Herman Aff. para. 4; Affidavit of Patrick Gahan (Nov. 5, 2020) ("Gahan Aff."), attached and incorporated as Exhibit B to this Brief, para. 3.
[3] Herman Aff. para. 5; Gahan Aff. para. 2.
[4] Herman Aff. para. 6.

The Board has appointed Herman as CEO.[5] In this role, Herman reports to the Board, including on this case.[6] Herman has discussed advice of counsel and matters of legal concern with the Board, and has sought the their direction and approval in regard to matters central to Sionic's defense.[7] Only the Board, however, can accept a settlement on behalf of Sionic.[8]

Baker Jenner LLLP represents Sionic in this case, having made its appearance upon filing Sionic's Certificate of Interested Persons [Doc. 8].[9] Busch thus knew Sionic was represented since at least January 30, 2020.[10] Nonetheless, on September 3, 2020—the day after this Court's September 2, 2020 Order [Doc. 39] (the "September 2 Order")—Busch placed an unsolicited telephone call to Gahan.[11] Gahan received that call on his personal cellphone, the number for which is not generally known and which Gahan had not provided to Busch, meaning Busch got it by other means.[12] When Gahan answered, Bryan Busch, Berkeley's lead counsel, introduced himself.[13]

---

[5] Herman Aff. para. 7.
[6] Herman Aff. para. 7, 9.
[7] Herman Aff. para. 9.
[8] Herman Aff. para. 10.
[9] Herman Aff. para. 8.
[10] Declaration of Simon Jenner (Nov. 5, 2020) ("Jenner Decl."), attached and incorporated as Exhibit C to this Brief, para. 4.
[11] Gahan Aff. para. 4.
[12] Gahan Aff. para. 5.
[13] Gahan Aff. para. 5.

During the call, Busch referenced this matter and told Gahan that the lawsuit was continuing since it had not been dismissed.[14] Gahan said that Busch told him that he and his firm were staying in this case, that things in this litigation were "about to heat up," and that Sionic should seriously consider settlement before they did so.[15] Gahan informed Herman concerning what Busch had told him.[16]

Busch's call to Gahan comes within the context of multiple of the allegations of Berkeley's Complaint, claiming Gahan as the "Key Board Member" in this litigation.[17] In that role, the Complaint alleges Gahan was part of a purported scheme to defraud Berkeley, which Gahan denies.[18] In support, Berkeley attached to its Complaint as "Exhibit B" an email dated October 25, 2017, from Gahan to Anthony Palazzo ("Palazzo"), Berkeley's controlling executive, discussing Sionic and introducing Herman. Berkeley also attached "Exhibit L," a January 2018 email from Gahan to Palazzo outlining various matters applicable to Sionic's business at that time.

---

[14] Gahan Aff. para. 6.
[15] Gahan Aff. para. 6.
[16] Herman Aff. para. 11; Gahan Aff. para. 6.
[17] Gahan Aff. para. 10; Declaration of Richard J. Baker [Doc. 24-3] ("Baker Decl."), para. 3 ("Berkeley identified Patrick Gahan as the previously unidentified shareholder, director").
[18] Gahan Aff. para. 7, citing Complaint [Doc. 1] para. 21-23, 32.

Berkeley's Complaint alleges Gahan's emails were integral parts of a
fraudulent scheme.[19] The Complaint further alleges: Sionic's Board was party
to systematic attempts to raise capital, including from Berkeley, via deceptive
sales strategy consisting of artificial deadlines, shortened due diligence
periods, fabricated share scarcity, grossly inflated projections, false and
misleading sales literature, in person sales meetings, alleged partnerships,
and overstated technology capabilities;[20] Board members falsely identified
debt owed to them;[21] Board members and investors failed to disclose
charitable donations of Sionic stock made at inflated valuations;[22] and Board
members made material misrepresentations to Berkeley to procure
Berkeley's investment, causing Berkeley harm.[23]

Berkeley incorporated these allegations into its securities fraud,
common law fraud, and punitive damages claims.[24] It also alleged that Gahan
solicited purchases of Sionic securities, including from Adam Slipakoff in
2015 and Berkeley in 2017.[25] Accordingly, Berkeley's allegations are against

