IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BERKELEY VENTURES II, LLC
     Plaintiff,

             v.

SIONIC MOBILE CORPORATION, *et al.*,
     Defendants.

Civil Action No.
1:19-cv-05523-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant Sionic Mobile Corporation's (Defendant or Sionic) Motion for Reconsideration or, in the alternative, to Amend Order to Include Certification of Interlocutory Appeal [ECF 40]; Defendant's Motion to Stay Proceedings and Extend Deadlines [ECF 42]; Defendant's Motion for Sanctions [ECF 50]; Defendant's Renewed Motion to Disqualify [ECF 51]; and Non-Party Patrick Gahan's Motion to Intervene [ECF 55]. After careful consideration of the parties' and proposed intervenor's briefs and the arguments presented at the hearing on Defendant's Emergency Motion to Stay [ECF 52], the Court **DENIES** Defendant's motion for reconsideration or certification of interlocutory appeal; **DENIES as moot** Defendant's motion to stay proceedings and extend deadlines; **DENIES** Defendant's motion for sanctions; **GRANTS**

Defendant's renewed motion to disqualify; and **DENIES as moot** Patrick Gahan's motion to intervene.

## I.   BACKGROUND

Plaintiff Berkley Ventures II, LLC filed its complaint against Defendants Sionic Mobile Corporation and Ronald D. Herman on December 7, 2019.[1] Plaintiff alleges that Defendants engaged in a fraudulent scheme to raise capital by pressuring investors with artificial deadlines, requiring shortened due diligence periods, fabricating scarcities of shares, and inflating financial projections and technology capabilities.[2] The misrepresentations consisted of false and misleading sales literature and written and verbal communications.[3] Based on these allegations, Plaintiff asserts claims for securities and common law fraud.[4]

Plaintiff's counsel's law firm, Busch Slipakoff Mills & Slomka LLC ("Busch Slipakoff"), is precariously situated because named partner Adam Slipakoff previously represented a member of Sionic's board, Patrick Gahan; was solicited to be an investor in Sionic; and briefly advised Sionic on stock issuances.[5] Slipakoff

---

[1]   ECF 1.

[2]   *Id.* at ¶ 11.

[3]   *Id.*

[4]   *Id.* at ¶¶ 41–54.

[5]   ECF 39, at 27–30.

represented Gahan for over four years, ending in 2017, and assisted him in his business and personal matters, including facilitating donations of Sionic stock Gahan made to certain charities.[6] Slipakoff's representation of Sionic ended shortly after it began, and he has not represented Sionic since 2016.[7]

Sionic moved to disqualify Busch Slipakoff based on Slipakoff's representations of both Sionic and Gahan and moved to dismiss the Complaint for failure to state a claim.[8] The Court denied both motions finding, as relevant here, that (1) Plaintiff's Complaint sufficiently alleges justifiable reliance to survive a motion to dismiss; (2) dismissal under the applicable statute of limitations was premature because a fact issue existed as to whether Plaintiff was a reasonably diligent investor; and (3) Slipakoff did not represent Sionic on a matter substantially related to the present dispute.[9]

The day after the Court entered its order, Plaintiff's counsel Bryan Busch, without informing defense counsel, called the personal phone number of Patrick Gahan and informed him that his firm was staying in the litigation and that he

---

[6]    ECF 50-3, at ¶ 17.

[7]    ECF 39, at 27–30.

[8]    ECF 9; ECF 10.

[9]    ECF 39, at 18, 21, and 29–30.

should seriously consider settlement because things were about to "heat up."[10] On

October 26, 2020, Busch called Derek Cunningham, who serves as a member of the

Board of Directors of Enduring Hearts Foundation, Inc., a charity founded by

Gahan, informing him that Enduring Hearts should expect a subpoena "to

uncover the truth of the Sionic stock allegedly gifted to Enduring Hearts by

Gahan."[11]

Sionic moves for reconsideration of the Court's previous order on the

motion to dismiss and disqualify or, in the alternative, for the Court to amend its

order to include a certification for interlocutory appeal.[12] Sionic also moves for

sanctions against and disqualification of Busch Slipakoff, and moved on an

emergency basis to stay the proceedings.[13] Patrick Gahan separately moves to

intervene for the limited purpose of seeking to disqualify Busch Slipakoff. After a

hearing on the issues, the Court granted the emergency motion to stay and took

the remaining motions under advisement.[14]

---

[10]   ECF 50-3, at ¶¶ 5–6.

