IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BERKELEY VENTURES II, LLC

          Plaintiff,

v.

SIONIC MOBILE CORPORATION and
RONALD D. HERMAN,

          Defendants.

Civil Action File No.
1:19-cv-05523-SDG

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT SIONIC
MOBILE CORPORATION'S MOTION FOR LEAVE TO JOIN THIRD-
PARTY DEFENDANTS BERKELEY CAPITAL PARTNERS, LLC
AND LINDA ROSSETTI, AND TO PERMIT COUNTERCLAIMS
AGAINST COUNTERCLAIM DEFENDANT
BERKELEY VENTURES II, LLC**

Respectfully, the Court should grant the Motion of Defendant Sionic

Mobile Corporation ("Sionic") to add Berkeley Capital Partners, LLC

("Capital") and Linda Rossetti ("Rossetti") under Rule 19(a) and to add Third-

Party Claims under Rule 14(a),[1] and also to permit counterclaims against

Plaintiff Berkeley Ventures II, LLC ("Berkeley") under Rule 13(a) [Doc. 127 –

127-6] ("Sionic's Motion"), ultimately in the form of Sionic's Counterclaim and

Third-Party Complaint [Doc. 127-2] (the "Counterclaim-TPC"). Berkeley not

---

[1] Further reference to each Fed. R. Civ. P. is a "Rule."

only filed its Brief in Opposition [Doc. 128] three days late, without leave of Court or showing of excusable neglect, but it also offers no substantive argument against Sionic's Third-Party Claims and none at all against Sionic's Counterclaims. Respectfully, Sionic's Motion should be granted.

## ARGUMENT AND CITATION OF AUTHORITY

In its Motion, Sionic showed why its Counterclaims and Third-Party Claims were timely and proper; how Sionic's Counterclaims constituted one and same constitutional case with Berkeley's claims; and how the intertwined common issues between Sionic's Third-Party Claims and Berkeley's federal security fraud claim mean that they should be resolved in a single action to ensure consistent results. In its tardy Brief in Opposition, Berkeley does not contest the timeliness of Sionic's Motion or any of Sionic's Counterclaims. Rather, in an effort to negate some of Sionic's more damaging facts and the evidence, Berkeley presents an entirely new timeline and version of events. This approach, however, not only fails to address the substance of Sionic's Motion, but in fact introduces many new problems for Berkeley's case.

**I.    Once again, Berkeley has filed its Brief in Opposition several days late, without any showing of excusable neglect, without leave of Court, and without moving to file out of time.**

Under LR 7.1(B), a brief in opposition must be filed "no later than fourteen (14) days after service of the motion . . . Failure to file a response

shall indicate that there is no opposition to the motion." A court properly declines consideration of a brief in opposition when it is untimely, the nonmovant neither sought nor obtained the court's permission for an extension of time in which to file, and the nonmovant failed to demonstrate excusable neglect in missing the filing deadline. *Milon v. Bank of Am., N.A.*, No. 1:14-CV-01405-MHS-GGB, 2015 U.S. Dist. LEXIS 180377 at *9 (N.D.Ga. Feb. 19, 2015), adopted 2015 U.S. Dist. LEXIS 180369 at *1 (N.D.Ga. Mar. 16, 2015); *Silvestar v. Bank of Am., N.A.*, No. 1:13-cv-01853-CC-GGB, 2013 U.S. Dist. LEXIS 203967 at *4 (N.D.Ga. Sept. 10, 2013), adopted 2013 U.S. Dist. LEXIS 203996 *1 (N.D.Ga. Oct 1, 2013); Fed. R. Civ. P. 6(b)(1)(B). The parties, moreover, are charged with knowing when submissions are due pursuant to the Rules. *Wright v. Dyck-O'Neal, Inc.*, No. 2:15-cv-249-FtM-38MRM, 2016 U.S. Dist. LEXIS 92965 at *8, *18 (M.D.Fla. June 27, 2016), adopted 2016 U.S. Dist. LEXIS 92963 at *3 (M.D.Fla. Jul. 16, 2016).

Here, Sionic filed its Motion on May 11, 2021. Under LR 7.1(B), Berkeley's Brief in Opposition was due no later than May 25, 2021. But Berkeley only filed on May 28, 2021, which was three days out of time. Berkeley neither moved for an extension in which to file nor offered an explanation for why it filed late. Nor did Berkeley identify any factors that this Court could consider as excusable neglect. Berkeley also failed to comply

with this Court's Standing Order [Doc. 45], part II(h), which required Berkeley to file a motion seeking additional time if it was going to file late, specifying the unanticipated or unforeseen circumstances necessitating the late filing, although instructing further that "[m]otions for extensions of time . . . will not be granted as a matter of course." The Court should therefore hold Sionic's Motion unopposed.

