## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BERKLEY VENTURES II, LLC      )
           )
      Plaintiff,      )
           )
v.           )      Civil Action
           )      No. 1:19-cv-05523-SDG
SIONIC MOBILE CORPORATION and  )
RONALD D. HERMAN,      )
           )
      Defendants.      )
_____)

### NON-PARTY LINDA ROSSETTI'S BRIEF IN OPPOSITION TO DEFENDANT SIONIC MOBILE CORPORATION'S MOTION FOR LEAVE TO JOIN THIRD-PARTY DEFENDANTS

COMES NOW Linda Rossetti ("Rossetti"), and by and through her undersigned counsel, hereby submits this Brief in Opposition to Sionic Mobile Corporation's ("Sionic") motion (Dkt. 127) to add Rossetti as a third-party defendant in the above-captioned litigation pursuant to Federal Rules of Civil Procedure 14(a) and 19(a) ("Motion") on the grounds that she allegedly "share[s] liability for the harm and damages, if any, alleged by Plaintiff Berkeley Ventures II, LLC ("Berkeley") in its Complaint."  Rossetti respectfully requests that this Court deny Sionic's Motion to add her as a third-party defendant, showing the Court as follows:

1

<u>**STATEMENT OF FACTS**</u>

A.    <u>**The Investment**</u>

Plaintiff Berkeley is a private equity fund affiliated with Berkeley Capital

Partners, LLC ("Capital"), an Investment Advisor registered with the Securities

and Exchange Commission.  Verified Complaint for Damages ("Complaint") at ¶

1.  Defendant Sionic is a Georgia corporation formed in 2010 by its founder,

Defendant Ronald D. Herman ("Herman"), that provides mobile marketing and

loyalty rewards services to merchants and consumers.  Complaint at ¶ 9.  In the fall

of 2017, Berkeley's CEO, Anthony Palazzo, was introduced to Sionic via email

through one of its board members.  Complaint at ¶ 20.  Six weeks later, Berkeley

finalized an investment in Sionic on behalf of its investors by purchasing 800,000

shares of common stock for $1,600,000 ("Transaction").  Complaint at ¶ 30.  In the

above-captioned lawsuit, Berkeley contends that Sionic made a series of

misrepresentations and omissions of material fact in connection with the

Transaction in violation of federal securities laws.  Complaint at ¶ 7-8.

B.    <u>**Linda Rossetti**</u>

Linda Rossetti ("Rossetti") is an individual and friend of Anthony Palazzo

who has worked in the payments industry for decades.  During the due diligence

process for the Transaction, Palazzo suggested to Sionic that it ask Rossetti to join

an Advisory Board for Sionic so that Rossetti could utilize her contacts in the

payments industry to help Sionic contact potential clients.  Proposed Third-Party

Complaint ("TPC") at ¶ 53.  Rossetti agreed to do so, and she signed an Advisory

Board Agreement on November 28, 2017—one week before the Transaction was

finalized.  Reply Br. at 10; TPC at Exhibit G.  Rossetti was not a party to the

Transaction, and she was not involved in any of the communications between

Berkeley and Sionic regarding the Transaction.  TPC at ¶ 39 ("All of Sionic's

communications and correspondence before December 5, 2017, including Sionic's

November 20, 2017 update email, constituted correspondence with Capital and not

Berkeley or any of Berkeley's beneficial owners.").   As Sionic stated in its

proposed third-party complaint, "Sionic communicated *exclusively* with Capital—

not Berkeley."  TPC at ¶ 15 (emphasis added).  Sionic does not claim to have

communicated with Rossetti directly regarding the Transaction, nor could it.  After

the Transaction was finalized, Rossetti worked to introduce Sionic to some of her

contacts in the payments industry as planned. *See* TPC at ¶ 61.

## C.   Berkeley's Complaint

On December 7, 2019, Berkeley filed this lawsuit against Sionic and

Herman alleging that the Defendants "employed devices, schemes and artifacts to

defraud Berkeley into making its $1.6 million investment in Sionic Mobile" in

violation of the federal securities laws.  Complaint at ¶ 42.  In doing so, Berkeley

asserts three claims for relief: (1) securities fraud; (2) common law fraud; and (3)

punitive damages.  Complaint at ¶¶ 41-57.  Rossetti is not a party to the litigation,

but she has produced documents in response to a third-party subpoena.

