# EXHIBIT A

## AGREEMENT OF COMPROMISE AND SETTLEMENT AND MUTUAL RELEASE OF CLAIMS

This agreement of compromise and settlement and mutual release of claims (this "*Agreement*"), effective as of the date of the last signature below (the "*Effective Date*"), is between the following, each of whom are a "*Party*," and who are collectively the "*Parties*," to this Agreement:

First, Berkeley Ventures II, LLC, a Mississippi limited liability company ("*Berkeley*"), for and on behalf of itself and its Affiliates (defined in Section 13.1 below), and its and their respective former, current, and future beneficial owners, securities holders, investors, directors, officers, executives, managers, employees, agents, professionals, CPAs, attorneys, insurers, administrators, predecessors, successors, assigns and transferees, and in each instance, each of their respective heirs, executors, administrators, successors and assigns, and all other persons having any right derivative of any of them by reason of subrogation or otherwise, or whose claims are dependent upon the facts or causes of action that are or could have been asserted in the Lawsuit (together with Berkeley, collectively, the "*Berkeley Party*");

Second, Sionic Mobile Corporation, a Georgia corporation ("*Sionic*"), for and on behalf of itself and its Affiliates, and its and their respective former,



current and future beneficial owners, securities holders, investors, directors, officers, executives, managers, employees, agents, professionals, CPAs, attorneys, insurers (including specifically, although not limited to, Philadelphia Indemnity Insurance Company), administrators, predecessors, successors, assigns and transferees, and in each instance, each of their respective heirs, executors, administrators, successors, and assigns, and all other persons having any right derivative of any of them by reason of subrogation or otherwise, or whose claims are dependent upon the facts or causes of action that are or could be asserted in the Lawsuit (together with the Sionic, collectively, the "*Sionic Party*"); and

Third, Ronald D. Herman ("*Mr. Herman*"), for and on behalf of himself and his current, former, and future insurers (including specifically, although not limited to, Philadelphia Indemnity Insurance Company), administrators, assigns, predecessors, successors, transferees, employees, agents and attorneys, and each of their respective heirs, executors, administrators, successors, and assigns, and all other persons having any right derivative of any of them by reason of subrogation or otherwise, or whose claims are dependent upon the facts or causes of action that are or could be asserted in the Lawsuit (together with Mr. Herman, collectively, the "*Herman Party*"; the Sionic Party and Herman Party being collectively the "*Defendant Parties*").

EXECUTION COPY                    2



This Agreement arises from Berkeley's claims and causes of action alleged in *Berkeley Ventures II, LLC v. Sionic Mobile Corporation and Ronald D. Herman*, No. 1:19-cv-05523-VMC, filed December 7, 2019, pending in the United States District Court for the Northern District of Georgia, first before Judge Orinda D. Evans, reassigned to Judge Steven D. Grimberg, and finally reassigned to Judge Victoria M. Calvert (the "*Lawsuit*"), arising from Berkeley's investment in Sionic. Sionic and Herman deny any wrongdoing, legal liability or damages in connection with the Lawsuit and its subject matter, including the investment, or any alleged statement or omission made in solicitation of that investment. Nonetheless, the Parties desire to enter into this Agreement for the purpose of reaching a compromised resolution and settlement of the Lawsuit.

Now, therefore, the Parties agree as follows:

1.    **Payment of the Settlement Amount.** Sionic shall endeavor to pay the amount specified in Schedule 1-A to this Agreement (the "*Settlement Amount*") no later than 10 business days following the Effective Date. Plaintiff acknowledges, however, that the Settlement Amount is being gathered from more than one source into Sionic's applicable bank account, and that it may therefore take more than 10 business days for Sionic to secure the finalization and clearance into its account of the entire Settlement

EXECUTION COPY                    3



Amount. If Sionic requires more than 10 business days, Sionic shall provide Berkeley prompt written notice, which notice shall include confirmation regarding the date on which Sionic expects the Settlement Amount to be ready for payment. Sionic shall pay the Settlement Amount in accordance with the instructions specified in <u>Schedule 1-B</u> to this Agreement, which Berkeley acknowledges to be complete payment by all Defendant Parties, without any further action or undertaking by any of the Defendant Parties.

2.      **Berkeley Termination as a Sionic Stockholder.** As of the Effective Date, Berkeley shall cease to be, and is hereby terminated as, a stockholder in Sionic, including as follows:

2.1.    Without any further action or undertaking of either Sionic or Berkeley, this Agreement automatically terminates: (a) the transaction and agreement constituted by the Subscription Agreement between Berkeley and Sionic effective December 5, 2017, the Joinder to the Amended and Restated Shareholders' Agreement executed by Berkeley and effective December 5, 2017, and Sophisticated Investor Questionnaire executed by Berkeley and effective December 5, 2017 (collectively, the "*Share Transaction Documents*"); and (b) all rights, claims, titles, and interests of Berkeley or any other member of the Berkeley Party in or to Sionic or Sionic's business, revenues, rights of payment, operations, results of operations, assets,



property (real, personal, or otherwise), transactions, proceeds of transactions, and anything else of Sionic that is of value, however estimated or determined, in each instance regardless of whether direct or derivative or arising in equity, at law, or by contract, including under or in consequence of Sionic's Articles of Incorporation, as amended (the "*Articles*"), or the Amended and Restated Shareholder Agreement between Sionic's stockholders (the "*Shareholder Agreement*");

      2.2.   Neither Berkeley nor any other member of the Berkeley Party, including Berkeley's beneficial owners, shall have, possess or exercise any right, title, claim, or interest in or to Sionic, whether directly, indirectly, derivatively or otherwise in consequence of having been a stockholder, option-holder or warrant-holder in Sionic before the Effective Date, or otherwise, each such right, title, claim, and interest hereby being waived, terminated, and cancelled, including in regard to any of Sionic's past, present, and future securities, offerings of securities, transactions, proceeds resulting from any transactions, revenues, profits, dividends and distributions, assets, and business, whether arising in equity, at law, under contract, or by means of any written instrument or agreement.