---

[19] Gahan Aff. para. 8, citing Complaint [Doc. 1] para. 11, 20-23, 32, 45, 46.
[20] Gahan Aff. para. 9(a), citing Complaint [Doc. 1] para. 10, 11.
[21] Gahan Aff. para. 9(b), citing Complaint [Doc. 1] para. 27, 36.
[22] Gahan Aff. para. 9(c), citing Complaint [Doc. 1] para. 17, 19.
[23] Gahan Aff. para. 9(d), citing Complaint [Doc. 1] para. 45, 46.
[24] Gahan Aff. para. 11, citing Complaint [Doc. 1] para. 41 (actually 45), 48
(actually 53), 55 (actually 60).
[25] Gahan Aff. para. 11; Declaration of Richard Baker [Doc. 24-3] at para. 3.

the Board, of which Gahan is a member, and Gahan personally.[26]

Of course, Gahan denies Berkeley's allegations, including that he engaged in any wrongful act or omission against Berkeley or violated a legal duty, obligation or undertaking in regard to Berkeley.[27] Nonetheless, Berkeley's claims for damages, for at least $1.6 million, directly affect Gahan and his interests as a shareholder and Board member.[28] It is thus unsurprising that Gahan was intimidated by Busch's direct call to his personal cellphone.[29] Gahan found Busch's call threatening and harassing to him personally and to his business, legal and financial interests, and because he was the Board member who introduced Berkeley to Sionic.[30]

Some of the interests that Gahan felt threatened by Busch's call include the charitable trusts and donations of Sionic stock that Gahan had made in 2015, as part of his estate planning and charitable activities.[31] Adam Slipakoff ("Slipakoff"), Busch's law partner, had directly counseled and offered advice on these trusts and donations.[32] Moreover, Slipakoff had

---

[26] Gahan Aff. para. 15.
[27] Gahan Aff. para. 12.
[28] Gahan Aff. para. 13.
[29] Gahan Aff. para. 15.
[30] Gahan Aff. para. 14.
[31] Gahan Aff. para. 16.
[32] Gahan Aff. para. 17.

represented Gahan and his business, legal and financial interests as counsel for over four years, including 2015 through 2017, during which time Slipakoff developed a deep and detailed knowledge of Gahan and his affairs.[33] Slipakoff's knowledge about Gahan and his businesses, legal and financial interests includes intimate details about document creation and retention practices, operations, and business methods and motivations employed by Gahan and his companies.[34] Slipakoff's knowledge also includes the concerns and objectives motivating Gahan's decision making, including in regard to his investment in Sionic and his actions as a Board member.[35]

On October 26, 2020, Gahan was informed by Derek Cunningham ("Cunningham"), a board member and former Treasurer of Enduring Hearts, about a call he had received from Busch.[36] Enduring Hearts, which Gahan founded, funds research that improves the condition of children living with pediatric heart disease.[37] Besides Gahan and Cunningham, current Enduring Hearts' board members include Gahan's father, who is Treasurer, and Ankur

---

[33] Gahan Aff. para. 17.
[34] Gahan Aff. para. 17.
[35] Gahan Aff. para. 17.
[36] Gahan Aff. para. 18; Affidavit of Derek Cunningham (Nov. 4, 2020) ("Cunningham Aff."), attached and incorporated as Exhibit D, para. 5.
[37] Gahan Aff. para. 19; Cunningham Aff. para. 4.

Chatterjee, who is Gahan's business partner and President.[38]

During the October 26 call, Busch identified himself as lead counsel to Berkeley, stated that Berkeley had sued Sionic, and said that he had telephoned Cunningham at the request of Palazzo.[39] During the call, Busch told Cunningham that the Court had denied Sionic's Motion to Dismiss and the lawsuit was thus "continuing," and for Enduring Hearts to expect a subpoena "to uncover the truth" of the Sionic stock allegedly gifted to Enduring Hearts by Gahan, together with any associated stock valuations.[40] Cunningham informed Gahan of the call, which Busch and Berkeley expected Cunningham to do.[41] Gahan understands that Busch's call to Enduring Hearts was in furtherance of Busch's threat, that Sionic should settle this case now unless he was ready for things "heat up" for him as a Board member and shareholder, and for his business, legal and financial interests.[42]