[11]   ECF 50-5, at ¶¶ 5–6. Busch has not disputed either phone call but clarifies that he asked Gahan whether he was represented and whether Gahan wanted his lawyer on the call with him. ECF 58-1, at ¶¶ 5–7.

[12]   ECF 40.

[13]   ECF 50, 51, and 52.

[14]   ECF 59.

## II.    DISCUSSION

### a.    Defendant's Motion for Reconsideration

#### i.    Legal Standard on Motion for Reconsideration

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice." LR 7.2(E), NDGa. Rather, such motions should be filed only when "a party believes it is absolutely necessary." *Id.* In order to prove absolute necessity, the moving party must show that there is: "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003).

A motion for reconsideration may not be used to show the Court how it "could have done better;" to present arguments already heard and dismissed; to repackage familiar arguments; or to offer new legal theories or evidence that could have been presented with the previous motion or response. *Bryan*, 246 F. Supp. 2d at 1259 (citing to *Pres. Endangered Areas of Cobb's History Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir. 1996); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); *Adler v. Wallace Computer Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001)).

> ### *ii.*   **Analysis**

Sionic's motion fails to meet the legal standard for reconsideration. It has not presented newly discovered evidence or a change in controlling law. Sionic argues that the Court misapplied the law by failing to substantively address its arguments on whether Plaintiff could have justifiably relied on Sionic's alleged misrepresentations. This is precisely the kind of argument that the Local Rules and precedent prohibit. Further, Sionic improperly assumes that the Court did not consider the parties' arguments, essentially arguing that the Court "could have done better." *Bryan*, 246 F. Supp. 2d at 1259.

Reasonable reliance and due diligence inquiries are fact specific and more properly considered by a trier-of-fact rather than as a matter of law. *See TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 200 (11th Cir. 2007) (noting "questions of due diligence often must be resolved by the trier of fact"); *Damian v. Montgomery Cnty. Bankshares, Inc.*, 255 F. Supp. 3d 1265, 1282 (N.D. Ga. 2015) ("[T]he question of reasonable reliance is typically a fact question, and therefore failure to sufficiently plead reliance is rarely a basis for dismissing a claim."). In ruling on Sionic's motion to dismiss, the Court considered each of Sionic's arguments and concluded that there was "not enough evidence before the Court to rule as a matter of law that Plaintiff could have done more

during due diligence."[15] Similarly, as to Sionic's argument that Plaintiff's claims are time barred, the Court found that Sionic's argument was premature, as "[reasonable] due diligence is a question of fact, and the parties must engage in discovery for either the Court, at summary judgment, or the jury, at trial, to determine the reasonableness of Plaintiff's efforts."[16]

The Court did not misapply the law or make a clear error of fact. Rather, the Court considered the record in the light most favorable to the Plaintiff and explicitly concluded that a Rule 12(b)(6) dismissal was inappropriate. Sionic may disagree with the Court's conclusion, but that is not a proper basis for reconsideration. Sionic's motion is therefore denied.

### b.   Defendant's Motion for Certification of Interlocutory Appeal

#### i.   Legal Standard on Motion to Certify for Interlocutory Appeal

"Certification under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C*, 165 F. Supp. 3d 1330, 1334 (N.D. Ga. 2015). A district court may only certify an order for interlocutory appeal when it

---

[15]   ECF 39, at 18.

[16]   *Id.* at 21.

"(1) concerns a controlling question of law (2) where there is substantial ground for difference of opinion and (3) where an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* (citing *McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004)).

As the Eleventh Circuit recently noted, review under § 1292(b):

> was "intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts" and should not, in contrast, turn on case-specific inquiries, such as "whether the district court properly applied settled law to the facts or evidence of a particular case." *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004).

*Pearson v. Kemp*, No. 20-14480, 2020 WL 7093408, at *3 (11th Cir. Dec. 4, 2020) (denying motion for permissive appeal).