There is, however, another reason why this Court should refuse Berkeley's Brief in Opposition consideration. This is the *second time* Berkeley has flouted its obligations. The first time occurred with Berkeley's Brief in Opposition [Doc. 71] to Ronald D. Herman's Motion to Dismiss [Doc. 67], which Berkeley also filed several days late, without leave of Court or moving to file out of time, and without any showing of excusable neglect. Herman's Reply Brief [Doc. 72] fully explicated the rules governing a timely submission of an opposition to a motion, and the standards governing a nonmovant filing out of time. If Berkeley was ignorant of these rules at the time (which Berkeley never argued and is not a defense), it certainly does not have that excuse now. Rather, it seems Berkeley simply does not believe that it is subject to the rules. *See*, *e.g.*, Berkeley's Brief in Opposition [Doc. 128] at 2 n.1 *et passim* (disregarding part II(k) of the Court's Standing Order [Doc. 45], that "Footnotes must be in the same font type and size as the main text of the

filing"). Respectfully, the Court should hold Sionic's pending Motion unopposed. Further, because Sionic has established its right to add Capital and Rossetti as Third-Party Defendants, and to bring Counterclaims against Berkeley, Sionic requests that the Court grant its Motion.

**II.     Berkeley has introduced a new timeline and new version of events that not only contradict its sworn Complaint but demonstrate the propriety of Sionic's Counterclaim-TPC.**

Berkeley's Brief in Opposition manufactures an entirely new, truncated due diligence timeline and version of events, which contradict the sworn allegations of its Complaint, the record, and Berkeley's admissions in discovery. Besides raising Rule 11 concerns, Berkeley's tardy efforts to revise substantial aspects of its case, outside of the pleadings, shows both the weakness of its claims and why this Court should grant Sionic's Motion.

Specifically, in its Brief in Opposition, Berkeley purportedly alleges that it was introduced to an investment opportunity in Sionic only on October 31, 2017, by Patrick Gahan ("Gahan") at a luncheon;[2] afterwards, Gahan reached out to Anthony Palazzo ("Palazzo") to provide him a small amount of Sionic corporate documents;[3] and that Gahan used his prior due diligence on Sionic to entice Palazzo, as Plaintiff's "representative," into making an

---

[2] Berkeley's Brief in Opposition at 2.
[3] Berkeley's Brief in Opposition at 2.

investment.[4] Berkeley further alleges for the first time that Sionic's inhouse counsel knew about and "approved" Berkeley,[5] and that Capital and Rossetti played no active role in this matter and thus "simply cannot" be liable for anything.[6] None of these contentions is credible, for several reasons.

First, Berkeley's new purported allegations contradict its sworn Complaint, in which Berkeley alleged that Gahan introduced Sionic via an "Introductory Email" dated October 25, 2017—not at a luncheon six days later; the Introductory Email attached an Overview PowerPoint and Facts Sheet concerning Sionic—not corporate documents; the Introductory Email was sent to Palazzo as Plaintiff's "Chief Executive Officer"—not mere representative;[7] Berkeley's "due diligence period began on October 25, 2017"—not after October 31, 2017;[8] and that by October 31, 2017, Berkeley's due diligence was already well underway—not just beginning.[9]

Second, Berkeley's new timeline and version of events contradict its own admissions and document production. For example, Berkeley admits

---

[4] Berkeley's Brief in Opposition at 2.
[5] Berkeley's Brief in Opposition at 4.
[6] Berkeley's Brief in Opposition at 6.
[7] Berkeley's Complaint [Doc. 1] para. 21; Berkeley's Response to Admission Request No. 14 (claiming yet another title for Palazzo, that of "Manager").
[8] Berkeley's Complaint [Doc. 1] para. 31.
[9] Berkeley's Complaint [Doc. 1] para. 24, 25, 26.

that it did not exist until November 10, 2017.[10] It is therefore an impossibility for Berkeley to have done anything before that date, including a luncheon, responding to emails, or performing due diligence.[11] Berkeley further admits that before December 5, 2017, it did not know what had been disclosed to Sionic regarding its formation—meaning that it had not disclosed its own existence to Sionic before that date.[12]