### D.    Sionic's Motion To Add Rossetti As A Third-Party Defendant

On May 11, 2021, Sionic moved to add Rossetti to the lawsuit as a "third-

party defendant" pursuant to Federal Rules of Civil Procedure ("FRCP") 14(a) and

19(a) on the grounds that she allegedly "share[s] liability for the harm and

damages, if any, alleged by [Berkeley] in its Complaint."  In its proposed third-

party complaint, Sionic asserts claims against Rossetti for: (1) contribution and

indemnity; (2) libel and slander; (3) breach of contract and breach of fiduciary

duties; (4) civil conspiracy; and (5) punitive damages.  TPC at ¶¶ 78-82, 83-92, 93-

106, 107-113, 129-131.

### ARGUMENT AND CITATION OF AUTHORITIES

### A.    Sionic Does Not Have The Right To Implead Rossetti Under FRCP 14(a).

FRCP 14(a) states, in pertinent part, that "[a] defending party may, as third-

party plaintiff, serve a summons and complaint on a nonparty who is or may be

liable to it *for all or part of the claim against it*."  Fed. R. Civ. P. 14(a)(1)

(emphasis added).  "Rule 14(a) only allows third-party plaintiffs to implead a third

person if the claims are derivative of the plaintiff's claim." *Israel Disc. Bank Ltd.*

*v. Entin*, 951 F.2d 311, 314 n.6 (11th Cir. 1992).  "The third-party claim must seek

liability against the third-party defendant for all or part of the claim that the

plaintiff asserts against the defendant." *Yanzhuo Zhang v. Fieldale Farms Corp.*, No. 3:16-cv-55, 2017 U.S. Dist. LEXIS 229574, at *4 (M.D. Ga. July 28, 2017). "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987) (per curiam).

In its proposed third-party complaint, Sionic's first claim seeks "contribution and indemnity" against Capital and Rossetti "on all amounts that Sionic may have to pay [to Berkeley]." TPC at ¶¶ 81-82. While this claim may superficially appear derivative of Berkeley's claim against Sionic, Sionic fails to plead a single cognizable basis by which Rossetti would have any duty to indemnify Sionic for its liability to Berkeley. Georgia law only recognizes two categories of indemnification: (1) contractual indemnity rights; and (2) common law indemnity for vicarious liability as between principals and agents. *Hines v. Holland*, 334 Ga. App. 292, 296 (2015) (approving dismissal of third-party complaint on the grounds that no valid claim for contribution or indemnity had been stated under Georgia law); *Yanzhuo Zhang*, 2017 U.S. Dist. LEXIS 229574, at *8 (same). Georgia *common law* indemnification law provides that, "'if a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action for indemnity against the person whose wrong

has thus been imputed to him.'" *Id.* (quoting *Dist. Owners Assn., Inc. v. AMEC Environmental & Infrastructure, Inc.*, 322 Ga. App. 713, 715-16 (2013)).  Here, Sionic has not asserted a contractual indemnity claim against Rossetti, and Berkeley has not and could not allege that Sionic is "vicariously liable" for Rossetti's representations or omissions.  Indeed, Rossetti plainly did not act as an agent of Sionic in the Transaction.  Therefore, Georgia law does not permit Sionic to seek common law indemnification from Rossetti for Sionic's liability to Berkeley in the Transaction.  *Hines*, 334 Ga. App. at 296; *Havenbrook Homes v. Infinity Real Estate Invest*., 356 Ga. App. 477, 484 ( 2020) ("Because the parties did not allege imputed negligence or vicarious liability, there can be no common law claim for indemnity against Infinity."); *Yanzhuo Zhang*, 2017 U.S. Dist. LEXIS 229574, at *8 (same).

Sionic also fails to articulate a single basis for seeking *contribution* from Rossetti as a joint tort-feasor for any liability it may have under the federal securities laws.  The Georgia Code sets out a statutory right of contribution, subject to certain limitations not relevant here.  O.C.G.A. § 51-12-32.  "But, as expressly stated in the statute, '[t]he right to contribution relates only to joint *tortfeasors*, and where the proposed defendant *cannot* be made liable as a joint tortfeasor, the contribution action does not state a claim.'"  *E.g.*, *Hines*, 334 Ga. App. at 295

(quoting *Greenhome & O'Mara, Inc. v. City of Atlanta*, 298 Ga. App. 261, 262 (2009)).

Here, Sionic's proposed complaint admits that Rossetti was not a party to the Transaction, and she did not communicate with Sionic about the Transaction. Instead, Rossetti simply agreed to join an Advisory Board for Sionic to utilize her contacts in the payments industry for Sionic's benefit.  Since there is not and cannot be any allegation that Sionic and Rossetti are liable to Berkeley as joint tortfeasors, Sionic does not have a right to contribution from Rossetti under O.C.G.A. § 51-12-32.