      2.3.   The shares of Sionic Common Stock recorded under Berkeley's name in Sionic's records are hereby automatically redeemed by



and assigned and transferred to Sionic, and instead shall be counted as in Sionic's treasury.

2.4.   Sionic Stock Certificate No. 342, which memorializes 800,000 units of Sionic stock in the name of Berkeley (the "*Sionic Stock*"), is hereby cancelled, voided, and of no longer of any legal force or effect. No later than five business days of the Effective Date, Berkeley shall deliver Sionic Stock Certificate No. 342 to Sionic's counsel, as identified in Section 13.5.

2.5.   To further the purposes and undertakings of this Article 2, Berkeley shall execute and deliver to Sionic's counsel contemporaneous with this Agreement the form of redemption agreement attached as Exhibit A.

3.   **Release of Defendant Parties.** Berkeley, on its own behalf and on behalf of the other members of the Berkeley Party, hereby releases, remises, and forever acquits the Defendant Parties of and from any and all debts, actions, causes of action, suits, contracts, agreements, damages, claims, demands, and liabilities whatsoever of every kind or nature (collectively, "*Claims*") and potential Claims, of any kind or nature, including in regard to the Lawsuit, from the beginning of time until the execution of this Agreement, whether known or unknown, choate or inchoate, whether *ex delicto* or *ex contractu*, enforceable at law or in equity in any judicial, administrative or arbitral proceeding, or arising under the United States



Constitution, the Constitution of the State of Georgia, or the laws or rules of decision of the United States or any State or political subdivision of the United States. Although not to the exclusion of any Claims or potential Claims addressed in this Section, the Berkeley Party specifically releases, remises and forever acquits the Defendant Parties of and from any Claim or allegation fraud, whether arising under the laws of the United States or those of any State within the United States, including Georgia. The releases, remises, and acquittals under this Section shall not include or act to preclude any Claims or potential Claims by a Berkeley Party arising from or related to any breach or threatened breach of this Agreement by Sionic or Mr. Herman.

4.      **Release of Berkeley Parties.** Sionic on its own behalf and on behalf of the other members of the Sionic Party, and Mr. Herman on his own behalf and on behalf of the other members of the Herman Party, in each instance hereby release, remise, and forever acquit the Berkeley Party of and from any and all Claims and potential Claims of any kind or nature, including in regard to the Lawsuit, from the beginning of time until the execution of this Agreement, whether known or unknown, choate or inchoate, whether *ex delicto* or *ex contractu,* enforceable at law or in equity in any judicial, administrative, or arbitral proceeding, or arising under the United States Constitution, the Constitution of the State of Georgia, or the laws or



rules of decision of the United States or any State or political subdivision of the United States. Notwithstanding the foregoing sentence, the releases, remises, and acquittals of this Section shall not apply to, and hereby exclude, (a) Bush, Slipakoff, Mills & Slomka, LLC, Slipakoff & Slomka, P.C., the attorneys associated with each of those law firms to the extent they represented Berkeley in the Lawsuit, and Adam Slipakoff, (b) Nathaniel Milburn, and (c) Joseph D. Lazewski. Moreover, the releases, remises, and acquittals under this Section shall not include or act to preclude any Claims or potential Claims that the Defendant Parties may have in each instance arising from or related to any breach or threatened breach of this Agreement by any member of the Berkeley Party.

5. **Dismissal of Claims.** No later than three business days following date of delivery of the Settlement Amount, Berkeley shall file the dismissal with prejudice of the Lawsuit, attached as <u>Exhibit</u> <u>B</u>.

6. **Indemnification.** THE BERKELEY PARTY HEREBY JOINTLY AND SEVERALLY COVENANTS AND PROMISES TO INDEMNIFY AND TO FOREVER HOLD HARMLESS AND DEFEND THE DEFENDANT PARTIES AND EACH OF THEM FROM AND AGAINST ANY AND ALL LOSSES, EXPENSES, OBLIGATIONS, MONETARY DAMAGES, FINES, FEES, PENALTIES, LIENS, ASSESSMENTS,