Neither Herman, the Board, nor Baker Jenner LLLP authorized Busch to contact any member of Sionic's Board, or any Sionic executive or employee.[43] Busch's September 3, 2020 telephone call to Gahan constitutes a

---

[38] Cunningham Aff. para. 4; Gahan Aff. para. 19.
[39] Cunningham Aff. para. 5.
[40] Cunningham Aff. para. 6; Gahan Aff. para. 18.
[41] Cunningham Aff. para. 7.
[42] Gahan Aff. para. 20.
[43] Herman Aff. para. 12; Jenner Decl. para. 5

blatant effort to circumvent Herman and Sionic's counsel, to threaten and intimidate Sionic and its Board, and to use Gahan's susceptible position to exert undue pressure on Sionic to pay Berkeley money to settle this lawsuit.[44]

Why Busch threatened and intimidated Gahan and Sionic is at least partially explicable by Busch's personal animosity to Sionic, with him promising "to hang [the undersigned counsel's] f■■ing clients by their f■■■ing nuts, that's how we're going to do this f■■■ing litigation."[45] With the Court's September 2 Order in hand, Busch apparently thought he had what he needed. It may also be explained by new information that has come to Sionic's attention that documents the significant pressure that Busch and Busch Slipakoff are under to force through a settlement in this matter.

In April 2020, Slipakoff commenced legal action against Busch Slipakoff (the "Slipakoff Litigation"), in which Slipakoff moved to add Busch as an individual defendant.[46] In his complaint, Slipakoff alleges nearly $110,000 owed to him by his firm and significant misappropriation of funds by Busch and other partners, for which Slipakoff seeks damages, a receiver,

---

[44] Herman Aff. para. 13, 14; Gahan Aff. para. 15, 20.
[45] Baker Decl., Ex. A (email from Simon Jenner to Busch, Feb. 14, 2020).
[46] *Slipakoff & Slomka, P.C. v. Busch Slipakoff*, CAF No. 20-102227 (Super. Ct. Cobb Cnty., Ga.): Complaint (Apr. 2, 2020), Answer and Counterclaim (Jun. 29, 2020), Motion to Add Defendants (Sept. 18, 2020); each attached and incorporated as Exhibits E, F, and G to this Brief.

and judicial dissolution of the firm.[47] As a small nine-lawyer practice with only three equity partners, the Slipakoff Litigation is significant for Busch and his firm, and also for Busch Slipakoff's clients, including Berkeley, since Busch heads the firm's three-member litigation team, in which he is the only one experienced in securities law.[48] (The "Small Firm Factors").

In its counterclaim, Busch Slipakoff alleges that Slipakoff "engaged in continuous breaches of his fiduciary obligations to the Firm and its clients;" failed to follow firm guidelines and procedures on client conflicts; made "false and misleading representations to the Firm and clients regarding conflict of interest issues and past representation of an adverse party resulting in a bar complaint and a motion to disqualify" the firm; represented an adverse party while representing a firm client in the same transaction; failed to provide minimal quality work product; practiced law outside of his competence; utilized firm assets, resources and opportunities for the benefit of his other competing law firm; solicited business and clients away from Busch Slipakoff; and acted in bad faith.[49] Adding to these problems, in September 2020, Busch

---

[47] Exhibit E para. 11, 12, 20, 22-26, 27-29, 30-34.
[48] Busch Slipakoff, About Us, *available at* https://www.bsms.law/about-us/; Bryan E. Busch, https://www.bsms.law/bryan-e-busch-esq (accessed Oct. 28, 2020), attached and incorporated respectively as Exhibits H, I to this Brief.
[49] Exhibit F para. 7, 11, 12(b), (e), (g), (j), (l), 19.

admitted Busch Slipakoff was in "an insolvent position."[50]

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Busch violated Rules 4.2, 4.4 and 8.4 when he directly called Gahan as a Sionic Board member—without permission of Sionic's counsel—in order to exert undue pressure on Sionic to pay Berkeley money to settle this lawsuit.**