### *ii.* Analysis

Sionic requests, in the alternative to its motion for reconsideration, that the Court amend its order to certify three issues for interlocutory appeal. The first two proposed issues derive from Sionic's arguments regarding justifiable reliance and ask whether, in cases like Plaintiff's, justifiable reliance can be foreclosed as a matter of law because some of the alleged misrepresentations were contradicted by written statements and some were forward looking statements tempered by

specific cautionary disclosures.[17] The third proposed issue is framed as a legal question, in that it asks when the statute of limitations under 28 U.S.C. § 1658(b) accrues, but similarly turns on what a "reasonably diligent plaintiff" would have done. These are case-specific questions, not pure legal issues.

In this regard, *Mamani v. Berzain* is instructive. 825 F.3d 1304, 1313 (11th Cir. 2016). There, the Eleventh Circuit refused to consider an interlocutory appeal of a denial of Rule 12(b)(6) motion to dismiss because the defendants essentially asked the appellate court to test the legal sufficiency of a complaint under the Torture Victim Protection Act. *Id.* The court stated that "[w]hile the issue of whether a complaint states a claim for relief is a legal determination," evaluating "whether the district court properly applied settled law to facts, the facts being those alleged in the complaint" is not a proper basis for an interlocutory appeal. *Id.* In other words, "[d]eciding these Rule 12(b)(6) issues would require [the court] to say much about these particular plaintiffs' allegations and little about the [ ] general standard for liability." *Id.*

The issues proposed by Sionic would require the appellate court to look at the facts and determine whether Plaintiff, in light of all of the disclosures from and

---

[17]   ECF 40-1, at 11, 20.

communications with Sionic, justifiably relied on Sionic's alleged misrepresentations or was reasonably diligent in investigating Plaintiff's claim. This inquiry delves into Plaintiff's specific allegations and not the legal standard for justifiable reliance. Sionic's proposed issues are, therefore, not pure issues of law, and are not proper for certification for interlocutory appeal. Defendant's motion is denied.

### c.   Sionic's Motions for Disqualification and Sanctions

#### i.   Legal Standard

"A disqualification order 'is a harsh sanction, often working substantial hardship on the client' and should therefore 'be resorted to sparingly.'" *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)). "The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification." *Id.*

"Two sources of authority govern motions to disqualify counsel, depending on the alleged misconduct." *Jacksonville v. Mun. Elec. Auth. of Ga.*, No. 1:19-CV-3234-MHC, 2019 WL 7819485, at *3 (N.D. Ga. Nov. 7, 2019). First "[t]he Georgia Rules of Professional Conduct," incorporated into this Court's local rules and "contained in the Rules and Regulations of the State Bar of Georgia, and judicial

decisions interpreting those rules and standards, govern the professional conduct of members of the bar of the United States District Court for the Northern District of Georgia." *Herrmann*, 199 F. App'x at 752. Second, the Court may invoke its inherent authority to control its "court room and process" to disqualify an attorney. *Jacksonville,* 2019 WL 7819485, at *3 (citing *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1558 (11th Cir. 1997)).

However, "[i]f a district court bases its disqualification order on an allegation of an ethical violation" it "may not simply rely on a general inherent power to admit and suspend attorneys." *Herrmann*, 199 F. App'x at 752 (quoting *Schlumberger*, 113 F.3d at 1561). "Instead, 'the court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule.'" *Id.* (internal citation and punctuation omitted). When disqualification is sought based on a conflict of interest with a former client, the party seeking disqualification must prove: "(1) that an attorney-client relationship previously existed with the opposing lawyer and (2) that the matters old and new are 'substantially related.'" *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988). *See also Shattles v. Bioprogress PLC*, No. CIVA 105-CV-3179-MHS, 2006 WL 5778889, at *2 (N.D. Ga. July 14, 2006) (applying test to alleged violation of Ga. Rule Prof'l Conduct 1.9(a)).

###### *ii.*   **Analysis**

Sionic asserts that two conflicts of interest warrant disqualification for a violation of Georgia Rule of Professional Conduct 1.9(a): (1) Slipakoff's representation of Sionic and (2) Slipakoff's representation of Patrick Gahan. The Court's prior ruling that Busch Slipakoff did not represent Sionic on a matter substantially related to the present case remains the same. The new information regarding the lawsuit brought by Slipakoff against Busch Slipakoff is irrelevant, and the renewed motion largely serves as one for reconsideration. Slipakoff's communications with Sionic reveal that he was more a potential investor of Sionic than legal counsel, and the evidence of his representation is limited to transactions two years prior and only tangentially related to the allegations in the instant Complaint.[18]