Berkeley's admissions are consistent with the email exchange between Sionic's inhouse counsel and Palazzo, in which Sionic's inhouse counsel communicated Sionic's reliance on Palazzo's representations concerning Berkeley, made on the same day that Berkeley first appeared as the party executing the Subscription Agreement and other Share Transaction Documents.[13] These representations included Berkeley's identity, formation, and purpose—necessary to give Sionic comfort with a newly introduced

---

[10] Sionic's Motion, Ex. B-1 [Doc. 127-3], Berkeley's Response to Admission Request No. 27 (admitting formation date).
[11] Sionic's Motion, Ex. B-1 [Doc. 127-3], Berkeley's Response to Admission Request Nos. 29-31 (admitting Berkeley did not exist for a series of dates critical to the due diligence timeline Berkeley alleged in its Complaint).
[12] Ex. B-1 [Doc. 127-3] Berkeley Response to Admission Request No. 110.
[13] Berkeley's Brief in Opposition, exhibit C; Sionic's Counterclaim-TPC [Doc. 127-2] para. 5, 34-35, Ex. C; Ex. B-1 [Doc. 127-3] Berkeley's Response to Admission Request No. 110 (admitting that before its investment, Berkeley had no idea what was disclosed to Sionic regarding its existence).

party;[14] the propriety of Capital's solicitation and promotional efforts in securing funds from Berkeley and its beneficial owners through a Private Placement Memorandum ("PPM")—necessary since this was a document that Sionic never saw or reviewed;[15] and Berkeley's status as an accredited investor—necessitated by Palazzo's refusal to complete Sionic's Sophisticated Investor Questionnaire.[16] Far from "approving" Berkeley, this email exchange shows that Sionic was entirely unaware of Berkeley until December 5, 2017, as do multiple emails which originated from Capital's domain with "Berkeley Capital Partners, LLC" in the signature bar.[17] They also show that Capital alone performed due diligence and connected resources and persons that it considered important to that effort.[18]

Nonetheless, in an effort to smudge Capital out the picture, Berkeley contends for the first time that it is merely a Capital "affiliate," purportedly falling under its "larger umbrella."[19] Nothing in the record supports that

---

[14] Berkeley's Brief in Opposition, exhibit C; Sionic's Counterclaim-TPC [Doc. 127-2] para. 32-42, Ex. C.

[15] Berkeley's Brief in Opposition, exhibit C; Sionic's Counterclaim-TPC [Doc. 127-2] para. 40-46, Ex. C.

[16] Berkeley's Brief in Opposition, exhibit C; Sionic's Counterclaim-TPC [Doc. 127-2] Ex. C.

[17] *See, e.g.,* Sionic's Counterclaim-TPC [Doc. 127-2] Exs. A, B, D, E.

[18] *See, e.g.,* Sionic's Counterclaim-TPC [Doc. 127-2] Exs. H, I.

[19] Berkeley's Brief in Opposition at 5.

tardy contention. Berkeley has in fact denied being Capital affiliate.[20] It has also insisted it and Capital are separate entities, with Capital acting as Berkeley's "Registered Investment Advisor."[21] Additionally, Berkeley has produced a document confirming an arm's length contractual relationship, under which Capital owes Berkeley multiple fiduciary duties, including care and loyalty.[22] This fact, paired with Capital's pivotal role in the Share Transaction's investigation, formation and closing, shows Sionic's claim against Capital for indemnification and contribution is proper and necessary.

Nor are Berkeley's efforts to smudge Rossetti from the facts any more availing. Contrary to Berkeley's bald allegation that Rossetti "had nothing to do" with this matter, Palazzo's communications show that Capital had in fact fully engaged her well *before* December 5, 2017, including when Palazzo surreptitiously sought her expert opinion in evaluating an investment in Sionic by email dated *October 25, 2017*;[23] when Palazzo introduced Rossetti to

---

[20] Ex. B-1 [Doc. 127-3] Berkeley's Response to Admission Request No. 7; Berkeley's Statement Regarding Discovery Dispute (June 6, 2021) at 1.
[21] Ex. B-1 [Doc. 127-3] Berkeley's Response to Admission Request No. 7; Berkeley's Statement Regarding Discovery Dispute, dated June 6, 2021 and submitted June 7, 2021, at 1.
[22] Sionic's Counterclaim-TPC [Doc. 127-2] para. 48-49; Berkeley's document, designated bates range BV 00290-BV 00301, Exhibit A to this Reply Brief, is submitted simultaneously under seal and by motion, in accordance with the Non-Sharing Protective Order [Doc. 107], part 13.
[23] Sionic's Counterclaim-TPC [Doc. 127-2], Ex. H.