Sionic nevertheless argues that, because it communicated with Capital exclusively, it is Capital and Rossetti who must be liable to Berkeley for any alleged misrepresentations.  Reply Br. at 5-10, 12-13.  But, regardless of Capital's role in the Transaction, it is beyond dispute that Rossetti was not a party to the Transaction, and she would have had no reason or basis for communicating with Berkeley about Sionic's performance during due diligence—indeed, she was introduced to Sionic only days before the Transaction closed.  Although Sionic claims that Rossetti's introduction to Sionic and Advisory Board Agreement "predates, not post-dates" Berkeley's December 5, 2017 investment, it has not articulated any facts to support an allegation that Rossetti was somehow a joint tortfeasor with respect to the misrepresentations and omissions alleged in

Berkeley's securities fraud claim, and therefore, no right of contribution can exist. In sum, Sionic's conclusory and wholly specious invocation of "indemnity and contribution" rights against Rossetti without any valid basis in law or fact for the claims is insufficient to draw Rossetti into this lawsuit pursuant to FRCP 14(a). *Olavarrieta*, 812 F.2d at 643 (holding that third-party complaint under Rule 14(a) was properly dismissed because the defendant "failed to state any legal or factual grounds for indemnification.").

The rest of Sionic's proposed claims against Rossetti provide even less grounds for a third-party complaint under FRCP 14(a). On the liable and slander count, Sionic alleges that—during the course of this litigation—Capital and Berkeley made false allegations that Sionic had made material misrepresentations to its investors, and Rossetti allegedly "repeated" these allegations to some of her contacts in the payments industry that were allegedly discussing proposed transactions with Sionic. Putting aside the blatant pleading deficiencies in this claim, *see* discussion *infra* at Section B.1, Rossetti's alleged liability to Sionic for libel and slander has nothing to do with Sionic's liability to Berkeley on the securities fraud claims asserted by Berkeley in the litigation. Significantly, "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *Olavarrieta*, 812 F.2d at 643.

The third claim asserted against Rossetti alleges that she breached the Advisory Board Agreement with Sionic and breached her fiduciary duties as an Advisory Board member *after* the Transaction was finalized.  TPC at ¶¶ 93-106. Specifically, Sionic alleges that Rossetti disclosed confidential information about Sionic learned as an Advisory Board member to facilitate Berkeley's bringing this lawsuit against Sionic.  TPC at ¶ 104.  Likewise, in Sionic's fourth claim against Rossetti, Sionic makes conclusory allegations that Rossetti engaged in a "civil conspiracy" with Berkeley and Capital to provide Sionic's "confidential information" to Berkeley to facilitate this lawsuit and to harm Sionic's relationships with potential clients that Rossetti had introduced to Sionic.  TPC at ¶¶ 107-113.

As an initial matter, conclusory allegations of "conspiracy" or similar claims are insufficient to permit a third-party complaint under FRCP 14(a).  *Olavarrieta*, 812 F.2d at 643.  More importantly, even if these allegations were true (which they are not), none of these claims would establish that Rossetti is liable to Sionic for all or a portion of the federal securities law claims that are asserted against Sionic in the litigation.  Because these claims for "breach of contract" and "conspiracy" are not "derivative" of the claims asserted by Berkeley against Sionic, an impleader action against Rossetti is improper under FRCP 14(a).  *E.g.*, *Israel Disc. Bank*, 951 F.2d at 314 n.6.  Finally, Sionic's claim for "exemplary damages" from Rossetti

for "willful and malicious conduct" is not an independent claim for relief or otherwise derivative of Berkeley's claims against Sionic in this litigation, and it is therefore insufficient to bring Rossetti into this case under FRCP 14(a).

**B.      Rossetti Is Not Subject to Mandatory Joinder Under FRCP 19(a)(1)(A).**

As an alternative to impleader, Sionic requests that Rossetti be subject to mandatory joinder under FRCP 19(a).  FRCP 19 states a two-part test for determining whether a non-party must be joined as a party to the litigation.  "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.  If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."  *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 669 (11th Cir. 1982).  The first step in the analysis, therefore, is to determine whether the third-party is a person who should be joined if feasible under Rule 19(a).  "In making this decision, 'pragmatic concerns, especially the effect on the parties and the litigation,' control."  *Id*. (quoting *Smith v. State Farm Fire & Casualty Co.*, 633 F.2d 401, 405 (5th Cir. 1980)).