INTEREST OBLIGATIONS, DEFICIENCIES, COSTS, AND EXPENSES
(INCLUDING COURT COSTS AND REASONABLE AMOUNTS PAID IN
SETTLEMENT, INVESTIGATIONS, ATTORNEY FEES, ACCOUNTANTS
AND OTHER PROFESSIONALS AND ADVISORS) ARISING FROM OR IN
ASSOCIATION WITH ANY CLAIM OR POTENTIAL CLAIM,
INVESTIGATION, OR OTHER PROCEEDING ARISING FROM OR IN
RELATION TO: (a) ANY DEFAULT UNDER OR BREACH OF THIS
AGREEMENT BY ANY MEMBER OF THE BERKELEY PARY; (b) THE
SHARE TRANSACTION DOCUMENTS; (c) THE LAWSUIT; (d) ANY ACT
OR OMISSION ALLEGEDLY COMMITTED BY THE DEFENDANT
PARTIES, WHETHER JOINTLY OR SEVERALLY, TO THE HARM OR
DETRIMENT OF ANY MEMBER OF THE BERKELEY PARTY; OR (e) ANY
CLAIMS OR POTENTIAL CLAIMS ASSOCIATED WITH OR ARISING
FROM ANY FEE OR OTHER DISPUTE BETWEEN ANY MEMBER OF
THE BERKELEY PARTY AND ANY OF THEIR RESPECTIVE COUNSEL
ENGAGED AT ANY TIME IN REGARD TO THE LAWSUIT OR ITS
SUBJECT MATTER, INCLUDING JASON GODWIN, THE GODWIN LAW
GROUP, BUSH, SLIPAKOFF, MILLS & SLOMKA, LLC, SLIPAKOFF &
SLOMKA, P.C., THE ATTORNEYS ASSOCIATED WITH EACH OF THOSE

EXECUTION COPY                    9



LAW FIRMS TO THE EXTENT THEY REPRESENTED BERKELEY IN
THE LAWSUIT, AND ADAM SLIPAKOFF.

7.     **The Berkeley Party's Representations and Warranties.**
Berkeley, on behalf of itself and the other members of the Berkeley Party,
represents and warrants to the Defendant Parties as follows, acknowledging
that the below representations and warranties jointly and severally
constitute a material inducement to the Defendant Parties in entering into
this Agreement:

7.1.   Berkeley has the right and power to enter into this
Agreement and to be bound by each of its provisions, and has made and
passed all resolutions and obtained all authorizations necessary to this
Agreement and its enforcement, including such resolutions and
authorizations required under its and its Manager's governing documents,
including articles of organization and operating agreement, as amended;

7.2.   Neither this Agreement nor Berkeley's execution or
performance of this Agreement shall constitute a breach or violation of any
duty or obligation to which Berkeley is a party or by which Berkeley is bound,
whether arising by way of agreement, in equity, or at law;

EXECUTION COPY                    10



7.3.   Berkeley has not directly or indirectly assigned, conveyed, transferred, or encumbered all or any portion of the claims covered by this Agreement; and

7.4.   Berkeley is surrendering its holdings of Sionic Stock (and any option or warrant right in regard to any of Sionic's securities) in return for the Settlement Amount and the Defendant Parties' undertakings in this Agreement, subject to and consistent with Berkeley's acknowledgements in Section 10 of this Agreement.

8.   **The Sionic Party's Representations and Warranties.** Sionic, on behalf of itself and the other members of the Sionic Party, represents and warrants to the Berkeley Party as follows, acknowledging that the below representations and warranties jointly and severally constitute a material inducement to the Berkeley Party in entering into this Agreement as to Sionic:

8.1.   Sionic has the right and power to enter into this Agreement and to be bound by each of its provisions, and has made and passed all resolutions and obtained all authorizations necessary to this Agreement and its enforcement;

8.2.   Neither this Agreement nor Sionic's execution or performance of this Agreement shall constitute a breach or violation of any

EXECUTION COPY                              11



duty or obligation to which Sionic is a party or by which Sionic is bound, whether arising by way of agreement, in equity, or at law; and

      8.3.   Sionic has not directly or indirectly assigned, conveyed, transferred or encumbered all or any portion of the claims covered by this Agreement.

      9.    **The Herman Party's Representations and Warranties.** Mr. Herman, on behalf of himself and the other members of the Herman Party, represents and warrants to the Berkeley Party as follows, acknowledging that the below representations and warranties jointly and severally constitute a material inducement to the Berkeley Parties in entering into this Agreement as to Mr. Herman:

      9.1.   Mr. Herman has the right to enter into this Agreement and to be bound by each of its provisions;

      9.2.   Neither this Agreement nor Mr. Herman's execution or performance of this Agreement shall constitute a breach or violation of any duty or obligation to which Mr. Herman is a party or by which Mr. Herman is bound, whether arising by way of agreement, in equity, or at law; and

      9.3.   Mr. Herman has not directly or indirectly assigned, conveyed, transferred or encumbered all or any portion of the claims covered by this Agreement.

EXECUTION COPY          12



10.    **Berkeley's Acknowledgements.** Berkeley acknowledges and agrees as follows, each acknowledgement being material to this Agreement:

10.1.  The Defendant Parties have provided, and Berkeley has received, all materials, documents, and information that Berkeley considers material to the transactions arising under or in consequence of this Agreement;

10.2.  Berkeley has sought and obtained all advice, opinions, recommendations, and expertise that Berkeley believes pertinent to this Agreement, including in regard to Berkeley's surrender of its holdings of Sionic Stock and termination and cancellation of Berkeley's rights, titles, claims, and interests in and to Sionic;

10.3.  The Settlement Amount, together with the releases and other provisions of this Agreement, constitute sufficient, good, valuable, and complete consideration for the transactions, releases, remises, acquittals, waivers, cancellations, and terminations of Berkeley and the other members of the Berkeley Party under this Agreement and no other, further, or additional consideration from any of the Defendant Parties is necessary or required in that regard; and

10.4.  This Agreement constitutes new and separate consideration from any provided in the Share Transaction Documents, and

EXECUTION COPY                      13



acts in all regards as an accord and satisfaction of all disputes, defaults, breaches, debts, and liabilities that Berkeley or any other member of the Berkeley Party has or could allege against the Defendant Parties, whether in whole or in part, including under the Share Transaction Documents, the Articles, the Shareholder Agreement, or otherwise.