The requirement for fairness and justice in our legal system is captured in multiple Rules, including Rules 4.2, 4.4 and 8.4. *See*, *Horton v. Maersk Line, Ltd*., Case No. CV412-127, 2013 U.S. Dist. LEXIS 128400 at **12 n.9 (S.D.Ga. Sept. 9, 2013) (holding plaintiff's counsel's bullying tactics violated Rule 4.4 and Rule 3.4's fairness requirements); *see also*, Rule 3.4, cmts. 1, 5 (instructing fairness and justice require that lawyers not improperly influence witnesses or disregard the rights of opposing parties or counsel). Here, it is clear that Busch violated the principals of fairness and justice upon which our legal system depends when he violated Rules 4.2, 4.4 and 8.4:

**A.  Busch violated Rule 4.2 when he called Gahan, without permission from Sionic's counsel, so he could intimidate him and exert undue pressure on Sionic to settle this lawsuit.**

Under LR 83.1(C), all lawyers are governed by the Rules of Professional Conduct (each a "Rule") as adopted by the Georgia Supreme Court, and this

---

[50] Plaintiff's Motion to Hold Defendant in Contempt (Aug. 26, 2020), attached and incorporated as Exhibit J to this Brief, at 3.

Court's decisions applying them. *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1323 (11th Cir. 2002). Rule 4.2(a) states that "[a] lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter . . .. The maximum penalty for violation . . . is disbarment." Functionally, Rule 4.2:

> serves important public interests which preserve the proper functioning of the judicial system and administration of justice by a) protecting against misuse of the imbalance of legal skill between a lawyer and layperson; b) safe-guarding the client-lawyer relationship from interference by adverse counsel; c) ensuring that all valid claims and defenses are raised in response to inquiry from adverse counsel; d) reducing the likelihood that clients will disclose privilege or other information that might harm their interests; and e) maintaining the lawyers ability to monitor and case and effectively represent the client.

Rule 4.2, cmt. 7.

Rule 4.2(a) prohibits a plaintiff's lawyer from contacting the personnel of a represented defendant corporation who have "authority to obligate the organization with respect to the matter, or whose act or omission in connection with the matter may be imputed to the organization for the purposes of civil or criminal liability." *Id.*, cmt. 4A. Rule 4.2(a)'s prohibition applies "to communications with any person" who "is represented by counsel concerning the matter to which the communication relates." *Id.*, Cmt. 3.

Officers and directors of a defendant corporation are within the scope of persons whom a plaintiff's lawyer cannot contact without defense counsel's prior permission. *U.S. ex rel. Harris v. Lockheed Martin Corp.*, Case No. 1:08-CV-3819-AT, 2013 U.S. Dist. LEXIS 203082 at *6 (N.D.Ga. Feb. 5, 2013) (prohibiting counsel from contacting a represented corporation's employee who was part of the alleged fraud, in addition to that corporation's officers and directors), quoting Advisory Opinion 89-6 (Ga. 1989); *Culliford v. Am. Kio Goat Ass'n*, Case No. 2:10-CV-112-RWS, 2012 U.S. Dist. Lex 107323 at *14-*15 (N.D.Ga. Aug. 1, 2012) (holding plaintiff, a lawyer under Rule 4.2(a), was barred from contacting the defendant corporation's directors because it was represented). Similarly, a plaintiff's lawyer cannot contact officers, directors and other senior personnel whose alleged acts or omissions may impose vicarious liability on the corporate defendant. *Bedoya v. Aventura Limousine & Transp. Serv.*, 861 F.Supp.2d 1346, 1361 (S.D.Fla. 2012).[51]

The application of the no-contact rule to a board of directors is particularly appropriate given a board's authority under Georgia law to manage all business and affairs and exercise all corporate powers. O.C.G.A. §

---

[51] While *Bedoya* issues from the S.D.Fla., the Florida Rules and numbering scheme are substantially similar to Georgia, except where Georgia uses, *e.g.*, "4.2," Florida uses "4-4.2." Georgia's scheme is followed in this Brief.

14-2-801(b). And it is consistent with Rule 4.2(a)'s enforcement in other ABA Model Rule jurisdictions. *See*, *e.g.*, *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D.Fla. 1992); *see also, e.g.*, *Sowell v. Southbury-Middlebury Youth & Family Servs.*, Case No. 3:18-cv-01652, 2019 U.S. Dist. LEXIS 130267 *5 (D.Conn. 2019) (determining plaintiff's attorney violated Rule 4.2 by sending letters to defendant corporation's board members), aff'd 807 Fed. Appx. 115 (2d Cir. 2020).