The Court is troubled, however, by Slipakoff's representation of Patrick Gahan. Slipakoff represented Gahan in various estate planning matters, including requesting a division of Sionic stock on behalf of Gahan so that Gahan could

---

[18]   ECF 39, at 29–30. The Court notes that Slipakoff also potentially violated the rules of professional conduct by offering to serve as legal counsel for a company in which he potentially invested and to which he solicited investors. *See* Ga. Rules Prof'l Conduct 1.8(a) (a lawyer shall not "enter into a business transaction with a client if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client").

donate stock to various charities.[19] Plaintiff alleges that part of Defendants' scheme to defraud investors was to have "some investors donate[ ] their shares to one or more charities at inflated share prices to generate charitable tax deductions."[20] While it is not apparent from the face of the Complaint that this allegation implicates Gahan or Slipakoff's representation of him, Plaintiff's counsel's phone call to Cunningham stating that a subpoena was forthcoming "to uncover the truth of the Sionic stock allegedly gifted to Enduring Hearts by Gahan,"[21] adds clarity.

There is no dispute that Slipakoff was in an attorney-client relationship with Gahan and, therefore, the first prong of the test for attorney disqualification is satisfied. *Cox*, 847 F.2d at 729. Turning to whether the matters old and new are substantially related, Plaintiff has alleged that certain transactions, including the charitable donation by Gahan that Slipakoff facilitated, were part of the alleged scheme to defraud investors because they allowed "Defendants to continue raising capital for Sionic Mobile without publicizing the company's losses."[22] The matters in which Slipakoff rendered advice, *i.e.* the stock donations, are not only

---

19   ECF 9-2, at 11–15. This transaction led to Gahan introducing Slipakoff to Sionic as a potential investor. ECF 9-2, at 2.

20   ECF 1, ¶ 17.

21   ECF 50-5, ¶ 6.

22   ECF 1, ¶¶ 16–19.

*substantially related* to the matters now pending, they are *directly* at issue. Therefore, the Court concludes that Slipakoff and his law firm must be disqualified from representing Plaintiff in this matter. *Shattles,* 2006 WL 5778889 at *4 (law firm disqualified because it previously advised on the transaction that was the subject of the pending lawsuit); Georgia Rule of Professional Conduct 1.10(a) (disqualification under Georgia Rule of Professional Conduct 1.9 is imputed to all lawyers associated in a firm).

The phone calls made by Plaintiff's counsel following the Court's previous order provide additional grounds for disqualification. Sionic argues that attorney Busch, Slipakoff's law partner, violated Georgia Rules of Professional Conduct 4.2, 4.4, and 8.4 by contacting a person known to be represented by another lawyer in the matter without defense counsel's permission and by contacting a third party for the sole purpose of embarrassing and burdening the third party. According to Sionic, Busch's actions have undermined Defendants and defense counsel's trust that Plaintiff's counsel will respect the adversarial process and the laws governing it. The Court agrees.

The central dispute regarding Busch's call to Gahan is whether Gahan is a client of defense counsel, Baker Jenner LLLP ("Baker Jenner"). Plaintiff argues that Gahan is not a client of Baker Jenner because Baker Jenner explicitly told Plaintiff's

counsel he was not. In email correspondence concerning Plaintiff's heavily redacted response to Sionic's original motion to disqualify, defense counsel informed Busch that he would need to secure an attorney-client privilege waiver from Gahan because it "does not represent Mr. Gahan and cannot provide his consent."[23] Based on this statement, Plaintiff asserts, Busch reasonably believed that Gahan was not represented by Baker Jenner and therefore Busch was entitled to call Gahan to facilitate settlement.

As a factual matter, the email exchange reflects defense counsel's understanding that, under some circumstances, communications by Gahan could be considered communications by Sionic, but, without knowing the context of the communication, it could not claim the exchange at issue between Slipakoff and Gahan as one with Sionic.[24] Therefore, although as a general matter Baker Jenner does not represent Gahan, when Gahan acts on behalf of Sionic, his actions are Sionic's actions and fall within the scope of Baker Jenner's representation.

---

[23]   ECF 58-1, at 6.