Sionic by email dated *November 14, 2017*;[24] and when Rossetti executed the AB Agreement on *November 28, 2017*, transmitted to Sionic by email dated *November 29, 2017*, through which she joined Sionic's Advisory Board.[25] This timeline predates, not post-dates, Berkeley's December 5, 2017 investment.

Similarly, Berkeley's attempts to weed out Rossetti are contradicted by Sionic's allegations concerning Rossetti's assistance to Capital in soliciting Berkeley and its beneficial owners, including through the PPM, in return for which Rossetti was given the opportunity to buy into Berkeley at a low price.[26] Both Capital and Rossetti stood to profit from the representations made to Berkeley and its beneficial owners, which again, supports Sionic's right to indemnification and contribution.[27]

Berkeley has starkly shown that the allegations of its Complaint are meritless. Sionic respectfully requests the Court grant its Motion.

## III. Berkeley does not oppose, and offers no argument against, Sionic's Counterclaims.

Berkeley's Brief in Opposition does not address or mention Sionic's Counterclaims. Accordingly, Berkeley does not dispute Sionic's showing that:

---

[24] Sionic's Counterclaim-TPC [Doc. 127-1], Ex. E.
[25] Berkeley's Brief in Opposition, exhibit C (email dated Nov. 28, 2017, transmitting AB Agreement); Sionic's Counterclaim-TPC [Doc. 127-1], Ex. G.
[26] Sionic's Counterclaim-TPC [Doc. 127-1] para. 60, Ex. J.
[27] Sionic's Counterclaim-TPC [Doc. 127-1] para. 59-60.

- Sionic's Counterclaims against Berkeley, including for libel and defamation under Count II, and for the Insider Scheme that Berkeley coordinated with Capital and Rossetti, as alleged in Counts III through VIII, were properly and timely brought.

- Under Rule 13(a), the Court should exercise supplemental jurisdiction over Sionic's Counterclaims because they are compulsory, being logically related to Berkeley's federal security fraud claims as they share in common many of the same factual and legal issues as, and constitute offshoots of, that claim. *Montgomery Ward Development Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir.1991); *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 714 (5th Cir. 1970).

- Sionic's Counterclaims share a common nucleus of operative facts, witness and evidence with Berkeley's federal securities fraud claims, such that consolidating all claims into one action would promote fairness and efficiency and avoid a multiplicity of actions. *Palmer v. Hospital Auth.*, 22 F.3d 1559, 1567 (11th Cir. 1994); *Hunt v. 21st Mortg. Corp.*, No.: 2:12-CV-381-RDP, 2012 U.S. Dist. LEXIS 127369 at *19 (Sept. 7, 2012).

Sionic has established, and Berkeley does not dispute, that its Counterclaims constitute one constitutional case with Berkeley's securities fraud claim for purposes of 28 U.S.C. § 1367(a), and that they will inevitably reference many of the same facts, witnesses and evidence. *Bakewell v. Fed. Fin. Group, Inc.*, No. 1:04-CV-3538-JOF, 2006 U.S. Dist. LEXIS 23073 at *10 (N.D.Ga. Mar. 21, 2006); *Serra v. Shriners Hosps. for Children, Inc.*, No. 8:18-cv-2682-T-33AAS, 2019 U.S. Dist. LEXIS 28858 at *7-*8 (M.D.Fla. Feb. 22, 2019). Respectfully, Sionic's Motion should be granted.

## IV. Berkeley offers no credible argument against Sionic's Third-Party Claims against Capital and Rossetti—or their joinder.

In its Brief in Opposition, Berkeley proffers two arguments against Sionic's Motion: first, Capital and Rossetti "had nothing to do" with Berkeley's investment, "in no way" can be liable, and are thus not relevant to this case for purposes of Rule 14; and second, that complete relief is possible amongst the parties without Capital or Rossetti's joinder under Rule 19. Neither of these arguments withstand scrutiny.

For the reasons explained more fully in part II of this Brief, incorporated by this reference, Berkeley's first argument must fail. Simply stated, Capital and Rossetti's fingerprints lie thick on this case. Capital, acting as Berkeley's registered investment adviser, decided what information

to share with Berkeley and its beneficial owners concerning Sionic and its business, framed the representations made to them, and ultimately brokered the Share Transaction. There is no credible dispute that Rossetti willingly assisted Capital in these activities, beginning on October 25, 2017. Nor is there a credible dispute that Capital and Berkeley only disclosed their behind-the-scenes relationship to Sionic on December 5, 2017. If anyone is therefore liable for Berkeley's alleged harm and damages, it is Capital and Rossetti, who had exclusive access to the Plaintiff, which is the basis for Sionic's claim for indemnification and contribution. *Southern Pilot Ins. Co. v. CECS, Inc.*, 15 F.Supp. 3d 1284, 1294 (N.D.Ga. 2013).