Rule 19(a)(1) states that, when feasible, joinder shall be required if: "(A) in that person's absence, the court cannot afford complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and

is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(A)-(B).

Under Rule 19(a)(1)(A), the Court must determine if it is able to afford "complete relief" among the existing parties in the absence of the third-party.  *See GE Credit Corp. of Tenn. v. First Nat'l Banc.*, Inc., No. CV205-112, 2005 U.S. Dist. LEXIS 19191, at *7 (S.D. Ga. Sept. 2, 2005) (holding that "joinder is not necessary in order for the Court to afford complete relief between [plaintiff] and [defendant].").  "The 'complete' relief concept of Rule 19(a)(1) 'refers to relief between the persons already parties, not as between a party and the absent [party] whose joinder is sought.'"  *Curling v. Raffensperger*, 397 F.Supp.3d 1334, 1344 (N.D. Ga. 2019) (quoting *Heinrich v. Goodyear Tire & Rubber Co.*, 532 F. Supp. 1348, 1359-60 (D. Md. 1982)).  It is the moving party's burden to show that it is necessary for the third party to be joined to afford them with complete relief.  *E.g.*, *U-Haul Co. v. Mayberry*, No. 3:19-cv-156, 2020 U.S. Dist. LEXIS 192245, at *9 (N.D. Ga. July 22, 2020).

Here, Berkeley alleges that Sionic engaged in certain misrepresentations and omissions regarding the Transaction.  Rossetti's involvement is not required for the

11

Court to grant relief to Berkeley on its securities law claims.  Rossetti is also not required for the Court to grant complete relief to Sionic on its counterclaims against Berkeley.  In its proposed counterclaim, Sionic asserts the following claims against Berkeley: (1) libel and slander; (2) civil conspiracy; (3) aiding and abetting breaches of contract and fiduciary duty; (4) tortious interference with contract; (5) tortious interference with business relations; and (6) exemplary damages.  TPC at ¶¶ 83-92, 107-113, 114-120, 121-123, 124-128, 129-131.  None of these claims require Rossetti to be joined for this Court to afford "complete relief" to the existing parties.  Therefore, joinder is improper under Rule 19(a)(1)(A) for any of Sionic's proposed claims.

1.   <u>Joinder Is Improper For The Libel And Slander Claim.</u>

Sionic's first claim against Berkeley is for libel and slander based on "false and malicious statements" allegedly made by Berkeley to "members of the press" about Sionic's alleged misrepresentations to investors.  TPC at ¶ 86.  Sionic then alleges that Rossetti "repeated these false and malicious statements" to certain unspecified "counterparties" to "Pending Deals" being negotiated by Sionic, which allegedly resulted in those deals being terminated.  TPC at ¶ 87.  To the extent Sionic seeks to recover from Berkeley for its alleged "statements to the press," it can do so and obtain complete relief without Rossetti's involvement as a party.  The allegation that Rossetti "repeated" these statements to "counterparties"

negotiating the "Pending Deals"—even if it was actionable (which it is not)—presents a different claim against a different party than the allegations against Berkeley.  Consequently, joinder of Rossetti is not necessary to afford Sionic with "complete relief" on its libel and slander claim against Berkeley.

In addition, this Court should refuse to grant joinder under FRCP 19(a) based on the libel and slander claim because it would be "futile"—the claim is barred on its face by the statute of limitations.  *Al-Sharif v. EPES Transp. Sys.*, No. CV-111-037, 2012 U.S. Dist. LEXIS 20492, at *13-16 (S.D. Ga. Feb. 17, 2012) (denying joinder motion under Rule 19(a) because "it would be futile to grant Plaintiff's motion" in that the claims "would fail as a matter of law."); *Vaughn v. Ga.*, No. 1:11-cv-4026, 2012 U.S. Dist. LEXIS, at *18-19 (N.D. Ga. June 27, 2012) (denying motion for joinder as "futile" because the proposed claims against the third parties would be barred by the Eleventh Amendment).  Under Georgia law, "[w]hether [the plaintiff] claims personal damage or damage to a business reputation, a claim for slander or conspiracy to slander remains a claim for injury to reputation subject to the one-year statute of limitation specified in O.C.G.A. § 9-3-33."  *Barnwell v. Barnett & Co.*, 222 Ga. App. 694, 695-96 (1996).  In fact, the same statute of limitations applies to all "injuries to reputation," including both libel and slander.  O.C.G.A. § 9-3-33.