11. **Tax Matters.** Each Party shall be responsible for reporting and paying its own taxes arising from or in consequence of (a) this Agreement, (b) the Share Transaction Documents, and (c) any transactions associated with this Agreement and the Share Transaction Documents, respectively. Accordingly, Berkeley and the other members of the Berkeley Party shall be exclusively responsible for all income, capital gains, and any other tax obligation arising from or in regard to Berkeley's holdings of Sionic Stock and any treatments or dispositions of that Stock, any investment portfolio management decisions, any private equity, structuring or other arrangements or dispositions concerning the Sionic Stock, Berkeley's surrender of its holdings of Sionic Stock, the settlement of the Lawsuit, or otherwise under this Agreement. Each Party may characterize the transactions contemplated under this Agreement for tax purposes in any manner permitted at law, although if any one characterization is necessary



before the U.S. Internal Revenue Service or any state taxing authority, then Sionic's characterization shall control.

12. **No Admission; Compromise.** Nothing stated in this Agreement shall constitute any admission of liability by either of the Defendant Parties, each having denied Berkeley's claims and allegations made in regard to the Lawsuit. Rather, this Agreement constitutes a compromised resolution and settlement of disputed allegations, claims and causes of action; Berkeley, Sionic, and Herman each recognizing the risks, time, costs, fees, and expenses that each may incur absent this compromise and Agreement.

13. **Miscellaneous.**

13.1. *Affiliates.* For purposes of this Agreement, "*Affiliate*" means any Person that directly or indirectly controls, is controlled by, or is under common control with another Person, where "*control*" means the right, power, or authority to direct the business and affairs of the other Person, whether through ownership, under agreement, or by statutory or legal right; and "*Person*" means, as pertinent, an individual or a corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, trust, or any other entity or organization. Furthermore:

EXECUTION COPY                    15



13.1.1.   As to Berkeley, PEN Equity II, LLC ("*PE II*"), Berkeley Capital Partners, LLC ("*Berkeley Capital*"), and any Person that is under common ownership with or controlled by Berkeley, PE II, or Berkeley Capital, or that constitutes a member, partner, director, officer, or executive of Berkeley, PE II, or Berkeley Capital constitute Affiliates of Berkeley; and

13.1.2.   Excepting the Berkeley Party, as to Sionic, all Persons that in the past, present and future hold any Sionic securities or any options, warrants or other interests or rights that the upon exercise would entitle that Person to become a holder of Sionic securities, constitute an Affiliate of Sionic.

13.2.   *Binding Effect.* This Agreement is binding upon and inures to the benefit of the Parties and, as pertinent, each of their respective successors, heirs, and permitted assigns.

13.3.   *Waiver as to General Release.* Each Party waives to the maximum extent permitted any right to challenge or invalidate the releases provided in this Agreement on the ground that such releases preclude facts, allegations, claims and causes of action, together with any associated debts, actions, causes of action, suits, contracts, agreements, damages, claims, demands and liabilities, in each instance whether unknown or unsuspected but which, had they been known or suspected as of the Effective Date, would

EXECUTION COPY                    16

have been material to the subject Party's decision to enter into this Agreement.

13.4.  *Interpretation; Language.* The Parties have had equal opportunity to participate in the drafting of this Agreement. No ambiguity in the language of this Agreement shall be construed against any Party based upon a claim that a particular Party drafted that language. The headings of the various Sections, parts, and subparts of this Agreement are for reference and convenience only, and do not constitute a material part of this Agreement. The phrase "including" wherever it appears and in whatever form means "including, without limitation." Pronouns in the masculine, feminine or neuter genders include any other and all other genders. All words, titles, and terms of this Agreement (including defined terms) that are stated in the singular shall be construed to include the plural, and the plural the singular, unless context requires a specific, numeric application.

13.5.  *Ongoing Cooperation.* The Parties shall cooperate in good faith in effectuating the requirements of this Agreement. Accordingly, upon the written request of another Party, a Party shall provide such consents and confirmations, and execute and deliver such additional written instruments or devices, as may from time to time be necessary to a Party's performance of this Agreement.

EXECUTION COPY                    17



13.6. *Assignment.* Neither Party may assign this Agreement without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned, or delayed, although any natural person who is a Party may assign this Agreement to an heir, whether by will or devise, or according to law.

13.7. *Notice Addresses.* Any notice, communication or instrument required or permitted under of this Agreement or required by law shall be in writing and deemed received (a) if delivered in person, or (b) if sent via next day delivery by a nationally recognized carrier, including USPS, FedEx or UPS, provided the notice is properly addressed and adequate postage has been applied. The noticing Party shall further copy below identified counsel for the other Party on each notice. All changes to address shall be effected by written notice delivered in accordance with this Section. Notices shall be deemed received upon actual delivery if made in person, and next day following delivery if made by national carrier:

>   If to Berkeley:
>
>   Berkeley Ventures II, LLC
>   c/o Berkeley Capital Partners, LLC
>   3500 Parkway Lane, Suite 430
>   Norcross, Georgia 30092
>   Attn: Anthony J. Palazzo, on behalf of its Manager,
>
>   with simultaneous copy, which shall not constitute notice, to:

EXECUTION COPY                    18



Buddy Parker, Esq.
Maloy Jenkins Parker
1360 Peachtree Street NE, Suite 910
Atlanta, Georgia 30309
parker@mjplawyers.com; and

If to the Defendant Parties:

Sionic Mobile Corporation
1230 Peachtree St NE, Suite 3700
Atlanta, Georgia 30309
Attn: Ronald D. Herman, CEO

with simultaneous copy, which shall not constitute notice, to:

Simon Jenner, Esq.
Richard J. Baker, Esq.
Adam P. Ford, Esq.
Baker Jenner LLLP
210 Interstate North Parkway SE, Suite 100
Atlanta, Georgia 30339
simon.jenner@bakerjenner.com
rick.baker@bakerjenner.com
adam.ford@bakerjenner.com.

13.4. *Integration.* This Agreement (including its preamble,

Sections, Schedules, and Exhibits) constitutes the entire understanding and

agreement between the Parties regarding this Agreement's subject matter.

This Agreement supersedes, cancels and terminates all prior oral or written

agreements, arrangements, term sheets, representations, warranties, and

understandings regarding this Agreement's subject matter. This Agreement



EXECUTION COPY              19

may not be amended, except by means of a written instrument duly executed by Berkeley, Sionic and Mr. Herman.

13.5. *Severability*. If any provision or part of a provision of this Agreement is found or determined invalid, unlawful or unenforceable (in each instance and collectively, an "*Unenforceable Clause*"), the Parties shall endeavor in good faith to derive one or more amendments that will preserve, as far as possible, the objectives expressed in this Agreement. If the Parties are unable for any reason to do so, then a court or other lawful authority shall and is hereby authorized to replace the Unenforceable Clause in a manner that obtains the Parties' objectives in accordance with applicable law. If the court or other lawful authority determines that it cannot derive a replacement for the Unenforceable Clause, or that the objective is itself unlawful, then the Unenforceable Clause shall be severed from this Agreement and the remaining provisions continuing as valid and enforceable to the fullest extent permitted by law.

13.6. *Governing Law; Jurisdiction and Venue*. This Agreement is made and is to be performed in the State of Georgia. This Agreement and all disputes, claims, or controversies arising out of or in connection with this Agreement, including any question regarding this Agreement's formation, existence, validity, enforceability, performance, interpretation, breach, or

EXECUTION COPY                    20



termination shall be governed by and construed in accordance with the substantive laws State of Georgia, without reference to its choice of law rules. Each Party hereby irrevocably consents to the continuing jurisdiction of the United States District Court for the Northern District of Georgia, Hon. Victoria M. Calvert, in connection with any action arising out of or in connection with this Agreement.

13.7. *Equitable Relief and Enforcement.* Each Party may be irreparably harmed if any other Party materially breaches or fails to perform this Agreement. Accordingly, and without waiving or compromising any right, claim, interest or remedy that a Party may have under this Agreement, whether in equity or at law, a Party may further petition for an injunction, specific performance or other equitable relief without the necessity of first posting bond or other security.

13.8. *No Third-Party Beneficiaries.* This Agreement is for the exclusive benefit of the Parties and, as applicable, their respective heirs, successors and permitted assigns, and not for that of any other person, including third-party beneficiary, whether direct, indirect, express or implied.

13.9. *Agreement Freely Negotiated.* This Agreement has been negotiated by the Parties and their respective independent counsel of choice. The Parties represent and warrant each to the other that they are not relying

EXECUTION COPY                                21



upon the advice or representatives of any other Party, or anyone associated with any other Party, as to the legal, factual, tax, or other consequences of any kind arising out of this Agreement.

13.10. *Adequate Consultation.* The Parties acknowledge that they have adequately consulted with their respective attorneys, advisors, and professionals concerning the effects and outcomes of this Agreement, and the duties and obligations imposed on each of them in consequence of this Agreement.

13.11. *Voluntary Agreement.* The Parties acknowledge that they have voluntarily executed this Agreement, without being subject to any unlawful compulsion or duress.

13.12. *Agreement Admissible to Verify Settlement.* This Agreement shall be admissible evidence if offered in support of the validity and reasonableness of this compromise and settlement.

13.13. *Counterparts.* The original and one or more copies of this Agreement may be signed and delivered (including by facsimile transmission or by legible scan in .pdf, .tiff, .jpg, .jpeg, or other standard electronic image format, duly transmitted by electronic mail) in one or more counterparts, all of which shall be considered one and the same Agreement and effective when one or more counterparts have been signed by all Parties and delivered to all

EXECUTION COPY 22



other Parties, it being understood that all Parties need not sign the same

counterpart. This Agreement may further be delivered to each Party in

electronic or physical copy, each of which shall be considered an original for

all purposes if the originals are not delivered or cannot be located.

[Signatures on the following page.]



This Agreement is signed by each Party on the date shown opposite that Party's name below, and as to the Berkeley and Sionic, through their respective duly authorized and empowered representatives, whose name and title are in each instance accurately stated below.