Here, the record clearly establishes Busch's flagrant and bad faith violation of Rule 4.2(a). First, Busch knew Sionic was represented.[52] Second, as the lawyer signing the Complaint, Busch knew Berkeley had alleged that Gahan was acting on behalf of Sionic in soliciting purchases of Sionic securities, including from Slipakoff in 2015 and Berkeley in 2017.[53] Third, Busch knew the Complaint alleged that Gahan was the "Key Board Member" involved in a scheme to defraud Berkeley.[54] Fourth, Busch knew that Counts I, II and IV (*i.e.*, III) of the Complaint incorporated allegations that Gahan engaged in acts and omissions for which Berkeley alleges Sionic is liable.[55] Fifth, Busch called Gahan on his personal cellphone, using a number that

---

[52] n.9, *infra*; Sionic, Cert. Interested Persons [Doc. 8].
[53] n.25, *infra*; Baker Decl. at para. 3; Complaint [Doc. 1] at 30.
[54] n.17, n.18, *infra*.
[55] n.17-n.23, *infra*.

Gahan had not provided to him.[56] Sixth, Busch spoke to Gahan without the knowledge or permission of Sionic's counsel, threatening that things were about to heat up if Sionic did not settle.[57] Seventh, during that call, Busch attempted to exploit this Court's September 2 Order within 24-hours of its publication to exert undue pressure on Sionic to settle, showing disregard for Sionic's rights and the fair and orderly administration of this case.[58] Eighth, Gahan found Busch's call threatening to himself personally and to his business, legal and financial interests, not only because of the Complaint's allegations but also because of Slipakoff's lengthy representation of Gahan and his companies.[59] And nineth, Busch proceeded to turn up the heat when he called Cunningham, a board member for Gahan's charity, warning that he was about to subpoena records and "uncover the truth" about Gahan's alleged donations of Sionic stock.[60] (Collectively, the "Intimidation Scheme").

Why Busch violated Rule 4.2 may be at least partially explicable by his personal animus towards Sionic and its leadership.[61] It is also explicable by the financial, business and legal pressure on Busch and Busch Slipakoff in

---

[56] n.12, *infra.*
[57] n.15, n.17, n.43, *infra.*
[58] n.17, n.44 *infra.*
[59] n.29-n.35, *infra.*
[60] n.36-n.42, *infra.*
[61] n.45, *infra.*

the wake of the pending Slipakoff Litigation.[62] Using Gahan to force a

settlement would thus be personally satisfying to Busch, benefit him and his

firm financially, and aid the resolution of a likely brewing conflict between

Busch's firm and Berkeley. Regardless the motivation, Busch called Gahan so

he could use the Court's September 2 Order to intimidate both Gahan and

Sionic. Being in bad faith, Busch's actions now warrant sanctions.

### B. Busch's conduct further constitutes a flagrant and bad faith violation of Rule 4.4(a) and Rule 8.4(a).

In addition to Rule 4.2, Rules 4.4 and 8.4 exist to help ensure fairness

in our legal system, to protect the rights of parties, and to protect the orderly

and just administration of that system. *See*, *Horton*, *supra*, at **12; *see also*,

Rule 3.4, cmts. 1, 5. Rule 4.4(a) states that "[i]n representing a client, a

lawyer shall not use means that have no substantial purposes other than to

embarrass, delay or burden a third person, or use methods of obtaining

evidence that violate the legal rights of such a person." While it is not

possible to catalogue all such rights, they nonetheless include a prohibition

on "unwarranted intrusions into privileged relationships." *Id.*, cmt. 1; *Bedoya*,

861 F.Supp.2d at 1358. This includes a plaintiff's lawyer directly speaking

with and intimidating an officer of a represented corporation to obtain a more

---

[62] n.46-n.50, *infra*.

16

advantageous settlement position. *See*, *Bedoya*, 861 F.Supp.2d at 1358 (finding plaintiff lawyer's *ex parte* communication with a corporate officer to gain an advantage in settlement negotiations violated not only Rule 4.2 but also Rule 4.4, because it served no purpose other than to embarrass and burden the officer and to impermissibly intrude upon the privileged relationship between the defendant corporation and its counsel).