[24]   *Id.* ("Sionic does not admit that any communication between Patrick Gahan and his attorney at the time, Mr. Slipakoff, were communications by or with Sionic. Given that everything is redacted, we don't know the bases for Berkeley's and Slipakoff's contentions that they were anything but communications between Mr. Slipakoff and his client, Mr. Gahan.").

Indeed, the comments to Georgia Rule of Professional Conduct 4.2 explain that the rule prohibits *ex parte* communications with an agent of an organization:

> (1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter; or
>
> (2) who has authority to obligate the organization with respect to the matter; or
>
> (3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

*See also United States ex rel. Harris v. Lockheed Martin Corp.*, No. 1:08-CV-3819-AT, 2013 WL 12328947, at *2 (N.D. Ga. Feb. 5, 2013) (summarizing rule). A member of a company's board of directors can certainly fall within the scope of the rule, particularly where, as here, the allegations seek to impute the board member's actions onto the company as a basis of liability. *See id.* (prohibiting *ex parte* communication with employee whom the plaintiff "allege[d] is responsible for directing that he engage in acts of billing fraud that were cited as specific examples of conduct that would render [the defendant] liable"). *See also Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, 861 F. Supp. 2d 1346, 1361 (S.D. Fla. 2012) (independent contractor was defendant for purposes of no-contact rule because contractor's actions were sought to be imputed on defendant and were "central to [the] suit"). The Court finds, therefore, that Gahan is a client of Baker Jenner for

purposes of Georgia Rule of Professional Conduct 4.2(a) when he acts on behalf of Sionic, and it was improper for Busch to contact him without defense counsel's permission.

Busch's call to Derek Cunningham was similarly improper. Cunningham is a board member and former treasurer of Enduring Hearts, a charity focused on pediatric heart disease that was founded by Gahan.[25] Cunningham received a call from Busch to warn him that the litigation was ongoing and to expect a subpoena meant to uncover "the truth" regarding the donations of Sionic stock Gahan made to Enduring Hearts, which, as noted above, are alleged to be part of Sionic's scheme to defraud investors.[26] Beyond his involvement with Enduring Hearts, Cunningham has no connection to this lawsuit. Plaintiff has not addressed the purpose behind the call and, in light of the previous call to Gahan, it appears to have been for the purpose of "embarrass[ing], delay[ing], or burden[ing]" Cunningham in violation of Georgia Rule of Professional Conduct 4.4.

Taken in consideration with Slipakoff's prior representation of Gahan, Busch's calls to Gahan and Cunningham appear to have been made for the purpose of exploiting confidences and bullying Plaintiff's way to a favorable

---

[25]   ECF 50-1, at 7.

[26]   *Id.* at 8.

settlement. By doing so, Plaintiff's counsel have undermined the adversarial process. Defendant's renewed motion for disqualification is granted.[27] Defendant's separate motion for sanctions is, to the extent it seeks disqualification, denied as moot, and to the extent it seeks fees and costs, denied.

---

[27] The Court considered proposed intervenor Gahan's motion to intervene in making its findings, but ultimately decides that it is unnecessary to grant the motion to come to this conclusion. *See Brandywine Commc'ns Techs., LLC v. Centurytel Broadband Servs., LLC. & Qwest Corp.*, No. 612CV286ORL36DAB, 2013 WL 12387601, at *1 (M.D. Fla. Jan. 4, 2013) (unnecessary to grant status of intervenor to consider motion to disqualify). Further, Sionic has adequately represented Gahan's interest in moving to disqualify Bush Slipakoff on substantially the same grounds, making intervention unnecessary. Fed. R. Civ. P. 24(a)(2).

### III.   CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's motion for reconsideration or, in the alternative, for certification for interlocutory appeal [ECF 40]; **DENIES as moot** Defendant's motion to stay proceedings and extend deadlines [ECF 42]; **DENIES** Defendant's motion for sanctions [ECF 50]; **GRANTS** Defendant's renewed motion for disqualification [ECF 51]; and **DENIES as moot** Patrick Gahan's motion to intervene [ECF 54].

Plaintiff Berkeley Ventures II, LLC is **ORDERED** to engage conflict-free counsel to appear on its behalf no later than 30 days from the entry of this Order. The parties are ordered to conduct their early planning conference and file their joint preliminary report and discovery plan within 14 days of new counsel's entry of appearance.

SO ORDERED this the 11th day of December 2020.

Steven D. Grimberg
United States District Court Judge