Moreover, there is no credible dispute that Sionic's remaining Third-Party Claims concerning the Insider Scheme present common issues with Berkeley's securities fraud claim, such that they should be decided at one time in order to ensure consistent results. *Am. Fidelity & Cas. Co., Inc. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956); *Catlin Syndicate Ltd. v. Ramuji, LLC*, No.: 4:16-CV-1331-VEH, 2017 U.S. Dist. LEXIS 164199 at *23 (N.D.Ala. Oct. 4, 2017). As explained in part III of this Brief, incorporated by this reference, Berkeley does not dispute Sionic's Counterclaims concerning the Insider Scheme (Counts II through VIII), or that they constitute one constitutional case with Berkeley's securities fraud claim. This fact is

important because Sionic's Counterclaims against Berkeley for the Insider Scheme are inseparable from Sionic's Third-Party Claims against Capital and Rossetti for the Insider Scheme. And all Counterclaims and Third-Party Claims concerning the Insider Scheme relate back to the truthfulness of what Berkeley alleges Sionic represented. Again, these are the type of claims that are recognized as legitimate subject matter for third-party claims under Rule 14(a). *Dery v. Wyer*, 265 F.2d 804, 807 (2d Cir. 1959); *Catlin Syndicate*, 2017 U.S. Dist. LEXIS 164199 at *23.

Similarly, complete relief is not possible without Capital and Rossetti's joinder under Rule 19(a). Because their conduct is central to this case, and because they alone spoke to and made representations to Berkeley and its beneficial owners, and solicited them, they are primarily liable for Berkeley's alleged harm and damages. And thus, their joinder is compulsory. Fed. R. Civ. P. 19(a)(1)(A); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1319 (11th Cir. 2017) (mandating joinder if liability on a claim cannot be fully resolved in a single federal action, leaving open the possibility of multiple actions on the same subject matter).

## CONCLUSION

Berkeley's out-of-time arguments do not address the substance of Sionic's Motion or Counterclaim-TPC. They do not address the facts, the law,

14

the documents, or Berkeley's own admissions in this matter. Sionic has shown that its Counterclaims constitute one constitutional case with Berkeley's securities fraud claim. And Sionic has shown how Capital and Rossetti's joinder is essential to apportioning liability, and how its claims share a nexus of facts and issues in common with Berkeley's claims.

WHEREFORE, Sionic respectfully moves that the Court grant its Motion, permit Sionic's Third-Party Claims and Counterclaims as stated in its Counterclaim-TPC, and join Capital and Rossetti to this action.

Respectfully submitted this June 10, 2021.

/s/ Simon Jenner
Simon Jenner
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Richard J. Baker, Esq.
Georgia Bar No. 033879
rick.baker@bakerjenner.com
Adam P. Ford, Esq.
Georgia Bar No. 355079
adam.ford@bakerjenner.com
Baker Jenner LLLP
210 Interstate N. Parkway, SE, Ste. 100
Atlanta, Georgia 30339
Telephone: (404) 400-5955
*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that the foregoing has been prepared in accordance with Local Rule 5.1(C), using Century Schoolbook, 13-point font. I further certify I have electronically filed on the date stated below, the foregoing **REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT SIONIC MOBILE CORPORATION'S MOTION FOR LEAVE TO JOIN THIRD-PARTY DEFENDANTS BERKELEY CAPITAL PARTNERS, LLC AND LINDA ROSSETTI, AND TO PERMIT COUNTERCLAIMS AGAINST COUNTERCLAIM DEFENDANT BERKELEY VENTURES II, LLC** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to attorneys of record, as follows:

> Jason Brian Godwin
> Godwin Law Group
> 3985 Steve Reynolds Boulevard
> Building D
> Norcross, GA 30093

This June 10, 2021.

> /s/ Simon Jenner
> _____
> Georgia Bar No. 142588
> Baker Jenner LLLP
> 210 Interstate North Parkway, SE
> Suite 100
> Atlanta, Georgia 30339
> Telephone: (404) 400-5955
> E: simon.jenner@bakerjenner.com