In this case, Sionic alleges that Rossetti resigned from the Advisory Board on December 11, 2019, that shortly after her resignation she "contacted the counterparties to the 'Pending Deals'" to "relate Berkeley's false fraud allegations," and that the counterparties to the "Pending Deals" terminated further discussions with Sionic "within 72 hours of Rossetti's resignation." TPC at ¶¶ 70, 73-74. According to Sionic, these statements by Rossetti "repeated" the false statements that Berkeley had previously made to "members of the press." TPC at ¶ 86-87. Therefore, by Sionic's own admission, all of the statements that allegedly comprise libel and slander by any of the parties had been made within 72 hours of Rossetti's resignation on December 11, 2019. The counterclaim and third-party claims at issue here were not asserted by Sionic until May 11, 2021, well past the one-year statute of limitations for asserting such claims under Georgia law. O.C.G.A. § 9-3-33. This Court should therefore refuse to join Rossetti under Rule 19(a) because the libel and slander claims would be "futile" as a matter of law. *Al-Sharif*, 2012 U.S. Dist. LEXIS 20492, at *13-16.

    2.   <u>Joinder Is Improper For The Civil Conspiracy Claim</u>.

Joinder is also improper for the civil conspiracy claim. It is well established that members of a conspiracy are jointly and severally liable for the acts of co-conspirators, a civil conspiracy claim can therefore involve non-party co-conspirators, and the co-conspirator's presence is not required to adjudicate a civil

conspiracy claim against the named defendant(s).[1]  *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 946 (11th Cir. 1999) (abrogated on other grounds) (citing *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 n.10 (7th Cir. 1980) for the "established principle that co-conspirators are not indispensable parties")).  Therefore, Rossetti is not subject to mandatory joinder under FRCP 19(a) simply because she is alleged to be a co-conspirator with Berkeley.

The alleged "conspiracy" here involves Berkeley supposedly conspiring with Rossetti to provide Berkeley with "confidential information" from Sionic to facilitate Berkeley in bringing this lawsuit and to interfere with the "Pending Deals."  TPC at ¶¶ 107-113.  Putting aside the facial absurdity of this claim, Sionic can litigate its conspiracy claim against Berkeley fully without Rossetti's involvement as a party.  In addition, to the extent the civil conspiracy claim is based on an alleged conspiracy to commit libel and slander, TPC at ¶ 112, that claim is also barred by the one-year statute of limitations in Georgia for "injuries to reputation."  O.C.G.A. § 9-3-33; *see also Barnwell*, 222 Ga. App. at 695-96 (holding that "conspiracy to slander remains a claim for injury to reputation subject to the one-year statute of limitation specified in O.C.G.A. § 9-3-33").  For all these

---

[1]  *Nottingham v. Wrigley*, 221 Ga. 386, 388 (1965) ("[A]s to the consequences of a conspiracy, the rule is well established that the act of one is the act of all. Conspirators are jointly and severally liable for all the acts of each, done in pursuance of the conspiracy.").

reasons, Rossetti should not be joined under Rule 19(a)(1)(A) as a third-party defendant on Sionic's civil conspiracy claim.

3.     Joinder Is Improper For The Aiding and Abetting Claim.

Sionic's next claim alleges that Berkeley aided and abetted Rossetti's alleged breach of her Advisory Board Agreement and fiduciary duties.  TPC at ¶¶ 114-120.  Liability for aiding and abetting a tort committed by another actor results in joint and several liability for the party giving aid to the tortfeasor.  *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240 (11th Cir. 2017) ("[A]iding and abetting in tort can result in joint and several liability."); *FDIC v. Loudermilk*, 305 Ga. 558, 569 (2019) (holding that joint and several liability applies to tortfeasors who acted in concert).  Consequently, if Sionic succeeds on its claim against Berkeley for aiding and abetting Rossetti's breach of contract and/or breach of fiduciary duties, Rossetti's absence does not prevent Sionic from obtaining "complete relief" from Berkeley.  For this reason alone, joinder would be improper under Rule 19(a)(1)(A).

In addition, joinder would be "futile" because Sionic's counterclaim fails to state a valid cause of action for multiple reasons.  *Al-Sharif*, 2012 U.S. Dist. LEXIS 20492, at *13-16 (denying joinder under Rule 19(a) because "it would be futile to grant Plaintiff's motion" in that the claims "would fail as a matter of law."); *Vaughn*, 2012 U.S. Dist. LEXIS, at *18-19 (same).  First, Rossetti did not

have a fiduciary relationship with Sionic as a matter of law.  In Georgia, "[a] fiduciary or confidential relationship arises 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.'"  *U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F.Supp.3d 1340, 1374 (S.D. Ga. 2015) (quoting O.C.G.A. § 23-2-58); *see also Wright v. Apartment Inv. & Mgmt. Co.*, 315 Ga. App. 587, 592 (2012) (same).