BERKELEY

Berkeley Ventures II, LLC

By: PEN Equity II, LLC, its Manager

By: _____
    Anthony J. Palazzo
    Manager

SIONIC

Sionic Mobile Corporation

By: _____
    Ronald D. Herman
    Chief Executive Officer

MR. HERMAN

_____
Ronald D. Herman

Included as a material part of this Agreement, immediately following:

- Schedule 1-A (Settlement Amount)
- Schedule 1-B (Berkeley Wiring Instructions)
- Exhibit A (Stock Redemption Agreement)
- Exhibit B (Dismissal with Prejudice)

EXECUTION COPY                    24

## SCHEDULE 1-A

### Settlement Amount

In accordance with Section 1, the Settlement Amount is $1,300,000.00.

EXECUTION COPY

## SCHEDULE 1-B

### Payment Instructions

In accordance with the Court's May 2, 2022 Order [Doc. 250], Sionic shall pay the Settlement Amount, subject to the following:

1.    Sionic shall pay 20 percent of the Settlement Amount (the "*Registry Amount*") into the Registry of the United States District Court for the Northern District of Georgia, Atlanta Division, which Berkeley acknowledges is equal to $260,000.00.

2.    Thereafter, Sionic shall pay the remaining 80 percent of the Settlement Amount to Berkeley by wire, in accordance with the wiring instructions on the following page, which Berkeley acknowledges is equal to $1,040,000.00. Berkeley shall be exclusively responsible for paying and satisfying all costs, fees, and expenses, including any bank charges or fees, associated with or arising from Sionic's wiring of funds in accordance with the paragraph.

3.    If the Court determines the Registry Amount is insufficient, regardless the reason (including due to a finding by the Court that the Registry Amount as stated in paragraph 1 of this Schedule is too low or otherwise must be increased), Berkeley shall be exclusively



EXECUTION COPY

responsible for promptly paying any additional amount then due into the Court's Registry, regardless of the Party tasked by the Court with paying that additional amount.



## Wiring Instructions

Bank: ██████████████

Bank Address: ████████████████████████████████████

Routing number: ██████████████

Account name: ████████████████████

Account address: ██████████████████████████████████████████

Account number: ██████████████

For further credit to: ████████████████████████████



EXECUTION COPY                    28



# EXHIBIT A

## Stock Redemption Agreement



EXECUTION COPY



## STOCK REDEMPTION AGREEMENT

This stock redemption agreement (this *"Agreement"*), effective as of the Effective Date (defined below), is between Berkeley Ventures II, LLC, a Mississippi limited liability company (*"Seller"*), and Sionic Mobile Corporation, a Georgia corporation (*"Company"*). Seller and Company are each a *"Party,"* and collectively the *"Parties,"* to this Agreement.

Seller and Company, together with Ronald D. Herman (*"Mr. Herman"*), Company's CEO, are each party to the action titled *Berkeley Ventures II, LLC v. Sionic Mobile Corporation and Ronald D. Herman*, No. 1:19-cv-05523-VMC, pending before the United States District Court for the Northern District of Georgia (the *"Lawsuit"*). To resolve the Lawsuit, the Parties and Mr. Herman have entered into an agreement of compromise and settlement and mutual release of claims (the *"Settlement Agreement"*), of which this Agreement is a material part and with which this Agreement is of even date (the *"Effective Date"*).

Now, therefore, the Parties agree as follows:

1.   *Defined Terms.* Terms not defined in this Agreement have the meanings ascribed in the Settlement Agreement.

2.   *Redemption.* Seller hereby sells to Company, and Company hereby redeems from Seller, the Sionic Stock, which Sionic Stock is set forth after Seller's name in the Company's records, which represents Seller's entire ownership interest in Company. The redemption provided in this paragraph includes all rights, titles, and interests of ownership, including any warrant right and option right, which in each instance are hereby waived by Seller, and which are further cancelled and terminated.

3.   *Purchase Price.* The aggregate consideration to be paid by Company to Seller for the Sionic Stock is the Settlement Amount, which together with the other consideration constituted by the Settlement Agreement, is full, fair, and complete consideration for the Sionic Stock. Company shall pay the Settlement Amount to Seller in accordance with Section 1 of the Settlement Agreement.

4.   *Transfer of Sionic Stock.* In fulfillment of Section 2.4 and Section 2.5 of the Settlement Agreement, Seller shall complete, execute, and deliver the certificate attached as Exhibit A to this Agreement.

5.   *Seller's General Representations and Warranties.* Seller represents and warrants to Company the following: (a) Seller owns and holds the Sionic Stock free and clear of all pledges, liens, encumbrances, security interests, options, claims and other charges of every kind; (b) other than this Agreement and the Settlement Agreement, Seller has not entered into any other contract or agreement to sell or transfer the Sionic Stock; (c) Seller hereby transfers clear and marketable title to the Sionic Stock to Company, free and clear of all liens, debts, and other encumbrances; (d) Seller has full power and authority to execute this Agreement

 EXECUTION COPY

and to consummate the transactions contemplated in this Agreement; (e) execution, delivery, and performance of this Agreement have been in each instance duly authorized by all necessary action of Seller, and this Agreement is the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with this Agreement and the Settlement Agreement's terms; and (f) Seller's execution and delivery of this Agreement and compliance with the terms and provisions of this Agreement will not result in (i) any violation of any federal, state or local laws, orders or regulations applicable to Sellers, (ii) any violation of, or conflict with, or breach of the terms, conditions or provisions of, or default under, any agreement, (iii) require of or give to any other Person any interest or rights, including rights of termination, cancellation or acceleration, with respect to any instruments, contracts or agreements, or (iv) require any authorization, consent, approval, exemption or other action by, or notice to or filing with, any court, administrative or governmental body which has not been obtained or given.