When a lawyer in bad faith violates Rule 4.2(a) and Rule 4.4(a), that lawyer also commits a Rule 8.4(a) violation. Under Rule 8.4(a)(1) and (4), a lawyer is forbidden to violate or attempt to violate the Rules, or engage in conduct involving dishonesty, fraud, deceit or misrepresentation. A Rule 8.4(a) violation occurs when a lawyer contacts the officers or directors of a represented corporation in violation of Rule 4.2 to intimidate them and gain an advantage in settlement. *In the Matter of Maxwell*, 627 S.E.2d 16, 17 (Ga. 2006) (holding lawyer properly sanctioned for violating Rule 4.2, and thus Rule 8.4, because he spoke with potential opposing parties in litigation, outside the presence of their counsel); *see*, *Bedoya*, 861 F.Supp.2d at 1369-1370 (finding zealousness could not excuse a lawyer's violations of Rule 4.2 and Rule 4.4, which being in bad faith, also violated Rule 8.4).

As explained in part I of this Brief, incorporated by this reference, in furtherance of his Intimidation Scheme, Busch intruded into the privileged

relationship between Sionic and its counsel; embarrassed, burdened, and intimidated Gahan; tried to secure an inside track to Sionic's Board through Gahan; and sought to use Gahan's susceptibility to exert undue pressure on Sionic to settle this lawsuit. As a matter of law, such conduct is sanctionable, which is necessary to preserving the credibility of these proceedings.

## II. Busch's misconduct is sufficient to warrant sanctions, including disqualification and an award of fees and costs.

"The authority of the court over officers of its bar is at least as great as its power over litigants." *Kliener v. First Nat'l Bank*, 751 F.2d 1193, 1209 (11th Cir. 1985). A court's authority includes the inherent power to discipline the lawyers appearing before it, and to impose sanctions whenever appropriate. *Thomas*, 293 F.3d at 1320. A court can impose sanctions once it finds a lawyer has engaged in misconduct that constitutes or is tantamount to bad faith. *Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith"). For Rule 4.2, bad faith is established when a lawyer communicates with an opposing party while knowing that party is represented. *Kliener*, 751 F.2d at 1199.

Once a court finds bad faith, it may consider a range of sanctions. *Kliener*, 751 F.2d at 1209. "Since misconduct by a party courts the risk of outright dismissal, lesser sanctions undoubtedly attend the court's inherent

power to discipline intentional attorney misconduct," including

"disqualification of counsel" and an "assessment of attorney fees and costs."

*Kliener*, 751 F.2d at 1209; *In re BellSouth Corp*., 334 F.3d 941, 951 (11th Cir.

2003) ("A court's inherent power to disqualify an attorney or otherwise

sanction . . . is rooted in concern for the integrity of the judiciary and the

public's perception thereof. It does not further those ends to punish only

successful attempts . . . while overlooking unsuccessful ones"). When a lawyer

is disqualified for conduct that threatens the orderly administration of justice

or challenges the court's authority, the court's decision is due a high degree of

deference and wide latitude. *Bellsouth*, 334 F.3d at 958-959; *Bedoya*, 861

F.Supp.2d at 1356 (granting disqualification because plaintiff's lawyer's

violations of Rules 4.2, 4.4 and 8.4 "has so affected the administration of the

current action that a remedy is warranted").

The reasonable balance between social interests, including a litigant's

choice of counsel, and the court's need to ensure ethical conduct requires

disqualification when a lawyer's Rule violation constitutes a compelling

reason to disqualify. *Bedoya*, 861 F.Supp.2d at 1350. A compelling reason

includes instances when a violation breeds prejudice and delay, undermines

the credibility of the judicial system, or calls into question the fair and

efficient administration of justice. *McGriff v. Christie*, 477 Fed. Appx. 673,

19

677 (11th Cir. 2012). A Rule 4.2 violation that attacks the attorney-client relationship, is undertaken for the purpose of obtaining an advantage in litigation, and which violates Rules 4.4 and 8.4, constitutes a compelling reason for disqualification. *Bedoya*, 861 F.Supp.2d at 1358.