Here, Rossetti's Advisory Board Agreement explicitly states that she is an "independent contractor," and it further clarifies that she has no authority whatsoever: "Company acknowledges and agrees that AB Member is not a director of the Company and has no decision-making responsibilities or authority with respect to or ability to bind the Company.  All decisions to act or forbear from acting upon any suggestions, advice or recommendations of AB Member shall remain as the sole and exclusive responsibility and authority of the Company and its directors and officers."  TPC at Exhibit G.  Since Rossetti is not an agent and cannot exert any controlling influence, Rossetti does not owe Sionic any fiduciary duties as a matter of law.  If the underlying claim for breach of fiduciary duty fails, there can be no liability for aiding and abetting a breach of fiduciary duty. *Premier/Georgia Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 788 (2005).

Second, the aiding and abetting claim is also futile and fails as a matter of law because Berkeley is *not* a "stranger" to the relationship between Rossetti and Sionic.  "In determining whether a defendant acted 'without privilege' in aiding a breach of fiduciary duty, the Georgia Court of Appeals has instructed courts to apply the stranger doctrine." *U.S. Capital Funding*, 137 F.Supp.3d at 1378 (citing *Am. Mgmt. Servs. East, LLC v. Fort Benning Family Cmtys., LLC*, 333 Ga. App. 664, 687-88 (2015)).  "As such, liability for aiding and abetting a breach of fiduciary duty requires that the defendant be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *Id*. at 1378-79.  Under this doctrine, "'part[ies] to an interwoven contractual agreement,' as well as a party having 'a direct economic interest in' or standing in a position to benefit from a contract or business relationship, cannot be held liable for aiding or abetting the breach of a fiduciary duty associated therewith.'" *Id*. at 1379 (holding that defendant bank was not a "stranger" to the fiduciary relationship and therefore could not be liable for aiding and abetting a breach of fiduciary duty as a matter of law (citing *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 609 (1998))).

Here, Rossetti was working on Sionic's Advisory Board to help Sionic generate business through her contacts.  As an investor in Sionic, Berkeley stood to "benefit" economically from Rossetti's service on Sionic's Advisory Board.  In fact, Berkeley's CEO, Palazzo, introduced Rossetti to Sionic as a potential

Advisory Board Member for that exact purpose.  TPC at ¶¶ 20, 53.  Therefore,

Berkeley is clearly not a "stranger" to Sionic's contract with Rossetti, and Sionic's

claim for aiding and abetting a breach of fiduciary duty is "futile" as a matter of

law.

       4.    <u>Joinder Is Improper For The Tortious Interference Claims</u>.

       Sionic's last two substantive claims against Berkeley are for tortious

interference with contractual relations and with business relations.  Specifically,

Sionic alleges that Berkeley "caused Rossetti to breach her [Advisory Board]

Agreement" with Sionic and to "terminate her relationship with Sionic."  TPC at ¶

122.  In addition, Sionic alleges that Berkeley and Rossetti tortiously interfered

with business relations when they allegedly caused unspecified parties to potential

business deals (who had been introduced by Rossetti) to terminate "Pending Deals"

with Sionic.  TPC at ¶ 127.  Even if Sionic had stated a valid claim for relief based

on tortious interference (which it did not), Sionic can litigate these claims and

recover from Berkeley without Rossetti being a party to the litigation.  In other

words, Rossetti is not a required party for the Court to afford "complete relief"

between Sionic and Berkeley on either one of these claims, and joinder under Rule

19(a) is therefore improper.  Fed. R. Civ. P. 19(a)(1)(A).

       In addition, mandatory joinder of third parties should not be ordered for

claims that are "futile" or invalid as a matter of law at the pleadings stage.  *Al-*

*Sharif*, 2012 U.S. Dist. LEXIS 20492, at *13-16; *Vaughn*, 2012 U.S. Dist. LEXIS, at *18-19 (same).  Although Georgia law recognizes that tortious interference with contract and tortious interference with business relations are distinct claims, "most of the elements of the two torts are similar." *Britt/Pratt Ins. Agency v. Vandroff Ins. Agency*, 952 F.Supp. 1575, 1583 (N.D. Ga. 1996).  More importantly, "[t]o sustain a claim for tortious inference with contractual or business relations, a plaintiff must establish that the defendant is a 'stranger' to the business relationship or contract."  *Id.* (citing *Renden, Inc. v. Liberty Real Estate Limited Partnership,* 213 Ga. App. 333, 336 (1994)); *see also Barnwell,* 222 Ga. App. at 695 (holding that defendant cannot, as a matter of law, tortiously interfere with a plaintiff's business or contractual relations unless the plaintiff establishes that defendant is a "stranger" to the business or contractual relations in question).  Among other examples, Georgia courts have held that a defendant is *not* a "stranger" to a contract or business relationship when: (1) the defendant would benefit economically from the alleged injured relations; or (2) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.  *Britt/Pratt*, 952 F.Supp. at 1584.