6. *Seller's Transaction Specific Representations and Warranties.* Seller, on its own behalf and on behalf of the other members of the Berkeley Party, represents and warrants to Company as follows: (a) except for the representations and warranties of the Defendant Parties made in Article 8 and Article 9 of the Settlement Agreement, in undertaking the transactions contemplated under this Agreement and the Settlement Agreement, Seller has not relied upon any action, omission, representation, warranty, guaranty, or other statement or undertaking of Company or any other member of the Defendant Parties, including in regard to any current or potential future transaction or merger or acquisition concerning any of the assets or business of Company, but has instead acted exclusively in reliance on Seller's own independent analysis and in consultation with Seller's independent counsel, professionals, and experts of choice; (b) Seller has fully reviewed and informed itself regarding, and fully understands in all material regards, the consequences of the transactions contemplated under this Agreement; (c) neither Company nor any other member of the Defendant Parties owes any duty or obligation to Seller or any other member of the Berkeley Party to disclose, to inform regarding, to mitigate, or to avoid any of the costs or risks arising from or associated with the transactions contemplated under this Agreement and the Settlement Agreement; (d) neither Company nor any other member of the Defendant Parties owes any duty or obligation to inform, or to disclose to, Seller or any other member of the Berkeley Party the possibility of one or more transactions, mergers or acquisitions concerning the business, assets, or operations of Sionic, any such duty or obligation being hereby waived and terminated, or, if subsequently alleged or found to exist, being hereby acknowledged as fully satisfied and fulfilled; and (e) Berkeley is satisfied that this Agreement and its associated transactions are in the best interests of Seller and all other members of the Berkeley Party.

7. *Releases.* In addition to the releases, remises, and acquittals of Section 3 of the Settlement Agreement, Seller releases and forever discharges Company (including Company's past, present, and future owners, directors, officers, executives, managers, employees, attorneys, and professionals, including Mr.



EXECUTION COPY



Herman) from any Claim or potential Claim arising from or related to (a) Seller's capacity, status, rights, titles, and interests as a shareholder of the Corporation; (b) the fairness and the adequacy of the consideration for the Stock as stated in Section 3 of this Agreement; (c) Seller's preemptive rights or dividend distributions under the Articles of Incorporation of Company, Shareholders' Agreement, or otherwise; (d) any contractual relationship, actual or alleged, between Company and Seller (or an Affiliate of a Seller).

8.   *Benefit and Assignment.* This Agreement shall be binding upon and shall inure to the benefit of the Parties and each of their respective heirs, legal representatives, successors, and assigns.

9.   *Execution of Supplementary Documents.* Upon written notice from the other Party, each Party shall execute any other agreements, documents or instruments consistent with this Agreement necessary to effect the transactions contemplated by this Agreement.

10.  *Governing Law.* This Agreement is entered into under, and shall be governed by and construed in accordance with, the laws of the State of Georgia in the same manner applicable to contracts made and to be performed entirely within such state and without giving effect to choice of law principles of such state.

11.  *Settlement Agreement Controls.* This Agreement is to be interpreted consistent with and subject to the Settlement Agreement. Accordingly, to the extent there is an irreconcilable conflict between the Settlement Agreement and this Agreement, the Settlement Agreement shall control. However, the mere fact that this Agreement incorporates additional or different terms to those stated in the Settlement Agreement shall not constitute conflict, but rather shall be additive to what is stated in the Settlement Agreement.

12.  *Interpretation; Language.* The Parties have had equal opportunity to participate in the drafting of this Agreement. No ambiguity in the language of this Agreement shall be construed against any Party based upon a claim that a particular Party drafted that language. The headings of the various Sections, parts, and subparts of this Agreement are for reference and convenience only, and do not constitute a material part of this Agreement. The phrase "including" wherever it appears and in whatever form means "including, without limitation." Pronouns in the masculine, feminine or neuter genders include any other and all other genders. All words, titles, and terms of this Agreement (including defined terms) that are stated in the singular shall be construed to include the plural, and the plural the singular, unless context requires a specific, numeric application.

13.  *Counterparts.* The original and one or more copies of this Agreement may be signed and delivered (including by facsimile transmission or by legible scan in .pdf, .tiff, .jpg, .jpeg, or other standard electronic image format, duly transmitted by electronic mail) in one or more counterparts, all of which shall be considered one and the same Agreement and effective when one or more counterparts have



been signed by all Parties and delivered to all other Parties, it being understood that all Parties need not sign the same counterpart. This Agreement may further be delivered to each Party in electronic or physical copy, each of which shall be considered an original for all purposes if the originals are not delivered or cannot be located.

[Signatures on the following page.]



EXECUTION COPY                    33



This Agreement is signed by each Party on the date shown opposite that Party's name below, through their respective duly authorized and empowered representatives, whose name and title are in each instance accurately stated below.

BERKELEY

Berkeley Ventures II, LLC

By:   PEN Equity II, LLC, its Manager

By:   _____
      Anthony J. Palazzo
      Manager

SIONIC

Sionic Mobile Corporation

By:   _____
      Ronald D. Herman
      Chief Executive Officer

Included as a material part of this Agreement, immediately following:

- Exhibit A (Certificate)

EXECUTION COPY                    34

## ASSIGNMENT AND TRANSFER OF STOCK CERTIFICATE

This assignment and transfer of stock certificate (this *"Certificate"*) is made and effective as of the Effective Date (defined below),

BETWEEN:          Sionic Mobile Corporation, a Georgia corporation (*"Company"*);

AND:              Berkeley Ventures II, LLC, a Mississippi limited liability company (*"Transferor"*).