Georgia courts have expressly aligned with Eleventh Circuit law, having applied *Kliener* to disqualify a lawyer who had engaged in a specifically identifiable impropriety when he contacted a defendant who was still represented, violating the no-contact rule. *Clos v. Pugia*, 420 S.E.2d 774, 775, 843 (Ga. Ct. App. 1992), cited with approval *Weems v. State*, 491 S.E.2d 325 (Ga. 1997). Needless to say, a lawyer's willful violation of Rule 4.2 renders disqualification, attorney fees and costs all the more appropriate as sanctions. *Kliener*, 751 F.2d at 1210; *Clos*, 204 Ga.App. 843.

Here, there can no doubt that Busch knew he was violating Rules 4.2, 4.4 and 8.4 when, within 24-hours of the Court's publication of its September 2 Order, he engaged in the Intimidation Scheme. This justifies the imposition of the sanctions of disqualification and attorney fees and costs of action.

### A.  Busch's Rule violations of Rules 4.2, 4.4 and 8.4 threaten this Court's just administration of this case and integrity of our legal system, justifying both his and his firm's disqualification.

Busch's bad faith violations of Rules 4.2(a), 4.4(a) and 8.4(a) justify both his and his firm's disqualification. *Adkins v. Hosp. Auth. of Houston*

*County*, Case No. 5:04-CV-80, 2009 U.S. Dist. LEXIS 97361 (M.D.Ga. Oct. 20, 2009) at *27-*28 (disqualifying plaintiff's counsel who acted intentionally and in bad faith by engaging in conduct that "looks like rank skullduggery – like a preemptive strike to nullify a potentially harmful witness").

### 1. Busch's Intimidation Scheme is sufficiently severe to justify disqualification as a necessary sanction.

In determining whether disqualification is an appropriate sanction, the Eleventh Circuit has formulated a two-part test: (1) there must at least be a reasonable possibility that some specifically identifiable impropriety did occur; and (2) the court must find that "the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." *Kliener*, 751 F.2d at 1210. Once a court determines that these requirements have been satisfied, it "can order disqualification based solely on past improprieties without regard for future taint affecting the outcome of the proceeding." *Kliener*, 751 F.2d at 1210.

In supporting the first element, the Eleventh Circuit held that the allegations supporting a specifically identifiable impropriety need not be true or proven, but rather must "create the possibility" that such an impropriety is a "reasonable possibility." *United States v. Hobson*, 672 F.2d 825, 828 (11th

Cir. 1982); *Kliender*, 751 F.2d at 210.[63] For the second element, the Eleventh Circuit held it sufficient that testimony will portray the lawyer "as having engaged in thoroughly improper and unethical conduct" that will "impugn severely" that lawyer's "integrity and credibility" and "likely could result in erosion of public confidence in the integrity of the bar and of the legal system[.]" *Hobson*, 672 F.2d at 828.

For the reasons stated in part I to this Brief, incorporated by this reference, there is more than a reasonable possibility Busch committed a specifically identifiable impropriety. *The impropriety in fact occurred*, satisfying first element for disqualification.

For the second element, Busch's Intimidation Scheme was a clear attack on the integrity of our legal system. In violating the no-contact rule to use Gahan to exert undue pressure on Sionic to pay money to settle this matter, Busch also violated the privileged relationship between Sionic and its counsel. In violating Rule 4.4, Busch violated Gahan's individual rights, including to not have a lawyer threaten his business, legal and financial interests, and Sionic's right to a proper, fair and orderly progression of this litigation without its Board, interests and defenses being compromised. And

---

[63] Reversed on other grounds *Flanagan v. United States*, 465 U.S. 259 (1984).

because Busch violated Rule 8.4, Sionic and its counsel cannot trust that he

will abide by the Rules and respect Sionic and Gahan's rights, undermining

public trust in the bar and legal system and this Court's just and orderly

administration of this case. *Papanicolaou v. Chase Manhattan Bank, N.A.*,

720 F. Supp. 1080, 1087 (S.D.N.Y. 1989). Busch should therefore be

disqualified. *Kliener*, 751 F.2d at 1209-1210; *Clos*, 420 S.E.2d at 775, 843.

### 2. As a small firm with no effective means to screen Busch from this litigation, Busch Slipakoff should also be disqualified.