Here, since Rossetti was working on Sionic's Advisory Board to help Sionic generate business through her contacts, Berkeley stood to "benefit economically" from Rossetti's contract with Sionic because it is an investor in Sionic.  In fact,

Berkeley's CEO, Palazzo, introduced Rossetti to Sionic as a potential Advisory Board Member for that exact purpose.  TPC at ¶¶ 20, 53.  For the same reasons, Berkeley stood to benefit economically from Sionic's alleged "Pending Deals" with unspecified third parties.  In addition, as an investor in Sionic, Berkeley and Sionic were parties to an "interwoven set of contracts or relations."  For all these reasons, Berkeley is clearly not a "stranger" to Sionic's contract with Rossetti or its prospective business relationships with the unspecified counterparties to the "Pending Deals," and Sionic's tortious interference claims are therefore improper as a matter of law.  *E.g.*, *Britt/Pratt*, 952 F.Supp. at 1583.  Given that Sionic's tortious interference claims are defective on their face, it would be improper to join Rossetti to the case under FRCP 19(a) on the grounds that she is indispensable to these invalid claims.  *Al-Sharif*, 2012 U.S. Dist. LEXIS 20492, at *13-16; *Vaughn*, 2012 U.S. Dist. LEXIS, at *18-19.

## C.  Rossetti Is Not Subject to Mandatory Joinder Under FRCP 19(a)(1)(B)

If joinder is not required under FRCP 19(a)(1)(A), then the Court must address the propriety of joinder under the second part of the Rule—Rule 19(a)(1)(B).  As stated in this subpart of Rule 19, the Court should consider whether (i) the absent party has an "interest" in the subject of the litigation that may be "impaired" by their absence, or (ii) whether an existing party may be subject to a "substantial risk" of incurring double or otherwise "inconsistent

obligations" because of the absent party's interest.  Fed. R. Civ. P. 19(a)(2)(i)–(ii).

As with the rest of Rule 19(a), the moving party has the burden to "provide

concrete examples of exactly how [the parties] may be subject to inconsistent

outcomes without joinder of the [absent party].'"  *U-Haul*, 2020 U.S. Dist. LEXIS

192245, at *13 (quoting *Buquer v. City of Indianapolis*, No. 1:11-cv-0708-SEB-

MJD, 2012 WL 76141, at *4 (S.D. Ind. Jan. 9, 2012)).

"Where 'separate suits have different consequences and different measures

of damages,' there is no risk that inconsistent obligations might result." *U-Haul*,

2020 U.S. Dist. LEXIS 192245, at *12 (quoting *Winn-Dixie Stores, Inc. v.

Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014)).  The Eleventh Circuit

Court of Appeals has clarified that "inconsistent obligations," not "inconsistent

adjudications," are prohibited by Rule 19:

> 'Inconsistent obligations' are not . . . the same as inconsistent
> adjudications or results.  Inconsistent obligations occur when a party
> is unable to comply with one court's order without breaching another
> court's order concerning the same incident.  Inconsistent adjudications
> or results, by contrast, occur when a defendant successfully defends a
> claim in one forum, yet losses on another claim arising from the same
> incident in another forum.

*Winn-Dixie Stores*, 746 F.3d at 1040 (quoting *Delgado v. Plaza Las Ams., Inc.*,

139 F.3d 1, 3 (1st Cir. 1998) (per curiam)); *see also U-Haul*, 2020 U.S. Dist.

LEXIS 192245, at *12 (same).  "[T]hat Defendants may be found liable in this

action, and [a nonparty] not liable in another future, hypothetical action, or vice

versa, does not raise the specter of conflicting obligations that Rule 19 guards against." *United States v. Janke*, No. 09-14044-civ, 2009 WL 2525073, at *5 (S.D. Fla. Aug. 17, 2009).