FOR VALUE RECEIVED, Transferor hereby sells, assigns, and transfer to Company the shares of Sionic Stock standing in the name of Transferor on the books of Company and represented by Sionic Stock Certificate No. 342.

Transferor hereby and irrevocably constitutes and appoints Company as Transferor's attorney in fact to transfer the Stock on the books of Company with full power of substitution in the premises.

Terms not defined in this Certificate have the meanings ascribed in the agreement of compromise and settlement and mutual release of claims (the *"Settlement Agreement"*), of which this Certificate is a material part and of even date (the *"Effective Date"*).

BERKELEY

Berkeley Ventures II, LLC

By:   PEN Equity II, LLC, its Manager

By:   _____
      Anthony J. Palazzo
      Manager

In the presence of:

Signature:   _____
Name:        Ilana Bloch
Title:       witness

SIONIC

Sionic Mobile Corporation

By:   _____
      Ronald D. Herman
      Chief Executive Officer

EXECUTION COPY

# EXHIBIT B

## Joint Stipulation and Joint Motion to
## Dismiss with Prejudice



EXECUTION COPY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BERKELEY VENTURES II, LLC

        Plaintiff,

v.

SIONIC MOBILE CORPORATION
and RONALD D. HERMAN,

        Defendants.

Civil Action File No.
1:19-cv-05523-SDG

## JOINT STIPULATION AND CONSENT MOTION TO
## DISMISS WITH PREJUDICE

Plaintiff Berkeley Ventures II, LLC, Defendant Sionic Mobile
Corporation, and Defendant Ronald D. Herman notify the Court, consistent
with the Court's May 2, 2022 Order [Doc. 250], that they have reached and
entered into an Agreement of Compromise and Settlement and Mutual
Release of Claims (the "Settlement Agreement") in regard to this action.
Accordingly, and pursuant to the Settlement Agreement, the Parties agree,
and jointly stipulate to, dismissal of the above-entitled action in accordance
with Fed. R. Civ. P. 41(A)(1)(ii), which dismissal shall be with prejudice for
purposes of Fed. R. Civ. 41(B), and respectfully move the Court to enter the
same. Further to the Settlement Agreement, the parties additionally and



EXECUTION COPY

respectfully move the Court to retain continuing jurisdiction over this matter for purposes of the enforcement of the Settlement Agreement.

A proposed order is attached and incorporated as Exhibit A to this Motion for the Court's consideration.

Respectfully submitted May ___, 2022.

/s/ Wilmer Parker
Wilmer Parker
Georgia Bar No. 563550
MALOY JENKINS PARKER
1360 Peachtree St.
Suite 910
Atlanta, GA 30309
parker@mjplawyers.com
(404) 875-2700
*Attorneys for Plaintiff*

/s/ Simon Jenner
Simon Jenner
Georgia Bar No. 142588
simon.jenner@bakerjenner.com
Richard J. Baker
Georgia Bar No. 033879
Rick.baker@bakerjenner.com
Adam P. Ford
Georgia Bar No. 355079
Adam.ford@bakerjenner.com

BAKER JENNER LLLP
210 Interstate North Parkway, S.E.
Suite 100
Atlanta, GA 30339
(404) 400-5955
*Attorneys for Defendants*



CONFIDENTIAL DRAFT                    2

**Exhibit A to**
**Joint Stipulation and Motion to Dismiss with Prejudice**

EXECUTION COPY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BERKELEY VENTURES II, LLC

      Plaintiff,

v.

SIONIC MOBILE CORPORATION
and RONALD D. HERMAN,

      Defendants.

Civil Action File No.
1:19-cv-05523-SDG

## [PROPOSED] ORDER

This matter having been amicably adjusted between Plaintiff Berkeley Ventures II, LLC on the one hand, and Defendant Sionic Mobile Corporation and Defendant Ronald D. Herman on the other hand, it is hereby stipulated that Plaintiff's Verified Complaint for Damages [Doc. 1] (the "Complaint") is dismissed under Fed. R. Civ. P. 41(A)(1)(ii), which shall be a dismissal with prejudice pursuant to Fed. R. Civ. P 41(B). The parties having so stipulated:

IT IS HEREBY ORDERED,

1.    The Parties' pending Joint Stipulation and Consent Motion to Dismiss with Prejudice is GRANTED.

EXECUTION COPY

2.    The Complaint, together with all included allegations, claims, and causes of action, is dismissed with prejudice.

3.    The Agreement of Compromise and Settlement and Mutual Release of Claims, effective May ___, 2022 (the "Settlement Agreement") is by this reference incorporated as a material part of this Order. Consistent with and subject to the Court's May 2, 2022 Order [Doc. 250] and the Settlement Agreement, Defendant Sionic shall deposit $260,000.00 into the Registry of the Court.

4.    Plaintiff and Defendants shall bear each of their own respective attorney fees, expenses, and costs of action.

5.    This Court shall retain jurisdiction over this case, including to enforce the Settlement Agreement and each of its provisions.

SO ORDERED this May ___, 2022.

_____
Hon. Victoria M. Calvert
United States District Court Judge

CONFIDENTIAL DRAFT                    2