When a lead lawyer's Rule violation has so damaged the adversarial

process that any trial may be tainted, it is appropriate that the court also

disqualify the lawyer's firm. *Bedoya*, 861 F.Supp.2d at 1372. Disqualification

is especially appropriate when the subject law firm has few options to replace

the offending lawyer, that lawyer holds a control position in the practice, and

a Chinese Wall is unlikely to be an effective prophylactic. *Bedoya*, 861

F.Supp.2d at 1372; *Papanicolaou*, 720 F. Supp. at 1087 ("This Court doubts

whether any Chinese walls, which are meant to be preemptive, can ever

function effectively when erected in response to a motion" to disqualify).

Here, the Small Firm Factors mean that Busch Slipakoff has no viable

alternative to Busch or any effective means to screen him from involvement.[64]

---

[64] n.48 *infra*.

This Court should therefore also disqualify Busch Slipakoff along with Busch. *Bedoya*, 861 F. Supp. 2d at 1372 ("given the small size of the Morgan & Morgan labor practice, the Court is not convinced that a Chinese wall – and removing solely Celler and Schulman . . . would have any effectiveness").

**III.    Busch's Intimidation Scheme constitutes the type of abusive tactic that justifies attorney fees and costs.**

Federal courts have both the inherent and statutory power to impose attorney fees and costs upon an attorney found to have engaged in ethical violations. *Thomas*, 293 F.3d at 1328 n.32, citing 28 U.S.C. § 1927; *Kliener*, 751 F.2d at 1209. A court may award attorney fees and costs whenever a lawyer engages in unreasonable and vexatious conduct, essentially tantamount to bad faith, that multiplies the proceedings, and the dollar amount of the sanction bears a financial nexus to the excess proceedings. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). A court's power to shift fees is not limited by statute. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47-50 (1991).

A court must afford the sanctioned party due process in determining whether the requisite bad faith exists and also in assessing fees. *Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 Fed. Appx. 823, 825 (11th Cir. 2017). In assessing fees, due process is satisfied first, by the court ordering movant's

counsel to testify and provide billing statements on the reasonableness of its fees; and second, by the court giving opposing counsel fair opportunity to respond. *Miccosukee*, 686 Fed. Appx. at 828; *Holland v. MGA, Inc*., Case No. 1:05-CV-237-WKW, 2017 U.S. Dist. LEXIS 206437 at *5-*6 (M.D.Ala. Dec. 15, 2017). Testimony and evidence may be adduced at a hearing or in writing. *See*, *Miccosukee*, 686 Fed. Appx. at 828. An award of fees and costs is only subject to review for an abuse of discretion. *Norelus*, 628 F.3d at 1280.

Here, Busch's Intimidation Scheme was manifestly in bad faith and merits the additional sanction of attorney fees and costs. Accordingly, if this Court determines that such a sanction is appropriate, Sionic requests that the Court set a calendar for briefing and response.

## CONCLUSION

For the foregoing reasons, Sionic respectfully requests the Court grant its pending Motion for Sanctions.

Respectfully submitted,

/s/ Simon Jenner
Simon Jenner, Esq.
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Baker Jenner LLLP
210 Interstate N. Pkwy, SE, Ste. 100
Atlanta, Georgia 30339
Telephone: (404) 400-5955
*Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that the foregoing has been prepared in accordance with Local Rule 5.1C, using Century Schoolbook, 13 point. I further certify that on this date, I electronically filed the preceding **SIONIC MOBILE CORPORATION'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS DUE TO THE VIOLATION OF RULES 4.2, 4.4 AND 8.4 OF THE GEORGIA RULES OF PROFESSIONAL CONDUCT BY BUSCH, SLIPAKOFF, MILLS & SLOMKA, LLC** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Bryan E. Busch
Laura Mirmelli
Busch, Slipakoff, Mills & Slomka, LLC
Riverwood 100, 21st Floor
3350 Riverwood Parkway
Atlanta, Georgia 30339

Respectfully submitted November 5, 2020.

/s/ Simon Jenner
Georgia Bar No. 142588
Attorney for Defendant
Baker Jenner LLLP
210 Interstate North Parkway, SE
Suite 100
Atlanta, GA 30339
Telephone: (404) 400-5955
E: simon.jenner@bakerjenner.com