Here, none of Sionic's proposed claims will "impair" Rossetti's interests (if any) in the dispute, and none of them will result in a substantial risk to Sionic of "inconsistent obligations" under conflicting court orders from multiple proceedings should Rossetti not be joined. As an initial matter, Rossetti does not have an "interest" in any of Sionic's claims against Berkeley that will be "impaired" by her absence. Rossetti, as an absent party, would not be bound by the judgment on Sionic's claims against Berkeley because it would not have "res judicata" effect on a non-party. *E.g.*, *Provident Tradesmens Bank and Trust Co. v. Patterson,* 390 U.S. 102, 110 (1968) ("[A] judgment is not res judicata as to, or legally enforceable against, a non-party."). Moreover, Rossetti is clearly a tangential player in the Transaction, and her involvement in this litigation would expose her to substantial costs and prejudice as discovery unfolds on a host of matters that do not concern her.

Likewise, Sionic does not face a substantial risk of "inconsistent obligations" from conflicting court orders resulting from Rossetti's absence. If Sionic wins on a claim against Berkeley but not in a future claim against Rossetti, no party is faced with the inability to comply with both court orders as a result.

*Janke*, 2009 WL 2525073, at *5 ("[T]hat Defendants may be found liable in this action, and [a nonparty] not liable in another future, hypothetical action, or vice versa, does not raise the specter of conflicting obligations that Rule 19 guards against.").  Furthermore, unlike most cases that analyze this question, Rossetti does not have claims against Sionic that she could assert in a future proceeding that would raise the possibility of "duplicative liability" or "inconsistent obligations" directly against Sionic from multiple court orders.  Although Sionic makes passing reference to the risk of inconsistent outcomes, it has not met its burden to provide "concrete examples" of "exactly how [the parties] may be subject to inconsistent outcomes" on its claims without Rossetti being joined as a party.  *U-Haul*, 2020 U.S. Dist. LEXIS 192245, at *13.

Finally, as discussed above, Sionic's joinder request would also be "futile" under Rule 19(a)(1)(B) because they do not state a valid claim for relief as a matter of law on any of its proposed claims.  *Al-Sharif*, 2012 U.S. Dist. LEXIS 20492, at *13-16; *Vaughn*, 2012 U.S. Dist. LEXIS, at *18-19 (same).  For all these reasons, joinder is improper under Rule 19(a)(1)(B) for any of Sionic's proposed claims.

## CONCLUSION

WHEREFORE, Rossetti respectfully requests that this Court deny Sionic's Motion (Dkt. 127) to Join Rossetti as a party to the above-captioned litigation pursuant to FRCP 14(a) and 19(a).

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1, N.D. GA.</u>

The undersigned hereby certifies that this pleading was prepared using one of the font and point selections approved by this Court in L.R. 5.1(C), N.D. Ga. Specifically, Times New Roman in 14-point font.

Respectfully submitted this 18th day of June, 2021.

/s/: *David J. Hungeling*
David J. Hungeling
Georgia State Bar No. 378417
Adam S. Rubenfield
Georgia State Bar No.: 419033

**Hungeling Rubenfield Law**
1718 Peachtree Street, N.W,
Peachtree 25th, Suite 599
Atlanta, Georgia 30309
TEL (404) 574-2466
FAX (404) 574-2467
*david@hungelinglaw.com*
*adam@hungelinglaw.com*

/s/: *Daniel C. Norris*
Daniel C. Norris
Georgia State Bar No. 140838

**The Ether Law Firm, LLC**
1718 Peachtree Street, N.W.
Peachtree 25th, Suite 599
Atlanta, Georgia 30309
TEL (404) 574-2465
daniel.norris@etherlawfirm.com

*Counsel for Non-Party Linda Rossetti*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BERKLEY VENTURES II, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 1:19-cv-05523-SDG |
| SIONIC MOBILE CORPORATION and | ) | |
| RONALD D. HERMAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed, on the date stated below, the

foregoing **NON-PARTY LINDA ROSSETTI'S BRIEF IN OPPOSITION TO**

**DEFENDANT SIONIC MOBILE CORPORATION'S S' MOTION FOR**

**LEAVE TO JOIN THIRD-PARTY DEFENDANTS** with the Clerk of Court

using the CM/ECF system, which will automatically send notification of such

filing to the attorneys of record, as follows:

| | |
|---|---|
| Simon Jenner | Jason Brian Godwin |
| Adam Ford | Godwin Law Group |
| 210 Interstate North Parkway, SE | 3985 Steve Reynolds Boulevard |
| Suite 100 | Building D |
| Atlanta, Georgia 30339 | Norcross, Georgia 30093 |

This 18th day of June, 2021.

/s/: *David J. Hungeling*
David J. Hungeling
Georgia State Bar No. 378417